FILED IN CLERK'S OFFICE
U.S D.C. *  *
JAN - 6 2004
LUTHER D. THOMAS, Clerk
By _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| SHIRLEY WILLIAMS, GALE PELFREY, BONNIE JONES and LORA SISSON, individually and on behalf of a class,<br><br>    Plaintiffs,<br><br>vs.<br><br>MOHAWK INDUSTRIES, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action File No. ___4  04 - C V -  0 3___

**COMPLAINT – CLASS ACTION**

## COMPLAINT

Plaintiffs Shirley Williams ("Williams"), Gale Pelfrey ("Pelfrey"), Bonnie Jones ("Jones") and Lora Sisson ("Sisson"), individually and on behalf of a class, bring this action against Defendant Mohawk Industries, Inc. ("Mohawk"):

### I.     SUMMARY OF CLAIMS

1.

This is a class action under the federal and Georgia Racketeer Influenced and Corrupt Organizations ("RICO") acts. The members of the class are current and former hourly employees of Mohawk whose wages have been depressed by Mohawk's employment and harboring of large numbers of illegal workers.

/

Plaintiffs seek injunctive and monetary relief on behalf of Mohawk's legally-employed hourly workers in Georgia.

2.

Mohawk is the second largest carpet and rug manufacturer in the United States. In 2002, its carpet and rug net sales were approximately $3.2 billion. Mohawk employs approximately 31,780 persons, most of whom are employed in Northwest Georgia. Mohawk owns or leases at least twenty-six facilities in Georgia.

3.

Mohawk has, in its Georgia facilities, engaged in the widespread employment of illegal workers, *i.e.*, workers who are not authorized to be employed in the United States. By employing and harboring illegal workers, Mohawk is able to reduce labor costs by depressing wages for its hourly workers and discouraging claims for workers compensation.

4.

Mohawk's conduct violates the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("federal RICO"), and Georgia's Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-1 *et seq.* ("Georgia RICO"), as more fully set forth below.

-2-

## II.    PARTIES, JURISDICTION AND VENUE

5.

Plaintiff Gale Pelfrey is a citizen of Georgia and resides in the Northern District of Georgia.  She is eligible to be employed in the United States and is a former hourly employee of Mohawk.

6.

Plaintiff Shirley Williams is a citizen of Georgia and resides in the Northern District of Georgia.  She is eligible to be employed in the United States and is a former hourly employee of Mohawk.

7.

Plaintiff Bonnie Jones is a citizen of Georgia and resides in the Northern District of Georgia.  She is eligible to be employed in the United States and is a current hourly employee of Mohawk.

8.

Plaintiff Lora Sisson is a citizen of Georgia and resides in the Northern District of Georgia.  She is eligible to be employed in the United States and is a former hourly employee of Mohawk.

-3-

9.

Defendant Mohawk is a Delaware corporation with its principal place of business in Calhoun, Georgia. Mohawk may be served by service on its registered agent for service of process, Salvatore J. Perillo, Post Office Box 12069, South Industrial Boulevard, Calhoun, Georgia 30703.

10.

Mohawk is subject to the personal jurisdiction of this Court.

11.

This Court has subject matter jurisdiction over this case pursuant to 18 U.S.C. § 1964(c), 28 U.S.C. § 1332 (federal question) and 28 U.S.C. § 1367 (ancillary jurisdiction).

12.

Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as Mohawk resides in this district and events giving rise to Plaintiffs' claims occurred in this district. Venue is also proper in this district pursuant to 18 U.S.C. § 1965, as Mohawk resides, is found in and transacts its affairs in the Northern District of Georgia.

-4-

## III.  FACTS

### Mohawk's Hiring and Harboring of Illegal Workers

#### 13.

Mohawk employs many thousands of hourly paid workers in its operations in North Georgia.

#### 14.

In an effort to keep labor costs as low as possible, Mohawk has engaged in the illegal hiring of persons who are not eligible for employment in the United States.

#### 15.

Mohawk has accepted for employment and continued to employ workers that it knew or had reason to know were not authorized to work in the United States.

#### 16.

Mohawk has knowingly and recklessly accepted as proof of eligibility for employment false documents or documents that do not match the identity of the person presenting them. For example, Mohawk has accepted drivers' licenses and other documents that obviously depict a person different than the person presenting the document as proof of eligibility for employment.

-5-

17.

Mohawk also has knowingly and recklessly accepted as proof of eligibility for employment documents that reflect successive different names for a single person. Indeed, Mohawk frequently employs illegal workers who (a) first present eligibility documents that reflect one name, (b) work at Mohawk for some period of time, (c) leave their jobs at Mohawk, and then (d) return to work at Mohawk and present Mohawk with identification and work eligibility documents showing a different name.

18.

In some instances, when illegal workers have informed Mohawk that they would return to their countries of origin, Mohawk supervisors have encouraged these employees to return to the United States and reapply for work at Mohawk in violation of United States law.

19.

Although Mohawk was and is aware that numerous employees have used or are using identities different from those they had previously used while employed at Mohawk, Mohawk has accepted and continues to accept new identification and work authorization documents that it knew or had reason to know were false or obtained by false statements from these persons.

-6-

20.

Mohawk employees and/or supervisors have destroyed eligibility documents showing that workers have used different names and identification papers in an effort to conceal Mohawk's employment and harboring of illegal workers.

21.

Mohawk employees and supervisors have stated that they are aware that illegal workers can easily obtain false identification and work authorization documents.

22.

Mohawk employees have traveled to the United States border, including areas near Brownsville, Texas, to recruit undocumented aliens that recently have entered the United States in violation of federal law. These employees and other persons have transported undocumented aliens from these border towns to North Georgia so that those aliens may procure employment at Mohawk. Mohawk has made various incentive payments to employees and other recruiters for locating workers that Mohawk eventually employs and harbors.

23.

Various recruiters, including Mohawk employees, have provided housing to these illegal workers upon their arrival in North Georgia and have helped them find illegal employment with Mohawk.

24.

Mohawk has conducted occasional audits of its workforce and discovered numerous illegal workers within that workforce. Although these infrequent audits often confirm the presence of large numbers of illegal workers and therefore put Mohawk on further notice that it is employing and harboring illegal workers, Mohawk has not increased the frequency of these audits.

25.

Even when Mohawk terminates illegal workers after discovering that they are not authorized to work in the United States, many of those discharged illegal workers soon return to work at Mohawk under different names. For example, earlier this year, Mohawk discharged three employees that Mohawk had discovered to be illegally working in one of its facilities. Within two months after their discharge, Mohawk re-hired these same employees under different names to work on different shifts in the same facility.

-8-

26.

This practice of "recycling" illegal workers is widespread at Mohawk.

27.

Law enforcement personnel have raided Mohawk facilities in pursuit of undocumented aliens. On some of these occasions, illegal workers have hidden in barrels or other containers or run from the facilities being raided. This conduct has put Mohawk on further notice of the presence of large numbers of illegal workers in its workforce.

28.

Mohawk employees and supervisors have assisted illegal workers in attempting to evade detection by law enforcement personnel.

29.

Law enforcement authorities have arrested illegal workers at Mohawk facilities.

30.

Law enforcement authorities have found undocumented aliens in possession of Mohawk paychecks or identification badges and fraudulent identification documents.

31.

Mohawk supervisors have stated that they prefer hiring illegal workers because they do not complain about working conditions or submit claims for workers' compensation.

32.

Because illegal workers typically have no intention of filing federal tax returns, many illegal workers inflate their claimed exemptions to attempt to avoid withholding taxes. Many of Mohawk's illegal workers have inflated their claimed exemptions to avoid federal income tax withholding. This conduct has further put Mohawk on notice that large numbers of its workforce are not authorized for employment in the United States.

33.

Mohawk's employment and harboring of large numbers of illegal workers has enabled Mohawk to depress wages and thereby to pay all of its hourly employees, including legally employed workers who are members of the class, wages that are lower than they would be if Mohawk did not engage in this illegal conduct.

34.

Mohawk is the second largest carpet manufacturer in the United States and one of the largest employers in North Georgia. Mohawk employs tens of thousands of hourly workers in North Georgia.

35.

Mohawk's widespread employment and harboring of illegal workers has substantially and unlawfully increased the supply of workers from which Mohawk makes up its hourly workforce. This unlawful expansion of the labor pool has permitted Mohawk to depress the wages that it pays all its hourly employees, including the Plaintiffs and all Class members. If Mohawk had complied with the law by limiting its hourly workforce to those workers authorized to work in the United States, Mohawk would have had to pay higher wages to the Plaintiffs and the members of the Class.

36.

One purpose and intended effect of Mohawk's widespread employment and harboring of illegal workers is to deprive Mohawk's hourly workforce of any individual or collective bargaining power. Because Mohawk knows that many of its workers are not authorized to reside or work in the United States, Mohawk knows that those illegal workers are beholden to Mohawk. Mohawk is further

-11-

aware that its undocumented workers have virtually no effective means to complain about the terms of their employment.

37.

Mohawk also is aware that its illegal employees are unlikely to file worker's compensation claims against Mohawk. As a direct and proximate result of Mohawk's employment and harboring of illegal workers, Mohawk has been able to save substantial sums of money in worker's compensation liability that it would have incurred if it had not violated the law.

38.

As a direct and proximate result of Mohawk's employment and harboring of illegal workers, Plaintiffs and all members of the Class have earned wages below the wages they would have earned if Mohawk had complied with the law.

## IV.  CLASS ACTION ALLEGATIONS

39.

Plaintiffs bring this action on behalf of all persons legally authorized to be employed in the United States who are or have been employed by Mohawk in hourly wage positions in Georgia at any time from January 5, 1999 to the present (the "Class"). The "Class Period" is from January 5, 1999 to the present.

40.

The Class is so numerous that joinder of all Class members is impracticable. Plaintiffs believe the Class contains many thousands of members, and the actual number of Class members can be ascertained through discovery.

41.

There are numerous questions of law and fact common to the Class. Those questions include, but are not limited to:

a.   How many persons who are not authorized to be employed in the United States has Mohawk employed in hourly wage positions during the Class Period?

b.   Has Mohawk knowingly or with reckless disregard employed workers who are not authorized for employment in the United States during the Class Period?

c.   Has Mohawk knowingly or recklessly harbored undocumented aliens in the United States in violation of federal law during the Class Period?

d.   To what extent has Mohawk's employment and harboring of persons who are not authorized to be employed in the United States in hourly

-13-

wage positions depressed the wages Mohawk provides to legal hourly

employees?

e.    Is Mohawk part of an "enterprise" under the federal RICO statute? and

f.    Has Mohawk engaged in a pattern of racketeering activity under the

federal RICO statute or acquired and maintained and interest in a

pattern of racketeering activity under the Georgia RICO statute?

42.

The claims of the Plaintiffs are typical of the claims of the Class. Plaintiffs

are or were hourly workers whose wages have been depressed by Mohawk's

employment and harboring of illegal workers. Plaintiffs have no interests that are

antagonistic or adverse to the other Class members.

43.

Plaintiffs were injured by direct and proximate reason of Mohawk's illegal

conduct.

44.

Plaintiffs will fairly and adequately protect the interests of the class.

45.

Plaintiffs are adequate representatives of the Class. Plaintiffs are each

authorized for employment in the United States and are or were hourly Mohawk

-14-

workers, whose wages have been depressed by Mohawk's employment and harboring of illegal workers. Plaintiffs have retained counsel that are experienced in class action litigation, RICO litigation and complex litigation. Accordingly, Plaintiffs will fairly and adequately protect and represent the interests of the Class.

46.

Plaintiffs seek certification of a class, alternatively, under Fed. R. Civ. P. 23(b) (2) or 23(b) (3), or a combination thereof.

47.

Mohawk's employment and harboring of illegal workers has the effect of depressing wages and benefits to the detriment of all members of the Class. Accordingly, declaratory and injunctive relief that prevents Mohawk from continuing to employ or harbor illegal workers is appropriate on a class wide basis.

48.

The questions of law and fact common to all members of the Class predominate over any questions that may affect only individual members of the Class.

49.

A class action is a superior method of adjudicating the Class members' claims because individual actions would unnecessarily burden the Court and create the risk of inconsistent results.

50.

Given the significant expense required to prosecute the foregoing claims against Mohawk, the costs of individual actions would exceed or consume the amount recovered in any individual action. The expense of pursuing individual actions will require individual members of the Class to forego their individual claims against Mohawk if they are not permitted to pursue those claims as a Class.

51.

Plaintiffs are not aware of any litigation concerning this controversy that has already been initiated by or against any members of the Class.

52.

Because both Mohawk and the large majority of the Class members reside in this district and many of the events giving rise to this action took place in this district, it is both desirable and efficient to concentrate the litigation of these claims in this particular forum.

-16-

53.

This action is manageable because the evidence proving that Mohawk is

engaging in the alleged conduct is common to the Class.  Furthermore, the

identities of the Class members are known to Mohawk.

## V.    MOHAWK HAS ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY

54.

Mohawk is engaged in an ongoing pattern of racketeering activity as defined

by 18 U.S.C. § 1961(5).

55.

The federal RICO pattern of racketeering activity engaged in by Mohawk

consists of more than two acts of racketeering activity, the most recent of which

occurred within ten years after the commission of a prior act of racketeering

activity.

56.

Mohawk is engaged in an ongoing pattern of racketeering activity as defined

by O.C.G.A. § 16-14-3(8).

57.

The Georgia RICO pattern of racketeering activity engaged in by Mohawk consists of more than two acts of racketeering activity, the most recent of which occurred within four years after the commission of a prior act of racketeering activity.

58.

For purposes of federal RICO, the racketeering activity includes an open and ongoing pattern of violations of Section 274 of the Immigration and Nationality Act, 8 U.S.C. § 1324(a).

59.

Specifically Mohawk has violated and continues to violate 8 U.S.C. § 1324(a)(3)(A), which makes it a federal crime to: "knowingly hire[] for employment at least 10 individuals with actual knowledge that the individuals are aliens..." during a 12 month period. Mohawk has violated this provision of the Act, including by employing more than 10 aliens per year each year for the last four years, knowing that each such person was (a) smuggled or otherwise brought into the United States in violation of U.S. law; (b) illegally harbored once in the United States; (c) not lawfully admitted to the United States for permanent residence; and/or (d) not authorized for employment in the United States.

-18-

60.

Mohawk has also violated and continues to violate 8 U.S.C.

§ 1324(a)(1)(A)(iii), which makes it a federal crime to "conceal,[], harbor[] or

shield from detection, or attempt[] to conceal, harbor or shield from detection..."

aliens who have entered the U.S. illegally.  Mohawk has violated this provision by

(a) knowingly employing illegal aliens within its factories, warehouses and other

facilities in Georgia and/or (b) taking steps to shield those illegal aliens from

detection, by, among other things, helping them evade detection during law

enforcement searches and inspections.

61.

Furthermore, Mohawk has also violated and continues to violate 8 U.S.C. §

1324(a)(1)(A)(iv), which prohibits any person or entity from "encourag[ing] or

induc[ing] an alien to come to, enter, or reside in the United States, knowing or in

reckless disregard of the fact that such coming to, entry, or residence is or will be

in violation of law[.]"  By knowingly or recklessly employing and harboring

undocumented aliens in its Georgia facilities, Mohawk has helped hundreds of

aliens to avoid detection and enabled them to remain in the United States in

violation of U.S. law.  And by successively hiring and employing the same

undocumented aliens under different names and accepting false identification and

work authorization documents that reflect different identities for these aliens, Mohawk has knowingly or recklessly encouraged any undocumented aliens that are discovered to return to the United States and to their employment at Mohawk in violation of United States law.

62.

Each violation of 8 U.S.C. § 1324 constitutes an act of "racketeering activity" under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961(F).

63.

For purposes of both federal and Georgia RICO, the racketeering activity also includes open and ongoing violations of 18 U.S.C. § 1546(a), including Mohawk's acceptance of identification documents and other documents that authorize employment in the United States that Mohawk knew or had reason to know were not lawfully issued for the bearer's use, were false and/or were obtained by false statements.

64.

Mohawk has also violated and continues to violate 18 U.S.C. § 1546(b) by using identification documents that Mohawk knew or had reason to know were false and/or not lawfully issued to the bearer to falsely verify the eligibility of the

persons presenting them to work at Mohawk, and recording information from those documents on I-9 forms.

65.

Each violation of 18 U.S.C. § 1546 constitutes "racketeering activity" under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961(B).

66.

Each violation of 18 U.S.C. § 1546 also constitutes "racketeering activity" under the Georgia Racketeer Influenced and Corrupt Organizations Act. O.C.G.A. § 16-14-3(9)(A)(xxix).

## The Acts of Racketeering Activity Committed by Mohawk Are Related

67.

The acts of racketeering activity committed by Mohawk have the same or similar methods of commission in that they involve the knowing employment of illegal workers, the concealment, harboring and shielding from detection of illegal workers, and the acceptance or use of fraudulent documents in connection with the hiring of illegal workers.

-21-

68.

The acts of racketeering activity committed by Mohawk have the same or similar objective: the reduction of wages paid to Mohawk's hourly workforce.

69.

The acts of racketeering activity committed by Mohawk have the same or similar victims, including the plaintiffs and the other members of the Class.

70.

The acts of racketeering activity committed by Mohawk are otherwise related by distinguishing characteristics including, but not limited to, the involvement of Mohawk, illegal workers, and other members of the association-in-fact enterprise identified in paragraphs 76-84.

## The Acts of Racketeering Activity Committed by Mohawk Involve a Distinct Threat of Long-Term Racketeering Activity

71.

Mohawk's acts of racketeering activity involve a distinct threat of long-term racketeering activity.

72.

Mohawk's practice of knowingly employing, harboring, concealing and shielding illegal workers and Mohawk's acceptance and use of documents that are

-22-

not lawfully issued for the use of the possessor or are false has continued for years, is ongoing at the present time and will continue into the future unless halted by judicial intervention.

73.

Mohawk's knowing employment, harboring, concealing and shielding of illegal workers and its acceptance and use of documents that are not lawfully issued for the use of the possessor or are false is part of its regular way of conducting business.

74.

Mohawk has committed hundreds, and probably thousands, of violations of 8 U.S.C. § 1324 and 18 U.S.C. § 1546 as part of its pattern of racketeering activity.

75.

Mohawk's knowing employment, harboring, concealing and shielding of illegal workers and its acceptance and use of documents that are not lawfully issued for the use of the possessor or are false is so pervasive that illegal workers now constitute a majority of the work force in many of Mohawk's facilities in North Georgia.

## VI. THE ENTERPRISE

76.

Mohawk has engaged in an open and ongoing pattern of violations of 8 U.S.C. § 1324 and 18 U.S.C. § 1546 during the last five years through its participation in an association-in-fact enterprise with third party employment agencies and other recruiters, including Temporary Placement Services ("TPS"), that supply Mohawk with illegal workers. Each recruiter is paid a fee for each worker it supplies to Mohawk, and some of those recruiters work closely with Mohawk to meet its employment needs by offering a pool of illegal workers who can be dispatched to a particular Mohawk facility on short notice as the need arises. Some recruiters find workers in the Brownsville, Texas area and transport them to Georgia. Others, like TPS, have relatively formal relationships with the company in which they employ illegal workers and then loan or otherwise provide them to Mohawk for a fee. These recruiters are sometimes assisted by Mohawk employees who carry a supply of social security cards for use when a prospective or existing employee needs to assume a new identity.

77.

The recruiters and Mohawk share the common purpose of obtaining illegal workers for employment by Mohawk. The enterprise has worked in this fashion continuously over at least the last five years.

78.

Mohawk participates in the operation and management of the affairs of the enterprise, which exists for Mohawk's benefit.

79.

This association of Mohawk and the recruiters constitutes an association-in-fact enterprise pursuant to 18 U.S.C. § 1961(4).

80.

The enterprise affects interstate commerce in a variety of ways.

81.

The enterprise affects interstate commerce in that the illegal workers employed by Mohawk travel in international and interstate commerce in order to reach Mohawk facilities in North Georgia.

82.

The enterprise also affects interstate commerce in that it reduces the income of the legal workers who are still part of the Mohawk hourly workforce.

-25-

83.

The enterprise also affects interstate commerce in that Mohawk, a member of the enterprise, is directly engaged in the production, distribution and acquisition of goods and services in interstate commerce.

84.

Mohawk accepted and retained the benefits of the acts of racketeering activity, thereby ratifying the conduct of its managers, employees, and the members of the enterprise who assisted it in committing those acts of racketeering activity.

## VII.  MOHAWK HAS CAUSED PLAINTIFFS' WAGES TO BE DEPRESSED

85.

Mohawk's violations of federal and Georgia RICO proximately have caused the wages of Pelfrey, Williams, Jones, Sisson and all other members of the Class to be depressed below what they would have been in a labor market comprised of legally employed workers.

86.

Pelfrey, Williams, Jones, Sisson and the Class have suffered an injury to their "business or property," *i.e.* lost wages, as a direct result of Mohawk's

-26-

violations of federal RICO, and injury as a result of Mohawk's violations of Georgia RICO.

87.

Mohawk's unlawful conduct has allowed Mohawk to earn or retain significant funds to which it is not entitled. For example, Mohawk's widespread employment of illegal workers has permitted Mohawk to depress the wages for its hourly workers and to reduce the expenses it incurs as a result of worker's compensation claims. These savings contribute to Mohawk's profit margins and provide the financial motive for Mohawk's hiring of illegal workers.

## COUNT I

### (Violation of 18 U.S.C. § 1962(c))

88.

Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1-87 as if fully restated hereinafter.

89.

The foregoing conduct constitutes a violation of 18 U.S.C. § 1962(c).

90.

Plaintiffs have been injured in their property by reason of Mohawk's violations of 18 U.S.C. § 1962(c).

91.

The injuries suffered by plaintiffs were caused by Mohawk's violations of 18 U.S.C. § 1962(c).

92.

Pursuant to 18 U.S.C. § 1964(c), plaintiffs are entitled to recover threefold the damages they have sustained and their costs of suit, including reasonable attorney's fees.

## COUNT II

### (Violation of O.C.G.A. § 16-14-4(a))

93.

Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1-92 as if fully restated hereinafter.

94.

Mohawk has acquired and maintained an interest in and control of personal property, including money, through a pattern of racketeering activity.

-28-

95.

Plaintiffs have been injured by reason of Mohawk's violation of O.C.G.A. § 16-14-4(a) and are entitled to recover three times the actual damages sustained.

96.

In addition, Mohawk's actions showed wilfull misconduct, malice, fraud, wantonness, oppression and an entire want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling plaintiffs to receive punitive damages sufficient to deter, penalize, or punish Mohawk in light of the circumstances of the case.

97.

Plaintiff are also aggrieved persons within the meaning of O.C.G.A. § 16-14-6(b). As a result, Plaintiffs are entitled to appropriate preliminary and permanent injunctive relief.

98.

Pursuant to O.C.G.A. § 16-14-6(a), plaintiffs ask the Court to issue appropriate orders and judgment requiring Mohawk to cease its illegal conduct and imposing reasonable restrictions upon Mohawk's future activities sufficient to prohibit future violations of the law.

-29-

## COUNT III

### (Violation of O.C.G.A. § 16-14-4(c))

99.

Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1-98 as if fully restated hereinafter.

100.

Mohawk has endeavored to violate O.C.G.A. § 16-14-4(a), in violation of O.C.G.A. § 16-14-4(c).

101.

Mohawk has also conspired with TPS and other recruiters, known and unknown, to violate O.C.G.A. § 16-14-4(a), in violation of O.C.G.A. § 16-14-4(c).

102.

Mohawk has committed overt acts, which are also acts of racketeering activity, in furtherance of the conspiracy.  These overt acts include violations of 18 U.S.C. § 1546.

103.

Mohawk has also committed overt acts in furtherance of the conspiracy by having Mohawk employees travel in interstate commerce for the purpose of assisting Mohawk in hiring illegal workers.

-30-

104.

Mohawk's actions show wilfull misconduct, malice, fraud, wantonness, oppression and an entire want of care that would raise the presumption of conscious indifference to consequences, and specific intent to cause harm, entitling plaintiffs to receive punitive damages sufficient to deter, penalize or punish Mohawk.

105.

Mohawk's violations of federal and Georgia RICO are intended to and do in fact depress wages, and the Class is the direct victim of these violations.


## COUNT IV

### (Unjust Enrichment in Violation of Georgia Law)

106.

Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1-105 as if fully restated hereinafter.

107.

Mohawk's employment and harboring of illegal workers has had the purpose and effect of depressing the wages paid to Mohawk's hourly workers who are eligible for employment in the United States.  Mohawk's conduct therefore is

intended to and has the effect of permitting Mohawk to reap substantial wage savings.

108.

Mohawk's employment and harboring of illegal workers also has had the purpose and effect of reducing the number of worker's compensation claims that Mohawk receives. Mohawk supervisors have stated that they prefer hiring illegal workers in part because they do not submit worker's compensation claims. Mohawk's conduct therefore is intended to and has the effect of permitting Mohawk to limit the amount it must spend to respond to worker's compensation claims.

109.

The savings that Mohawk has been able to achieve and continues to achieve through its employment and harboring of illegal workers have been unjustly and inequitably conferred on Mohawk at the expense of its hourly workers who are authorized for employment in the United States, including Plaintiffs and all other members of the Class. These cost savings permit Mohawk to earn larger profits than it would be able to earn if it did not employ and harbor illegal workers.

110.

Under the circumstances, Mohawk has been unjustly enriched at the expense of the Plaintiffs and all the members of the Class.  Mohawk therefore should be ordered to disgorge its unlawful profits or otherwise return the full amount of any wage savings and worker's compensation savings that are the direct and proximate result of Mohawk's unlawful conduct.

## XIII.  PRAYER FOR RELIEF

Plaintiffs Pelfrey, Williams, Jones and Sisson demand judgment and other relief as follows:

A.    Certification of a Class pursuant to Fed. R. Civ. P. 23;

B.    Judgment in an amount equal to three times the actual damages sustained by the Class, pursuant to 18 U.S.C. § 1964(c);

C.    Reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c);

D.    Judgment in an amount equal to three times the actual damages sustained by the Class, pursuant to O.C.G.A. § 16-14-6(c);

E.    Attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred, pursuant to O.C.G.A. § 16-14-6(c);

-33-

F.    Appropriate orders and judgments prohibiting Mohawk from engaging in the violations of law alleged herein, pursuant to O.C.G.A. § 16-14-4(a) and (b);

G.    Judgment in an amount to be proven at trial that requires Mohawk to disgorge any unlawful profits or otherwise return the full amount of its unjust enrichment;

H.    Trial by jury; and

I.    Such other relief as the Court deems just and proper.

This 6th day of January, 2004.

Respectfully submitted,

Bobby Lee Cook
Georgia Bar No. 183100

COOK & CONNELLY
9899 Commerce Street
Summerville, GA 30747
(706) 857-3421
(706) 857-1520 (facsimile)

-34-

_John E. Floyd_

John E. Floyd
Georgia Bar No. 266413
Joshua F. Thorpe
Georgia Bar No. 710665
Ronan P. Doherty
Georgia Bar No. 224885
Nicole G. Iannarone
Georgia Bar No. 382510

BONDURANT, MIXSON & ELMORE, LLP
1201 W. Peachtree Street, N.W.
3900 One Atlantic Center
Atlanta, Georgia 30309
(404) 881-4000
(404) 881-4111 (facsimile)

_Matthew Thames / w permission_

Matthew Thames
Georgia Bar No. 703130

GODDARD, THAMES, HAMMONTREE
& BOLDING
2716 Cleveland Hwy.
P.O. Box 399
Dalton, GA 30722-0399
(706) 278-0464
(706) 278-0465 (facsimile)

Howard Foster w/ permission

Howard Foster*

JOHNSON & BELL, LTD
55 E. Monroe Street
Suite 4100
Chicago, IL 60603
(312) 372-0770
(312) 372-9818 (facsimile)


*Application for admission pro hac vice has been submitted

-36-

AO 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

NORTHERN _____ **DISTRICT OF** _____ GEORGIA _____

SHIRLEY WILLIAMS, GALE PELFREY,
BONNIE JONES and LORA SISSON,
Individually and on Behalf of
a Class

**v.**

MOHAWK INDUSTRIES, INC.

### SUMMONS IN A CIVIL ACTION

**CASE NUMBER:**

4 04 - CV - 03

HLM

TO: (Name and Address of Defendant)

MOHAWK INDUSTRIES, INC.
c/o REGISTERED AGENT: SALVATORE J. PERILLO
MOHAWK INDUSTRIES, INC.
P. O. BOX 12069
CALHOUN, GA  30703

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

BOBBY LEE COOK
COOK & CONNELLY
9899 COMMERCE STREET
P. O. BOX 370
SUMMERVILLE, GA   30747

JOHN E. FLOYD
JOSHUA F. THORPE
RONAN P. DOHERTY
NICOLE G. IANNARONE
BONDURANT, MIXSON & ELMORE
1201 W. PEACHTREE ST., N.W.
3900 ONE ATLANTIC CENTER
ATLANTA, GA   30309

MATTHEW THAMES
GODDARD, THAMES,
HAMMONDTREE & BOLDING
2716 CLEVELAND HIGHWAY
P. O. BOX 399
DALTON, GA 30722-0399

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

HOWARD FOSTER
JOHNSON & BELL, LTD.
55 E. MONROE STREET
SUITE 4100
CHICAGO, IL  60603

_____
CLERK

_____
BY DEPUTY CLERK

1-6-04
_____
DATE

AO 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

<u>NORTHERN</u> ——— **DISTRICT OF** ——— <u>GEORGIA</u>

ROME DIVISION

SHIRLEY WILLIAMS, GALE PELFREY,
BONNIE JONES and LORA SISSON,
Individually and on Behalf of
a Class

**SUMMONS IN A CIVIL ACTION**

**v.**

MOWHAWK INDUSTRIES, INC.

CASE NUMBER:

4 04 - cv - 03

TO: (Name and Address of Defendant)

MOHAWK INDUSTRIES, INC.
c/o REGISTERED AGENT: SALVATORE J. PERILLO
MOHAWK INDUSTRIES, INC.
160 SOUTH INDUSTRIAL BOULEVARD
CALHOUN, GA 30703

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

BOBBY LEE COOK
COOK & CONNELLY
9899 COMMERCE ST.
P. O. BOX 370
SUMMERVILLE, GA 30747

JOHN E. FLOYD
JOSHUA F. THORPE
RONAN P. DOHERTY
NICOLE G. IANNARONE
BONDURANT, MIXSON
 & ELMORE, LLP
1201 W. PEACHTREE ST.NW
3900 ONE ATLANTIC CENTER
ATLANTA, GA 30309

MATTHEW THAMES
GODDARD, THAMES,
 HAMMONDTREE & BOLDING
2716 CLEVELAND HIGHWAY
P. O. BOX 399
DALTON, GA 30722-0399

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

HOWARD FOSTER
JOHNSON & BELL, LTD.
55 E. MONROE STREET
SUITE 4100
CHICAGO, IL 60603

_____
CLERK

DATE  1-6-04

_____
BY DEPUTY CLERK