UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Rome

APR 12 2004

LUTHER D. THOMAS, Clerk

By: _____ Deputy Clerk

Shirley Williams,
Gale Pelfrey,
Bonnie Jones, and
Lora Sisson, individually
and on behalf of a class,

     Plaintiffs,

v.

Mohawk Industries, Inc.,

     Defendant.

CIVIL ACTION FILE
NO. 4:04-CV-0003-HLM

## ORDER

This is a class action alleging violations of the federal and Georgia Racketeer Influenced and Corrupt Organizations Acts ("RICO"). The case is before the Court on Defendant's Motion to Dismiss [25].

## I.    Background

### A.    The Parties

Plaintiffs are current and former hourly employees of Defendant who claim that Defendant's alleged employment and harboring of illegal aliens has depressed their wages. (Compl. ¶ 1.) Plaintiffs Gale Pelfrey, Shirley Williams, Bonnie Jones, and Lora Sisson are citizens of Georgia and reside in the Northern District of Georgia. (Id. ¶¶ 5-8.)

1

AO 72A
(Rev.8/82)

Plaintiffs Pelfrey, Williams, and Sisson are former hourly employees of Defendant. (Compl. ¶¶ 5, 6, 8.) Plaintiff Jones is currently an hourly employee of Defendant. (Id. ¶ 7.) Plaintiffs Pelfrey, Williams, Sisson, and Jones are eligible to be employed in the United States. (Id. ¶¶ 5-8.) Plaintiffs seek certification of a class consisting of all current and former employees of Defendant legally authorized to be employed in the United States who are or have been employed in hourly wage positions at any time since January 5, 1999, to the present (the "Class").[1] (Id. ¶ 39.)

Defendant is the second largest carpet and rug manufacturer in the United States. (Compl. ¶ 2.) Defendant employs approximately 31,780 persons, most of whom are employed in Northwest Georgia. (Id.) Defendant owns or leases at least twenty-six facilities in Georgia. (Id.) Defendant is a Delaware corporation with its principal place of business in Calhoun, Georgia. (Id. ¶ 9.)

**B.    Plaintiffs' Allegations**

Plaintiffs allege that Defendant has engaged in illegal hiring of persons who are not eligible for employment in the

---

[1]

Plaintiffs' Complaint also sets forth a number of allegations relating to the certification of a class of Defendant's former and current hourly employees. (See Compl. ¶¶ 39-53.) Those allegations are not relevant to the instant Motion.

2

United States in an effort to keep costs of labor as low as possible. (Compl. ¶ 14.) According to Plaintiffs, Defendant has accepted for employment and continues to employ workers that it knew or had reason to know were not authorized to work in the United States. (Id. ¶ 15.) Plaintiffs allege that Defendant has knowingly and recklessly accepted false documents or documents that do not match the identity of the person presenting the documents as proof of eligibility for employment. (Id. ¶ 16.) Additionally, Plaintiffs claim that Defendant has knowingly and recklessly accepted proof of eligibility for employment documents reflecting successive different names for a single person. (Id. ¶¶ 17, 19.) Indeed, Plaintiffs allege that when some illegal workers have informed Defendant that they would return to their countries of origin, supervisors employed by Defendant have encouraged those employees to return to the United States and illegally reapply for work at Defendant. (Id. ¶ 18.)

Plaintiffs claim that in an effort to conceal Defendant's employment and harboring of illegal workers, Defendant's employees have destroyed eligibility documents indicating that workers have employed different names and identification papers. (Compl. ¶ 20.) Furthermore, according to Plaintiffs, Defendant's employees and supervisors have stated that they are aware that illegal workers can easily obtain false

3

identification and work authorization documents.  (Id. ¶ 21.)

Plaintiffs claim that Defendant's employees have traveled to the United States border to recruit illegal aliens. (Compl. ¶ 22.)  According to Plaintiffs, those employees and other persons then transported the illegal aliens to North Georgia for employment at Defendant's facilities.  (Id.) Plaintiffs allege that Defendant has provided incentive to its employees and other recruiters by paying for locating illegal workers that Defendant eventually employs and harbors.  (Id.) Plaintiffs contend that Defendant's employees and recruiters have provided housing for illegal workers when the workers arrived in North Georgia, and have aided those illegal workers in finding employment with Defendant.  (Id. ¶ 23.)

Occasionally, Defendant audits its workforce and discovers illegal workers are employed with Defendant. (Compl. ¶ 24.)  According to Plaintiffs, Defendant has not increased the frequency of such audits despite the fact that the audits reveal that a large number of illegal workers are employed at Defendant.  (Id.)  Furthermore, Plaintiffs allege that when Defendant terminates an illegal worker after discovering that the illegal worker is not authorized to work in the United States, the worker frequently returns to work under a different name.  (Id. ¶ 25.)  Plaintiffs claim that this practice, termed "recycling," is widespread at Defendant.

4

(<u>Id.</u> ¶ 26.)   According to Plaintiffs, Defendant has been further put on notice of illegal workers because many illegal workers artificially inflate their claimed exemptions, thus avoiding paying federal income tax.  (<u>Id.</u> ¶ 32.)

Plaintiffs allege that law enforcement authorities have raided Defendant's facilities in search of illegal workers. (Compl. ¶ 27.)   Plaintiffs claim that when such raids have occurred, illegal workers have hidden in barrels or other containers or have fled.  (<u>Id.</u>)  According to Plaintiffs, the number of illegal workers who run or hide has put Defendant on notice that it employs a large number of illegal workers. (<u>Id.</u>)  Moreover, Plaintiffs contend that Defendant's employees and supervisors have assisted illegal workers in evading the law enforcement authorities.  (<u>Id.</u> ¶ 28.)

Plaintiffs state that law enforcement authorities have arrested some illegal workers at Defendant's facilities. (Compl. ¶ 29.)  Plaintiffs further allege that law enforcement authorities have discovered undocumented aliens in possession of paychecks issued by Defendant or identification badges and fraudulent identification documents.  (<u>Id.</u> ¶ 30.)

According to Plaintiffs, Defendant's supervisors have stated that illegal workers are preferable because those workers are more tolerant of working conditions and do not submit claims for workers' compensation.   (Compl. ¶ 31.)

5

Plaintiffs contend that because many of Defendant's workers are undocumented aliens, Defendant knows that those workers are beholden to Defendant, and thus are unlikely to complain about working conditions or file workers compensation claims. (Id. ¶¶ 36-37.)    Consequently, Plaintiffs believe that Defendant saves a considerable amount of money by employing undocumented aliens.  (Id. ¶ 37.)

According to Plaintiffs, Defendant's practice of employing and harboring large numbers of illegal workers has allowed Defendant to depress wages; consequently, the wages paid to hourly employees, including the legally employed hourly employees who are members of the Class, are lower than those wages would be if Defendant did not employ and harbor illegal workers.   (Compl. ¶ 33.)   Plaintiffs allege that Defendant employs tens of thousands of hourly workers in North Georgia (id. ¶ 34), and Defendant's widespread employment and harboring of illegal workers has substantially increased the supply of workers from which Defendant hires its hourly workers (id. ¶ 35).  Plaintiffs contend that because of the increased size of the labor pool, Defendant has depressed the wages it pays to all of its hourly employees, including members of the Class.  (Id.)  In other words, Plaintiffs claim that Defendant had only hired persons legally authorized to work in the United States, Defendant would have had to pay

6

higher wages to Plaintiffs and the members of the Class. (Id.)    Thus, according to Plaintiffs, as a direct and proximate result of Defendant's employment and harboring of illegal workers, the wages that Plaintiffs and the members of the Class have earned have been depressed.

### C.    Plaintiffs' RICO Claims

#### 1.    Pattern of Racketeering Activity

Plaintiffs first allege that Defendant is engaged in an ongoing pattern of racketeering activity as defined by 18 U.S.C.A. § 1961(5) & (8).  (Compl. ¶¶ 54, 56.)  According to Plaintiffs, Defendant has engaged in racketeering activity, namely, an open and ongoing pattern of violations of Section 274 of the Immigration and Nationality Act, 8 U.S.C.A. § 1324(a), more than twice, and the most recent occurrence took place within ten years after the commission of a prior act of racketeering activity.  (Id. ¶ 55, 57, 58.)  In particular, Plaintiffs allege that Defendant has violated and continues to violate:  (1) 8 U.S.C.A. §1324(a)(3)(A), which makes it a federal crime to "knowingly hire[] for employment at least 10 individuals with actual knowledge that the individuals are aliens" during a twelve month period (id. ¶ 59); (2) 8 U.S.C.A. § 1324(a)(1)(A)(iii), which makes it a federal crime to "conceal[], harbor[] or shield from detection, or attempt[] to conceal, harbor or shield from detection" aliens that have

7

illegally entered the United States (id. ¶ 60); and (3) 8 U.S.C.A. § 1324(a)(1)(A)(iv), which makes it a federal crime to "encourage[] or induce[] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law" (id. ¶ 61). Plaintiffs contend that each violation of 8 U.S.C.A. § 1324 constitutes an act of "racketeering activity" as defined by 18 U.S.C.A. § 1961(1)(F). (Id. ¶ 62.)

According to Plaintiffs, the "racketeering activity" also includes Defendant's open and ongoing violations of 18 U.S.C.A. § 1546(a) by knowingly accepting various false identification documents and other false documents indicating authorization for legal employment, and Defendant's continued violations of 18 U.S.C.A. § 1546(b) by using such documents to fill out I-9 forms. (Compl. ¶¶ 63-64.) Plaintiffs allege that each violation of 18 U.S.C.A. § 1546 constitutes an act of "racketeering activity" as defined by 18 U.S.C.A. § 1961(1)(B) as well as O.C.G.A. § 16-14-3(9)(A)(xxix). (Id. ¶¶ 65-66.)

Plaintiffs claim that the acts of Defendant's racketeering activity have the same or similar methods of commission in that those acts involve the knowing employment of illegal workers, the concealment, harboring, and shielding

8

from detection of illegal workers, and the acceptance or use of fraudulent documents in connection with the hiring of illegal workers. (Compl. ¶ 67.) According to Plaintiffs, the acts of racketeering activity have the same or similar objective--i.e. the reduction of wages paid to Defendant's workforce. (Id. ¶ 68.) Plaintiffs allege that the victims of those acts of racketeering activity are the same or similar. (Id. ¶ 69.) Plaintiffs also contend that the distinguishing characteristics of the acts of racketeering activity include the involvement of Defendant, illegal workers, and other third parties who assist in the recruitment and transportation of undocumented aliens. (Id. ¶¶ 70, 76-84.)

According to Plaintiffs, those acts of racketeering activity have occurred over a long period of time, and have become a part of Defendant's regular way of doing business. (Compl. ¶¶ 71-73.) Plaintiffs assert that Defendant has committed hundreds, and perhaps thousands, of violations of 8 U.S.C.A. § 1324 and 18 U.S.C.A. § 1546 as part of its racketeering activity. (Id. ¶ 74.) Indeed, Plaintiffs claim that Defendant's racketeering activity has been so pervasive that illegal workers currently constitute a majority of the workforce in many of Defendant's facilities in North Georgia. (Id. ¶ 75.)

AO 72A
(Rev.8/82)

### 2.    Enterprise

Plaintiffs also allege that Defendant has engaged in its pattern of racketeering activity through its participation in an association-in-fact enterprise, as defined by 18 U.S.C.A. § 1961(4), with third party employment agencies and other recruiters who supply Defendant with illegal workers. (Compl. ¶¶ 76, 79.)    Plaintiffs claim that one such recruiter is Temporary Placement Services ("TPS"), which has a formal relationship with Defendant in that TPS employs illegal workers and then loans those workers to Defendant for a fee. (Id.)    According to Plaintiffs, other recruiters simply find workers in an area surrounding Brownsville, Texas, and then transport those workers to Georgia. (Id.)    Plaintiffs contend that TPS and other recruiters also occasionally assist current and prospective illegal workers in assuming new identities. (Id.)    Plaintiffs allege that those recruiters share the common purpose of obtaining illegal workers for employment with Defendant. (Id. ¶ 77.)    Additionally, Plaintiffs contend that Defendant participates in the operation and management of the affairs of the enterprise, which exists fo Defendant's benefit. (Id. ¶ 78.)

Plaintiffs allege that the enterprise affects interstate commerce in that the illegal workers employed by Defendant travel in international and interstate commerce to reach

10

Defendant's facilities in North Georgia. (Compl. ¶¶ 80, 81.) According to Plaintiffs, the enterprise also affects interstate commerce in that the wages of legal workers employed with Defendant are depressed. (Id. ¶ 82.) Furthermore, Plaintiffs state that because Defendant is a member of the enterprise and is directly engaged in the production, distribution, and acquisition of goods and services in interstate commerce, the enterprise affects interstate commerce. (Id. ¶ 83.)

According to Plaintiffs, Defendant, by accepting and retaining the benefits of the racketeering activity, ratified the conduct of Defendant's managers, employees, and the members of the enterprise who assisted Defendant in committing those acts of racketeering activity. (Id. ¶ 84.)

### 3. Causation

Plaintiffs next allege that Defendant's violations of federal and Georgia RICO proximately caused the wages of Plaintiffs and the members of the Class to be lower than their wages otherwise would have been had the labor pool consisted solely of legally employed workers. (Compl. ¶ 85.) Thus, Plaintiffs and the Class claim that they have suffered an injury to their business or property. (Id. ¶ 86.) As a result, Plaintiffs contend that Defendant has earned or retained significant funds to which it is not entitled. (Id.

11

¶ 87.)

### D.    Procedural Background

On January 6, 2004, Plaintiffs filed this lawsuit. Plaintiffs assert the following claims: (1) a claim that Defendant's conduct violates 18 U.S.C.A. § 1962(c) (Compl. 88-92); (2) a claim that Defendant's conduct violates O.C.G.A. § 16-14-4(a) (id. 93-98); (3) a claim that Defendant's conduct violates O.C.G.A. § 16-14-4(c) (id. 99-105); and a claim for unjust enrichment arising under Georgia law (id. ¶¶ 106-110). Plaintiffs also seek certification of a class pursuant to Federal Rule of Civil Procedure 23. (Id. ¶ 46.)

On February 9, 2004, Defendant filed its Motion to Dismiss pursuant to Federal Rules of Civil Procedure (12)(b)(6) and (12)(b)(1),[2] in which Defendant requests that the Court dismiss Plaintiffs' federal and state RICO claims.

---

[2]    Defendant moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) only with respect to the elements of 18 U.S.C.A. 1964(c), which provides the requirements for a plaintiff to have standing to pursue a civil private right of action under RICO. Apparently, some question exists as to whether a motion to dismiss under § 1964(c) is properly characterized as a 12(b)(6) motion (i.e. failure to state a claim upon which relief can be granted) or a 12(b)(1) motion (i.e. lack of jurisdiction over the subject matter). See Moore v. PaineWebber, Inc., 189 F.3d 159, 169 n.3 (2d Cir. 1999) (applying 12(b)(6), but expressing belief that 12(b)(1) was more appropriate ground for dismissal). The Court appreciates the distinction between 12(b)(1) and 12(b)(6), but concludes that for the purposes of the instant Motion, an analysis under 12(b)(6) suffices.

12

Defendant also requests that the Court decline to exercise its pendent jurisdiction over Plaintiffs' state law claims.

## II.    Standard Governing Motions to Dismiss

The standard for a court to dismiss a claim is whether "it appears beyond doubt that the plaintiff can prove no set of facts to support his claim." GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). When considering a motion to dismiss, the Court "must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs." White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir. 1999). However, "[a]s a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996).

## III. Discussion

### A.    Plaintiffs' Federal RICO Claim

18 U.S.C.A. § 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

13

through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C.A. § 1962(c). RICO establishes both civil remedies and criminal penalties for violations of § 1962. See 18 U.S.C.A. §§ 1963-1964. In particular, § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." 18 U.S.C.A. § 1964(c). Thus, for a plaintiff to have standing to pursue a private civil cause of action under RICO, the plaintiff must prove the following elements: (1) that the defendant violated § 1962; (2) that the plaintiff sustained an injury to his business or property; and (3) that the violation of §1962 caused the injury. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991) (citing O'Malley v. O'Neill, 887 F.2d 1557, 1560-61 (11th Cir. 1989)). Likewise, to prevail on a civil RICO claim under § 1962(c), the plaintiff must show: (1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that the defendant participated through a pattern of

14

racketeering activity.    United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995).

18 U.S.C.A. § 1961 provides definitions for some of the terms used in § 1962(c). "Racketeering activity" includes a number of "predicate acts" that the racketeer must commit for a violation of RICO.    18 U.S.C.A. § 1961(1).    Notably, violations of 8 U.S.C.A. § 1324 and 18 U.S.C.A. § 1546, the predicate acts that Plaintiffs allege Defendant committed, are among those predicate acts listed in § 1961(1).    18 U.S.C.A. § 1961(1)(B) & (F).    A "pattern of racketeering activity" is defined as at least two acts of racketeering activity that occurred within ten years after the commission of a prior act of racketeering activity.    18 U.S.C.A. § 1961(5); see Pelletier v. Zweifel, 921 F.2d 1465, 1496 (11th Cir. 1991) ("A 'pattern' of racketeering activity is shown when a racketeer commits at least two distinct but unrelated predicate acts."). Section 1961 also provides that an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C.A. § 1961(4). Likewise, a "person" liable under § 1962(c) is defined as "any individual or entity capable of holding a legal or beneficial interest in property."    18 U.S.C.A. § 1961(3).

Defendant    contends    that    the    Court    should    dismiss

15

Plaintiffs' Complaint because: (1) the Complaint does not sufficiently allege the elements of the RICO predicate action; (2) the Complaint fails to identify a legally sufficient RICO enterprise; and (3) Plaintiffs lack standing to assert their RICO claims.  The Court addresses each of those arguments in turn.

### 1.   Sufficiency of Pleadings

#### a.   Whether Plaintiffs Failed to Plead Predicate Acts with Particularity

As a threshold matter, the Court addresses Defendant's contention that Plaintiffs' Complaint fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  When pleading a RICO action, it is well-settled that where the predicate act sounds in fraud (e.g. mail fraud, wire fraud, or securities fraud), the plaintiff must plead that predicate act with particularity as required by Federal Rule of Civil Procedure 9(b).  Byrne v. Nezhat, 261 F.3d 1075, 1109-10 (11th Cir. 2001) (mail fraud); Republic of Panama v. BCCI Holdings (Lux.), 119 F.3d 935, 949 (11th Cir. 1997) (wire fraud); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-82 (11th Cir. 1997) (mail fraud and wire fraud); Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511-12 (11th Cir. 1988) (securities fraud); see also 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1251.1 n.13 (citing cases finding that fraud

16

claims brought under RICO must comply with pleading requirements of Rule 9(b)).

As the United States Court of Appeals for the Eleventh Circuit has not yet addressed whether the heightened pleading requirement of Rule 9(b) applies to RICO causes of action premised on non-fraud predicate acts, some ambiguity exists as to whether the particularized pleading requirements of Rule 9(b) apply in all RICO actions. Compare Taylor v. Bear Stearns & Co., 572 F. Supp. 667, 682 (N.D. Ga. 1983) (Forrester, J.) ("It seems, however, to this court at least that there are many sound reasons for requiring that, like fraud, [RICO] must be pled with particularity.") and Helicopter Support Sys., Inc. v. Hughes Helicopters, Inc., No. 83-1450-Civ.-T-15, 1984 WL 3238, at *1 (M.D. Fla. June 22, 1984) (same) with Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 945 F. Supp. 1355, 1380 n.25 (D. Or. 1996) (finding Rule 9(b) inapplicable where predicate acts are extortion and coercion); and United States v. Int'l Bhd. of Teamsters, 708 F. Supp. 1388, 1395-96 (S.D.N.Y. 1989) ("This court is not persuaded by the reasoning of the courts that have applied Rule 9(b) to RICO actions not sounding in fraud, and adopts the reasoning of courts that limit the application of Rule 9(b) to fraud based RICO claims."); and United States v. Bonanno Organized Crime Family

17

of LaCosa Nostra, 683 F. Supp. 1411, 1426-27 (E.D.N.Y. 1988) (finding "no basis for extending the reach of Rule 9(b) to all RICO cases"). Those courts holding that Rule 9(b) applies in all RICO actions reason such heightened pleading is appropriate in light of the _in terrorem_ effect of pleading RICO and in order to put the RICO defendant on notice of the claim against him. See Taylor, 572 F. Supp. at 682 ("First, the mere invocation of the statute has such an _in terrorem_ effect that it would be unconscionable to allow it to linger in a suit and generate suspicion and unfavorable opinion of the putative defendant unless there is some articulable factual basis which, if true, would warrant recovery under the statute. Second, the concepts within the statute are so nebulous that if the cause of action were only generally pled, a defendant would have no effective notice of a claim showing that the pleader is entitled to relief.")

Plaintiffs urge the Court to find that the appropriate pleading standard for non-fraud RICO predicate activities is the standard provided in Rule 8(e)(1). See Fed. R. Civ. Proc. 8(e)(1) ("Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required."). Specifically, Plaintiffs contend that the reasoning underlying Taylor is inapplicable in light of Sedima, S.P.R.L. v. Imerx Co., 473 U.S. 479 (1985). In

18

Sedima, the United States Supreme Court held that a plaintiff in a RICO action need not allege and prove that the defendant had previously been convicted under RICO.    473 U.S. at 492. In reaching that conclusion, the Supreme Court dismissed the argument that a RICO conviction should be required to pursue a civil RICO action, stating, "[a]s for stigma, a civil RICO proceeding leaves no greater stain than do a number of other civil proceedings."    Id.    Plaintiffs urge the Court to conclude that in light of the foregoing language from Sedima, Rule 9(b) is limited to cases that actually involve fraud or mistake, and does not apply in every case where the defendant claims it is stigmatized.

The Court finds Plaintiffs' reasoning persuasive, and finds that the better approach, and certainly the majority approach, is to apply the liberal pleading standards of Rule 8 to RICO actions involving non-fraud predicate activities. Additionally, the Court notes Taylor and Helicopter Support Sys. are distinguishable because the predicate activities in those cases were mail fraud and wire fraud, rather than a non-fraud predicate act.[3]    Accordingly, the Court finds that where

---

[3]

In Helicopter Support Sys., the plaintiff also asserted a claim for commercial bribery.    Helicopter Support Sys. at *1.    The court found that the plaintiff failed to show that commercial bribery was a predicate offense under § 1961(1); thus, it was unnecessary to address whether that offense required heightened pleading under Rule 9(b).    Id.

19

a predicate act does not sound in fraud, the plaintiff asserting a RICO claim need only comply with the general pleading requirements of Rule 8(e)(1), rather than the heightened pleading requirements of Rule 9(b).[4]

Having determined that Rule 9(b) is inapplicable in cases involving non-fraud RICO actions, the Court next addresses Defendant's argument that the predicate acts enumerated in Plaintiffs' Complaint sound in fraud, and must therefore be pled with particularity.  In support of its position, Defendant cites to a string of criminal cases where courts referred to the predicate acts alleged in the instant lawsuit as "acts of fraud."  See, e.g., United States v. Rodriguez-Suazo, 346 F.3d 637 (6th Cir. 2003); United States v. Thiongo, 344 F.3d 55, 58 (1st Cir. 2003); United States v. Hendricks, No. 99-4562, 2000 WL 341914, at *2 (4th Cir. Apr. 3, 2000); United States v. Yum, 776 F.2d 490, 491 (4th Cir. 1985). Those cases, however, do not require a finding that the

---

[4]

     Defendant's reliance on United States v. Club Car Import, Inc. 276 F. Supp. 2d 1276 (S.D. Ga. 2003), is misplaced.  In that case, the plaintiff was required to plead predicate acts of extortion and mail fraud with particularity simply because Local Rule 9.1 for the United States District Court for the Southern District of Georgia requires such specificity.  See L.R.S.D. Ga. 9.1 ("All pleadings which allege violations of . . ., RICO, and other similar statutes, whether federal or state, shall specifically state each alleged violation.")  This Court, however, has no such provision in its Local Rules.  Consequently, the Court does not find Club Car applicable in this case.

AO 72A
(Rev.8/82)

predicate acts based on violations of 8 U.S.C.A. § 1324(a) and 18 U.S.C.A. § 1546 sound in fraud.  The cases relied upon by Defendant involve defendants who were charged with making false representations, or conspiring to make false representations, to the federal government.  By contrast, Plaintiffs do not allege that Defendant made false representations to Plaintiffs or the government; rather, Plaintiffs allege that Defendant has employed and harbored illegal workers.  The predicate acts in this case consequently do not sound in fraud.  Because the predicate acts in this case do not sound in fraud, the Court finds that Rule 9(b) is inapplicable to this case.  Instead, Plaintiffs need only satisfy the requirements of Federal Rule of Civil Procedure 8.

The Court further notes that it has evaluated the Complaint, and finds that it satisfies the requirements set forth in Rule 8.  Accordingly, the Court cannot dismiss the Complaint on the ground that Plaintiffs failed to plead the predicate acts adequately.

> **b.    Whether Plaintiffs Failed to Allege All the Elements Required to Plead a Violation of 8 U.S.C.A. § 1324(a)(3)**

Defendant also contends that Plaintiffs have failed to plead sufficiently the violation of 8 U.S.C.A. § 1324(a)(3), one of the predicate acts alleged in the Complaint.

21

Specifically, Defendant claims that the Complaint fails to allege all the required elements of § 1324(a)(3), which provides:

> (A)   Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B) shall be fined under Title 18 or imprisoned for not more than 5 years, or both.
>
> (B) An alien described in this subparagraph is an alien who-
>
>> (i)  is an unauthorized alien (as defined in section 1324a(h)(3) of this title), and
>>
>> (ii) has been brought into the United States in violation of [8 U.S.C.A. § 1324(a)].

8 U.S.C.A. § 1324(a)(3).   Defendant contends that to plead a violation of § 1324(a)(3) adequately, Plaintiffs must allege that Defendant knowingly hired ten or more aliens and that Defendant _itself_ brought those aliens into the United States.

In support of its position, Defendant relies on System Management, Inc. v. Loiselle, 91 F. Supp. 2d 401 (D. Mass. 2000).  The Court, however, does not agree that the holding of Loiselle is as limited as Defendant insists.  In Loiselle, the defendant owner and chief executive officer of a janitorial and custodial services company was sued by two competitor corporations and four former employees.  Loiselle, 91 F. Supp. 2d at 404.   The plaintiffs alleged that the defendant had

violated RICO by engaging in racketeering activity including "knowingly hiring at least ten individuals with knowledge that they were 'aliens' as described in 8 U.S.C. § 1324(a)(3)(A)." Id. at 408. The defendant argued, and the court agreed, that the RICO claim premised on § 1324(a)(3) should be dismissed because the plaintiffs failed to allege "how the aliens entered the country or whether [the defendant] had knowledge of the purpose for which they entered." Id. The court reasoned that the language of § 1324(a)(3)(B)(ii) "seems to require, in order for liability to attach, that the aliens have been brought into the country by an employer for the purpose of illegal employment." Id. In other words, "the Plaintiffs must allege that [the defendant] had knowledge of how the aliens had been brought into the United States and that they were brought into the United States in violation of this employment provision." Id. Thus, Loiselle holds that simple allegations that the defendant knowingly hired undocumented aliens are insufficient to state a claim under § 1324(a)(3); rather, a plaintiff must additionally allege that the defendant knew that the aliens were brought into the United States for the purpose of illegal employment. Loiselle, however, did not hold that the employer itself must have brought the aliens into the United States for a claim to arise under § 1324(a)(3). Accordingly, the Court concludes

23

that for a plaintiff to plead a violation of § 1324(a)(3) adequately, the plaintiff must simply allege that the aliens were <u>brought</u> into the United States in violation of subsection (a), but there is no requirement that the employer must have brought the aliens into this country.

Turning to the Complaint, the Court concludes that Plaintiffs have pleaded adequately the elements of § 1324(a)(3). Specifically, Plaintiffs have alleged that Defendant has hired illegal workers knowing that those workers were "smuggled or otherwise brought" into the United States illegally. (Compl. ¶ 59.) See <u>Mendoza v. Zirkle Fruit Co.</u>, No. CS-00-3024-FVS, 2000 WL 33225470, at *4 (E.D. Wash. Sept. 27, 2000) (finding "the plaintiffs have adequately pled a predicate act . . . by alleging that the defendants knew that some of their workers were unlawfully brought into the United States"). Accordingly, the Court denies Defendant's Motion to Dismiss as to this ground.

### 2. Enterprise

The Court next determines whether the Complaint adequately alleges the existence of a RICO enterprise. Defendant contends that Plaintiffs' Complaint fails as a matter of law to allege that a RICO enterprise existed and that the Court thus must dismiss Plaintiffs' Complaint. Specifically, Defendant claims: (1) that Plaintiffs have not

24

and cannot allege that Defendant participated in the affairs of a RICO enterprise, rather than its own affairs, through the alleged immigration law violations; (2) that Plaintiffs have failed to allege a RICO enterprise distinct from Defendant; and (3) that Plaintiffs have failed to allege the existence of a common purpose and unified structure.

As explained supra Part III.A., a RICO "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," 18 U.S.C.A. § 1961(4), and a RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C.A. § 1961(3). "For the purposes of [§ 1962(c)], the indictment [or complaint] must name a RICO person distinct from the RICO enterprise. The plain language of the statute requires that [those] entities be distinct." United States v. Goldin Indus., Inc., 219 F.3d 1268, 1271 (11th Cir. 2000) (hereinafter "Goldin I"). The Eleventh Circuit does not require a strict, formal association of participants; rather, "the existence of an enterprise 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" United States v. Goldin Indus., Inc., 219 F.3d 1271, 1275 (11th Cir. 2000) (hereinafter "Goldin II")

(quoting <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981)).
"[T]he definitive factor in determining the existence of a
RICO enterprise is the existence of an association of
individual entities, however loose or informal, that furnishes
a vehicle for the commission of two or more predicate crimes,
that is, the pattern of racketeering activity requisite to the
RICO violation." <u>Id.</u>; <u>United States v. Elliott</u>, 571 F.2d 880,
897-98 (5th Cir. 1978);[5] <u>see also</u> <u>United States v. Hawes</u>, 529
F.2d 472, 479 (5th Cir. 1976) (recognizing that Congress gave
the term "enterprise" a very broad meaning).  Indeed, "a RICO
enterprise may be an 'amoeba-like' structure or a loose
informal association." <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1578
(11th Cir. 1991) (citing <u>United States v. Cagnina</u>, 697 F.2d
915, 921 (11th Cir. 1983)).

Notably, the existence of an enterprise is a separate
element that the plaintiff must prove--*i.e.* although a pattern
of racketeering activity must be shown by pointing to evidence
of the requisite number of racketeering acts by participants
in the enterprise, such evidence does not necessarily
establish the existence of an enterprise. <u>Turkette</u>, 452 U.S.
at 583.  Indeed, "[t]he 'enterprise' is not the 'pattern of

---

[5]     Opinions of the Fifth Circuit issued prior to October 1,
1981, the date marking the creation of the Eleventh Circuit,
are binding precedent on this Court. <u>See</u> <u>Bonner v. City of
Prichard</u>, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).

racketeering activity'; it is an entity separate and apart form the pattern of activity in which it engages." _Id._ Nevertheless, the Eleventh Circuit recognizes that "under our case law, a RICO enterprise need not possess an 'ascertainable structure' distinct from the associations necessary to conduct the pattern of racketeering activity." _Goldin II_, 219 F.3d at 1274-75 (quoting _United States v. Weinstein_, 762 F.2d 1522, 1537 n.13 (11th Cir. 1985)).

In support of its position that the Complaint fails to allege the existence of an enterprise adequately, Defendant relies heavily on a similar opinion issued by the Seventh Circuit, _Baker v. IBP, Inc._, 357 F.3d 685 (7th Cir. 2004). In _Baker_, unionized current and former employees of one of the defendant's meat-processing plants filed a class action lawsuit on behalf of all current and former hourly employees at that plant who were authorized to work in the United States. _Baker_, 357 F.3d at 686. Specifically, the complaint in _Baker_ alleged that nearly half of the employees at the defendant's plant were aliens who were unauthorized to work legally in the United States. _Id._ The plaintiffs claimed that the defendant turned a blind eye to bogus identification documents, alerted its illegal workers when immigration officials were about to conduct inspections, and paid recruiters to smuggle captured illegal workers back into the

27

United States for re-employment under pseudonyms. <u>Id.</u> at 687.
The complaint further alleged that the defendant had
arrangements with immigrant welfare organizations, who
referred known undocumented aliens to the defendant for
employment. <u>Id.</u> Plaintiffs alleged that as a result of that
activity, wages at the defendant's plant were depressed
compared with what the defendant would have had to pay if the
labor pool consisted only of persons legally authorized to
work in the United States. <u>Id.</u>

In affirming the district court's dismissal of the
complaint, the Seventh Circuit first concluded that the union
representing the plaintiffs was the proper representative with
respect to the wages issue rather than the employees
individually. The court also concluded that "there [was]
another fatal problem in [the] complaint: specification of the
'enterprise.'" <u>Baker</u>, 357 F.3d at 691. The complaint alleged
that the "enterprise" was the defendant plus the persons and
organizations who assisted the defendant in recruitment of
illegal workers. The court first noted that the complaint
came "perilously close to alleging that [the defendant] plus
its agents and employees is the 'enterprise,' a theory that
won't fly." <u>Id.</u> (citing <u>Bucklew v. Hawkins, Ash, Baptie &
Co.</u>, 329 F.3d 923, 934 (7th Cir. 2003)).

The court also found that the complaint was flawed for

28

failure to identify a common purpose: "it is not altogether clear how this 'association in fact' has a common purpose, an essential ingredient." Id. (citing Turkette, 452 U.S. at 583). The court took a conservative reading as to whether the members of the "association in fact," had a common purpose concluding that their goals were divergent because the defendant wanted to pay lower wages, the recruiters wanted to be paid for their recruitment services, and the immigrant welfare organizations wanted to assist members of the ethnic group. Id. Consequently, the court found that no common purpose existed. Id.

Finally, the Baker court found that the plaintiffs failed to allege that the defendant operated or managed the purported enterprise through a pattern of racketeering. Baker, 357 F.3d at 692. The court explained that the complaint was insufficient because "[t]he nub of the complaint [was] that [the defendant] operate[d] itself unlawfully--it is [the defendant] that supposedly hires, harbors, and pays the unlawful workers, for the purpose of reducing its payroll." Id. at 361. Specifically, the court stated that "[the defendant] does not manage or operate some other enterprise by violating [8 U.S.C.A. § 1324]; the complaint does not allege-- and on appeal plaintiffs do not seek an opportunity to show-- that [the defendant] ha[d] infiltrated, taken over,

29

manipulated, disrupted, or suborned a distinct entity or even a distinct association in fact." Id. The Court therefore found that the plaintiffs failed to allege that the defendant operated an enterprise through a pattern of racketeering activity. Id.

Turning to the instant case, the Court first considers Defendant's argument that Plaintiffs have failed to allege that Defendant operated or participated in the affairs of an enterprise through a pattern of racketeering activity. Specifically, Defendant contends that Plaintiffs have failed to allege that Defendant, through its allegedly illegal conduct, operated or participated in the affairs of an "association in fact" as opposed to Defendant's own affairs. In support of its position, Defendant points to various paragraphs in the Complaint that allege that Defendant, as opposed to the purported enterprise, harbored and employed illegal workers in order to reduce the cost of its workforce. (See Compl. ¶¶ 3, 14, 16-18, 59-61; 63-64, 67.)

In response, Plaintiffs argue that the Complaint alleges that Defendant "participates in the affairs of an enterprise that transcends [Defendant] itself and that consists of [Defendant] and various other persons and entities." (Def. Br. Resp. at 7 (emphasis deleted).) Specifically, Plaintiffs point to the following language in the Complaint:

30

> Mohawk has engaged in an open and ongoing
> pattern of violations of 8 U.S.C. § 1324 and 18
> U.S.C. § 1546 during the last five years through
> its participation in an association-in-fact
> enterprise with third party employment agencies and
> other recruiters, including Temporary Placement
> Services ("TPS"), that supply Mohawk with illegal
> workers. Each recruiter is paid a fee for each
> worker it supples to Mohawk, and some of those
> recruiters work closely with Mohawk to meet its
> employment needs by offering a pool of illegal
> workers who can be dispatched to a particular
> Mohawk facility on short notice as the need arises.
> Some recruiters find workers in the Brownsville,
> Texas area and transport them to Georgia. Others,
> like TPS, have relatively formal relationships with
> the company in which they employ illegal workers
> and then loan or otherwise provide them to Mohawk
> for a fee. These recruiters are sometimes assisted
> by Mohawk employees who carry a supply of social
> security cards for use when a prospective or
> existing employee needs to assume a new identity.

(Compl. ¶ 76.) Plaintiffs maintain that given the nature of

an association-in-fact enterprise, it is to be expected that

the defendant will be engaged in the management of its own

affairs--what is most important, however, is that the

defendant also participates in the affairs of an enterprise.

Defendant correctly asserts that "liability 'depends on

showing that the defendants conducted or participated in the

conduct of the enterprises's affairs, not just their own

affairs.'" Cedric Kushner Promotions, Ltd. v. King, 533 U.S.

158, 163 (2001) (quoting Reves v. Ernst & Young, 507 U.S. 170,

185 (1993)) (internal quotation omitted) (emphasis deleted).

The Eleventh Circuit has nevertheless recognized that "the

definitive factor in determining the existence of a RICO

31

enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for he commission of two or more predicate acts." <u>Goldin II</u>, 219 F.3d at 1275; <u>Weinstein</u>, 762 F.2d at 1537.   Here, the Complaint alleges that Defendant participated in the conduct of an enterprise's affairs by paying recruiters for illegal workers and by maintaining a formal relationship with TPS, and that those parties, as an association-in-fact, provided the means for the commission of a number of immigration law violations.   Consequently, the Court finds that Plaintiffs' Complaint sufficiently alleges that Defendant operated or participated in the affairs of an enterprise through a pattern of racketeering activity.

The Court next addresses whether Plaintiffs have failed to allege an enterprise distinct from Defendant itself. Although the Complaint clearly alleges that the other members of the alleged enterprise are independent third parties rather than employees or agents of Defendant (Compl. ¶ 76.), Defendant urges the Court to follow <u>Baker</u>, and to find that the Complaint fails to allege the existence of an enterprise.

At this stage in the litigation, however, the Court need only determine whether the Complaint sufficiently alleges the existence of an enterprise separate from Defendant.   After consideration of the allegations in the Complaint, the Court

32

concludes that for the purposes of this Motion to Dismiss, Plaintiffs have adequately alleged that the recruiters are separate and independent entities from Defendant. Whether the third party recruiters are in fact agents of Defendant is a factual issue, but for the purposes of the instant Motion Plaintiffs have met their burden to allege that the association-in-fact enterprise consisted of Defendant and separate entities. See Cedric Kushner Promotions, 533 U.S. at 164 (citing Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994)); In re Managed Care Litig., 298 F. Supp. 2d 1259, 1276-77 (S.D. Fla. 2003) (finding complaint sufficiently alleged control and participation in association-in-fact enterprise). Cf. Fitzgerald v. Chrysler Corp., 116 F.3d 225, 228 (7th Cir. 1997) ("[W]here a large, reputable manufacturer deals with its dealers and other agents in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the manufacturer plus its dealers and other agents . . . do not constitute an enterprise within the meaning of [RICO]."). Accordingly, the Court cannot conclude that Plaintiffs have failed to allege the existence of an enterprise district from Defendant itself.

33

Defendant next argues that Plaintiffs have failed to allege the existence of an enterprise because the Complaint does not adequately allege the existence of a common purpose among the members of the association-in-fact. Specifically, Defendant claims that rather than alleging a common purpose between Defendant and the recruiters, Plaintiffs' Complaint indicates that the members of the purported enterprise had divergent goals and purposes. (See Compl. ¶ 22 ("Mohawk has made various incentive payments to employees and other recruiters for locating workers that Mohawk eventually employs and harbors.").) Defendant therefore contends that as a matter of law, no enterprise exists. Defendant cites to the following language in Baker in support of its argument: "[the employer] wants to pay lower wages; the recruiters want to be paid more for services rendered (though [the employer] would like to pay them less); and the [immigrant welfare organizations] want[] to assist members of [their] ethnic group." Baker 357 F.3d at 691. Thus, because the members of the enterprise have divergent goals, Defendant concludes that no association-in-fact enterprise exists.

Plaintiffs respond that in this case, the members of the enterprise indeed share a common purpose namely, "the common purpose of obtaining illegal workers for employment by Mohawk." (Compl. ¶ 77.) Moreover, Plaintiffs maintain that

34

no authority exists in the Eleventh Circuit for the proposition that divergent individual goals of persons in a purported association-in-fact enterprise precludes the existence of such enterprise as a matter of law.

The Eleventh Circuit takes a broad approach as to what qualifies as an enterprise. See United States v. Hewes, 729 F.2d 1302, 1310-12 (11th Cir. 1984) (upholding jury determination that "'informal, de facto association' existed among the defendants that united them in the common purpose of making money from repeated criminal activity") (quoting Elliott, 571 F.2d at 898); Cagnina, 697 F.2d at 921-922 (finding evidence sufficient to support jury's finding of enterprise where common purpose of making money existed). Because the Complaint in this case explicitly alleges that a common purpose exists--obtaining illegal workers for employment by Defendants--the Court cannot agree with Defendant that Plaintiffs' Complaint is deficient.

In sum, the Court finds that the Complaint adequately sets forth allegations concerning the existence of an enterprise. Specifically, Plaintiffs have sufficiently alleged that Defendant participated in the affairs of a RICO enterprise as opposed to its own affairs, that a RICO enterprise exists distinct from Defendant, and that a common purpose and unified structure exists among the participants in

35

AO 72A
(Rev.8/82)

the purported enterprise. Consequently, the Court denies Defendant's Motion to Dismiss on the ground that the Complaint fails to allege the existence of an enterprise.

### 3.    Standing Under RICO

Defendant also argues that Plaintiffs do not have standing to sue because (1) Plaintiffs failed to allege injury to a concrete interest in business or property; and (2) Plaintiffs cannot show that Defendant's alleged violations of 8 U.S.C.A. § 1324 proximately caused Plaintiffs' injuries. The Court discusses each of those arguments in turn.

### a.    Whether Plaintiffs Have Alleged Injury to their "Business or Property"

The Court turns first to whether Plaintiffs have alleged an injury to their business or property. Defendant argues that each Plaintiff accepted employment with Defendant at an agreed-upon wage rate, and that Plaintiffs cannot allege an injury to their business or property because Defendant paid each Plaintiff in accordance with those wage rates. In other words, Defendant claims that because it compensated Plaintiffs as the parties agreed, no injury has occurred, and Plaintiffs thus lack standing to pursue this action.

The Court cannot agree that as a matter of law Plaintiffs have failed to allege an injury to their business or property. The premise of Defendant's argument is that Defendant and Plaintiffs were able to bargain freely on a fair wage rate;

36

however, assuming that Plaintiffs have been injured by reason of Defendant's alleged racketeering activities, the presence of illegal workers in the labor pool adversely has affected Plaintiffs' ability to command higher wage rates.   In other words,  if  Plaintiffs  are  correct  regarding  issues  of causation, Plaintiffs had no power to command higher wage rates due to the influx of illegal workers.   Consequently, Plaintiffs' acceptance of lower wages could not act as a waiver of their alleged injuries.  See Mendoza, 301 F.3d at 1168 n.4. ("[W]hat is required is precisely what the employees allege  here:  a  legal  entitlement  to  business  relations unhampered  by  schemes  prohibited  by  the  RICO  predicate statutes."). Thus, the Court cannot agree with Defendant that Plaintiffs  have  failed,  as  a  matter  of  law,  to  allege  an injury  to  Plaintiffs'  business  or  property.    The  Court therefore cannot find that Plaintiffs lack standing based on this argument.

### b.   Whether Plaintiffs Have Alleged Injury "By Reason of" a Violation of § 1962(c)

Defendant further argues that Plaintiffs have not alleged an injury "by reason of" a violation of § 1962(c) and that Plaintiffs consequently cannot show that Defendant's alleged violations  caused  Plaintiffs'  injuries.    Section  1964(c) requires a plaintiff to show that he sustained injury "by reason of" the defendant's violation of § 1962.  The Supreme

37

Court, in Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992), held that the "by reason of" language of § 1964(c) requires a showing of both direct and proximate causation. 503 U.S. at 268-69. "In order for a pattern of racketeering activity to be a cognizable cause of civil RICO injury to a private plaintiff, one or more of the predicate acts must not only be the 'but for' cause of the injury, but the proximate cause as well." Green Leaf Nursery v. E.I. DuPont de Nemours & Co., 341 F.3d 1292, 1307 (11th Cir. 2003) (citing Holmes, 503 U.S. at 268). Thus, for a plaintiff to have standing under RICO, he must allege and prove that "'his injury flowed directly from the commission of the predicate acts.'" Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc., 140 F.3d 898, 906 (11th Cir. 1998) (quoting Pelletier, 921 F.2d at 1499).

In analyzing whether a plaintiff has adequately alleged an injury "by reason of" a violation of § 1962(c), the Supreme Court in Holmes recognized that "'the infinite variety of claims that may arise make it virtually impossible to announce a black-letter rule that will dictate the result in every case.'" Holmes, 503 U.S. at 272 n.20 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 536 (1983) (footnote omitted)). Thus, "use of the term 'direct' should merely be understood as a reference to the proximate-

38

cause enquiry that is informed by the [policy] considerations set out in the text [of the <u>Holmes</u> opinion]." <u>Id.</u>  In conducting proximate cause analysis under RICO, a court must therefore consider the following policy considerations on a case-by-case basis: (1) whether other parties are in a more suitable position to vindicate the law--*i.e.* whether the plaintiff is the direct victim of the alleged illegal conduct; (2) whether the court can identify a method to apportion possible recoveries; and (3) whether the damages alleged by the plaintiff are too speculative, that is, whether the court has the ability to identify what portion of the plaintiff's damages arose from the defendant's alleged RICO violations as opposed to other independent conditions. <u>Id.</u> at 273.

In its Motion to Dismiss, Defendant first contends that Plaintiffs cannot show, and thus cannot allege, that Plaintiffs are the direct victims of Defendant's alleged wrongdoing, and that Plaintiffs consequently are not the best-suited persons to maintain this action.  Defendant next contends that Plaintiffs' theory of damages is simply too speculative to support a finding that Defendant's conduct proximately caused Plaintiffs' injuries.[6]  The Court addresses

---

[6]
Defendant does not contend that other parties are better-situated to vindicate the aims of RICO.  Because the Court concludes that Plaintiffs' injuries, as alleged, are not derivative of injury to a third party, the Court sees no reason why a party other than Plaintiffs should instead pursue

AO 72A
(Rev.8/82)

each of those arguments in turn.[7]

### i.    Direct Injury

In the instant action, Defendant first claims Plaintiffs lack standing because the legally authorized hourly workers constituting the putative class are not the direct victims of Defendant's alleged pattern of racketeering activity--*i.e.* Plaintiffs are not the best persons to vindicate RICO.

---

this action.

[7]

    As an initial matter, the Court addresses Defendant's argument that Plaintiffs have standing as to pursue their federal RICO action only as to the predicate act of employing illegal workers. Specifically, Defendant claims that because Plaintiffs cannot show that the predicate acts of harboring and transporting illegal aliens and the use and acceptance of fraudulent documents caused injury to Plaintiffs, Plaintiffs lack standing with respect to those predicate acts.

    The Eleventh Circuit has stated that "[i]f no injury flowed from a particular predicate act, no recovery lies for the commission of that act." Pelletier, 921 F.2d at 1497-98 (finding no standing as to predicate act of bankruptcy fraud where predicate act actually benefitted plaintiff). However, "a wrongful act 'is a proximate cause if it is a substantial factor in the sequence of reasonable causation.'" Maiz v. Virani, 253 F.3d 641, 675 (11th Cir. 2001) (quoting Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1399 (11th Cir. 1994)) (internal quotation marks omitted). Thus, while a predicate act may not be a "but for" cause of a plaintiff's injuries, the plaintiff may nevertheless have standing to pursue a RICO claim where that predicate act was a substantial factor "in perpetuating [the racketeer's] scheme and in causing significant injury to [the plaintiff]. Id.

    With respect to the predicate acts of harboring and inducing illegal aliens and the use and acceptance of bogus identification documents, the Court cannot conclude at this point that those predicate acts do not constitute substantial factors in causing injury to Plaintiffs. Accordingly, the Court concludes that Plaintiffs do not lack standing to claim that those predicate acts proximately caused their injuries.

40

Defendant relies primarily on Holmes for the proposition that where a plaintiff's injury is derived from a direct injury to a third party, that plaintiff lacks standing to bring an action pursuant to RICO for such "passed-on" injury. Defendant argues that Plaintiffs are not the "first victims" of Defendant's alleged immigration law violations; rather, the direct victims are the undocumented aliens who, because of their status, cannot command equal wages or enjoy equal benefits, such as workers' compensation.

Plaintiffs cite Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir. 2002), in which the Ninth Circuit found that a putative class of legal hourly workers had standing to bring a RICO action against two agricultural companies that had allegedly hired illegal workers, thereby depressing the wages paid to documented workers. 301 F.3d at 1166. Like Defendant in the instant matter, the defendants in Mendoza urged the court to find that the plaintiffs were not the "first victims" of the alleged illegal conduct. The court in Mendoza concluded that because the defendants engaged in illegal conduct to gain "disproportionate bargaining power in employment contracts" with their workers, the legal, documented employees were the direct victims of the defendants' illegal conduct. Because "the [illegal conduct] had the purpose and direct result of depressing the wages paid

41

to [the documented employees] by the growers," the court could not "discern a more direct victim of the illegal conduct." Id. at 1170.   The court further explained: "Neither the government nor the undocumented workers are an intervening third party in this scheme, despite the [defendants'] arguments to the contrary." Id.

Plaintiffs also rely on Commercial Cleaning Services, LLC v. Colin Service Systems, Inc., 271 F.2d 374 (2d Cir. 2001), in which the Second Circuit held that the plaintiffs, who were competitors of the defendant, adequately stated a direct proximate relationship between their injuries and the defendant's alleged illegal conduct.   271 F.2d at 381.   In that case, a cleaning service brought a RICO class action, alleging that the defendant, also a cleaning service, hired undocumented aliens in violation of 8 U.S.C.A. § 1324, thereby driving down the defendant's cost of employment.   Id. at 378. The plaintiff claimed that the defendant's illegal conduct allowed the defendant to charge lower prices for its services, thereby undercutting its competition.   Id.

The Commercial Cleaning court applied the Holmes policy considerations, and found that the plaintiffs had suffered direct injury due to the defendant's alleged racketeering activity.      Commercial    Cleaning,    271    F.3d    at    385. Specifically, the Second Circuit reasoned that no class of

42

persons would "have a greater incentive to ensure that a RICO violation does not go undetected or unremedied, and whose recovery would cure the loss suffered by there plaintiffs." Id.

The Court finds <u>Mendoza</u> persuasive, and applies the <u>Mendoza</u> court's reasoning to this case. Here, Plaintiffs clearly allege that their injury is the result of Defendant's attempt to gain a commercial advantage over the employment of its workforce, which directly causes harm to Plaintiffs. Accordingly, the Court finds that the Complaint alleges a direct injury to Plaintiffs. Plaintiffs therefore do not lack standing based on the failure to allege a direct injury.

### ii. Speculative Nature of Damages

The Court next considers whether the damages theory alleged in Plaintiffs' Complaint is too speculative to permit Plaintiffs to have standing to pursue their claims. Defendant sets forth a number of arguments in support of its position that the calculation of damages is exceedingly tenuous and speculative. Specifically, Defendant claims that there are numerous other factors that could affect Plaintiffs' wages, such as the demand for labor in the relevant market, the supply of qualified workers, the overall profitability of the industry, and the status of the local, state, national, and international economies.

43

Defendant also submits that Plaintiffs have failed to allege that Defendant employs a sufficient number of illegal workers or has such a large presence in the labor market to support a conclusion that any pay discrepancies can be attributed to Defendant's allegedly illegal conduct. In particular, Defendant contends that Plaintiffs' allegation that Defendant has assisted "hundreds" of illegal workers is insufficient as a matter of economic sense to cause depressed wages. (See Compl. ¶ 61.) Defendant further submits that if it were paying depressed wages to its employees, Plaintiffs could simply seek employment elsewhere.

Defendant also claims that Mendoza is distinguishable because the defendants in that case enjoyed market power sufficient to give them the power to "define wages in this labor market, akin to a monopsony or oligopsony." Mendoza 310 F.3d at 1171. Defendant maintains that Plaintiffs have not, and cannot, allege that Defendant has such market power to dictate unilaterally the labor market. Thus, Defendant contends that it is too speculative to gauge the difference between the current level of compensation and the level of compensation that would have existed but for Defendant's alleged illegal conduct.

At this stage in the litigation, however, the Court cannot agree that the damages attributable to Plaintiffs' RICO

44

claims are so tenuous and speculative that the Court should dismiss the Complaint for lack of standing. Simply put, at this point, the Court cannot say that as a matter of law, Plaintiffs have failed to establish that Defendant's alleged RICO violations were the proximate cause of Plaintiffs' depressed wages. Of course, after some discovery it may appear that Plaintiffs' theory is too speculative. At this early juncture, however, the Court cannot dismiss the Complaint for lack of standing on this ground.

### iii. Summary

In sum, the Court denies Defendant's Motion to Dismiss on the grounds that Plaintiffs lack standing under RICO to pursue their claims. Specifically, the Court finds that Plaintiffs have sufficiently alleged an injury to their "business or property" and that such injury was proximately caused by Defendant's allegedly illegal conduct. The Court next addresses Defendant's arguments in support of dismissal of Plaintiffs' state law claims.

### B.   Plaintiffs' Georgia RICO Claims

Plaintiffs' Complaint also includes claims for violations of Georgia RICO, O.C.G.A. § 16-14-4(a) & (c). (Compl. ¶¶ 93-105). Defendant contends that Plaintiffs' Georgia RICO claims fail as a matter of law because Defendant, as a corporation, is incapable of violating that statute.

45

The Eleventh Circuit has recognized that "[u]nder Georgia law, a corporation qua corporation, cannot be held to answer for a crime, and therefore could not violate the Georgia RICO statute." Byrne v. Nezhat, 261 F.3d 1075, 1105 (11th Cir. 2001) (citing Cobb County v. Jones Group, 218 Ga. App. 149, 153, 460 S.E.2d 516, 521 (1995)). "This is not to say that a corporation may disregard the law with impunity. If a crime has been committed, the agents of the corporation who are responsible are subject to prosecution." Id.

Because RICO predicate acts are actually criminal offenses, O.C.G.A. § 16-2-22, entitled "Criminal responsibility of corporations," applies when determining whether a corporation is vicariously liable for the actions of its employees. O.C.G.A. § 16-2-22; Cobb County, 218 Ga. App. at 153, 460 S.E.2d at 521. Section 16-2-22 provides that a corporation may be prosecuted for a criminal act or omission only if:

> (1) The crime is defined by a statute which clearly indicates a legislative purpose to impose liability on a corporation, and an agent of the corporation performs the conduct which is an element of the crime while acting within the scope of his office or employment and in behalf of the corporation; or
>
> (2) The commission of the crime is authorized, requested, commanded, performed, or recklessly tolerated by the board of directors or by a managerial official who is acting within the scope of his employment in behalf of the corporation.

O.C.G.A. § 16-2-22(a)(1) & (2).

46

Defendant first contends that Plaintiffs cannot pursue a Georgia RICO action under § 16-2-22(a)(1) because nowhere in the Georgia RICO statute does any indication of legislative purpose to impose liability on a corporation exist.

The weight of authority supports Defendant's argument. See Clark v. Sec. Life Ins. Co. of Am., 270 Ga. 165, 167 n.11, 509 S.E.2d 602, 604 n.11 (1998) ("A corporation may also face prosecution under O.C.G.A. § 16-2-22(a)(1) for a crime if the statute defining the crime clearly indicates a legislative purpose to impose liability on a corporation. RICO, however, in not such a statute because O.C.G.A. §16-4-4 prohibits only 'persons' from engaging in racketeering activity."); Cobb County, 218 Ga. App. at 153, 460 S.E.2d at 521 ("'RICO does not contain in its definition any indication of a legislative purpose to impose criminal liability on a corporation.'") (quoting incorporated language of trial court's order). Accordingly, the Court concludes that because the Georgia RICO statute does not expressly and clearly indicate a legislative purpose to impose liability on a corporation for violations of the statute, Plaintiffs cannot avail themselves of § 16-2-22(a)(1) to impose liability for Georgia RICO violations on Defendant.

Notwithstanding the inapplicability of § 16-2-22(a)(1), the Court finds that Plaintiffs may pursue their Georgia RICO

47

claims against Defendant under § 16-2-22(a)(2). As the Georgia Supreme Court held: "criminal liability will attach to the employer for the acts of the employee only if the 'crime is authorized, requested, commanded, performed, or recklessly tolerated by the board of directors or by a managerial official who is acting within the scope of his employment in behalf of the corporation.'" Clark, 270 Ga. at 167, 509 S.E.2d at 604 (quoting O.C.G.A. § 16-2-22(a)(2).) It is not fatal to Plaintiffs' Complaint that they have not alleged that Defendant's board of directors or any corporate officers acting within the scope of employment authorized, requested, commanded, performed, or recklessly tolerated violations of Georgia RICO. On the contrary, such facts are a matter of proof; thus, Plaintiffs simply must set forth the necessary proof at trial. State v. Military Circle Pet Ctr., No. 94, Inc., 257 Ga. 388, 389-90, 360 S.E.2d 248, 249 (1987) ("Although the state must prove the applicable provisions of [§ 16-2-22(a)(2)] at trial against a criminal defendant, it is not necessary that the state allege these provisions in the accusation."). At this point, therefore, the Court cannot hold that Plaintiffs' Georgia RICO claims fail as a matter of law for failure to name any managerial official, officer, or similar person of Defendant who would satisfy the requirements of § 16-2-22. Accordingly, the Court denies Defendant's

48

Motion to Dismiss with respect to Plaintiffs' Georgia RICO claims.[6]

### C.  Plaintiffs' Unjust Enrichment Claim

Finally, the Court addresses whether Plaintiffs have stated a claim for unjust enrichment arising under Georgia law (Compl. ¶¶ 106-110).  Specifically, Plaintiffs claim that Defendant's illegal conduct permits Defendant "to reap substantial wage savings" because Defendant pays Plaintiffs lower wages than what Defendant would otherwise be forced to

---

[6]      Defendant also contends that Plaintiffs' Georgia RICO claims fail because Plaintiffs' Complaint fails to allege that violations of 18 U.S.C.A. § 1324 constituted "racketeering activity" for purposes of Georgia RICO.  (See Compl. ¶ 62 ("Each violation of 8 U.S.C. §1324 constitutes an act of 'racketeering activity' under [federal RICO], 18 U.S.C. § 1961(F) [sic].").)  Plaintiffs respond that Defendant has misread the Complaint, but nonetheless request leave to amend their Complaint to clarify that their Georgia RICO claims are indeed predicated on violations of § 1324.

The Court agrees with Defendant that Plaintiffs' Complaint does not state a cause of action under Georgia RICO with respect to violations of § 1324, but for a different reason than that advanced by Defendant.  O.C.G.A. § 16-14-3(9)(A)(xxix) defines "racketeering activity" as including "[a]ny conduct defined as 'racketeering activity' under 18 U.S.C. Section 1961 (1)(A), (B), (C), and (D)."  O.C.G.A. § 16-14-3(9)(A)(xxix).  That definition of racketeering activity, however, does not include those acts falling under § 1961(1)(F).  Violations of § 1324 appear in subsection (F), thus acts violating § 1324 cannot qualify as predicate acts for purposes of Georgia RICO.  Accordingly, the Court finds that Plaintiffs' Complaint can only allege a claim based on Georgia RICO as to 18 U.S.C.A. § 1546.  The Court denies Plaintiffs' request to amend their Complaint to clarify that Plaintiffs' Georgia RICO claims are predicated on violations of § 1324 as futile.

AO 72A
(Rev.8/82)

pay. (Id. ¶ 107). Plaintiffs also claim that Defendant has been unjustly enriched because the hiring of illegal workers has led to a reduced number of worker's compensation claims; therefore, Defendant retains money it otherwise would have to spend on responding to worker's compensation claims. Plaintiffs further allege that Defendant, through the employment of illegal workers and at the expense of Plaintiffs, enjoys larger profits than Defendant would earn if it used legal, authorized workers. (Id. ¶ 109.) Consequently, Plaintiffs claim that Defendant has been unjustly enriched, and that the Court should order Defendant "to disgorge its unlawful profits or otherwise return the fill amount of any wage savings and worker's compensation savings that are the direct and proximate result of [Defendant's] unlawful conduct." (Id. ¶ 110.)

Unjust enrichment has been defined in the following manner:

> The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received; otherwise the party has been unjustly enriched at the expense of another and, in fairness and good conscience, must reimburse the other to the extent of the value conferred. Inherent in unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon them by another and failed to stop the act or to reject the benefit.

Reidling v. Holcomb, 225 Ga. App. 229, 232, 483 S.E.2d 624,

AO 72A
(Rev.8/82)

626 (1997); see also Larkins, Ga. Contracts, § 12-3 (discussing generally unjust enrichment remedy). Recovery under a theory of unjust enrichment "presupposes the absence of a contractual agreement." Fed. Ins. Co. v. Westside Supply Co., 264 Ga. App. 240, 248, 590 S.E.2d 224, 232 (2003) (citing Ga. Tile Distribs., Inc. v. Zumpano Enters., Inc., 205 Ga. App. 487, 491, 422 S.E.2d 906, 908 (1998)). "'The measure of damages under . . . unjust enrichment is based upon the benefit conferred upon the [recipient] and not the cost to render the service or cost of the goods.'" Hollifield v. Monte Vista Biblical Gardens, Inc., 251 Ga. App. 124, 130-31, 553 S.E.2d 662, 669 (2001) (addition supplied) (quoting Zampatti v. Trademark Int'l Franchising Corp., 235 Ga. App. 333, 340, 508 S.E.2d 750 (1998)).

Defendant contends that Plaintiffs' unjust enrichment claim fails because Plaintiffs accepted employment at an agreed-upon rate Plaintiffs have not alleged that Defendant failed to compensate Plaintiffs in accordance with that rate.[9] In other words, Defendant submits that unjust enrichment is inapplicable where an express contract exists for payment of a item or service, and the defendant avoids payment for that item or service. Defendant notes that in this case, the

---

[9]

This argument is similar to Defendant's argument with respect to whether Plaintiffs alleged an injury to their business or property. See supra Part III.A.3.a.

AO 72A
(Rev.8/82)

parties entered into a contract for a certain wage rate and Defendant paid wages in accordance with that contract. At this point in the litigation, however, the Court cannot agree that as a matter of law Defendant has been unjustly enriched by suppressing Plaintiffs' wages. Accordingly, the Court denies Defendant's Motion to Dismiss as to Plaintiffs' unjust enrichment claim as it relates to Defendant's savings in employing Plaintiffs at a diminished wage rate.

The Court notes, however, that Plaintiffs cannot base their claim of unjust enrichment on Defendant's alleged savings with respect to worker's compensation claims. Defendant argues, and the Court agrees, that Plaintiffs lack standing to assert a claim of unjust enrichment as to the amount of money Defendant did not have to spend in dealing with worker's compensation claims. Essentially, the Complaint alleges that because illegal workers tend to refrain from filing worker's compensation claims, and because Defendant consequently spent less money dealing with worker's compensation claims, Defendant enjoyed higher profitability. The Court cannot fathom how higher profit margins due to lower worker's compensation costs are connected in any way to Plaintiffs' receiving lower wages. That is to say, Plaintiffs' labor in no way caused lower worker's compensation costs. Consequently, the Court finds that Plaintiffs cannot

AO 72A
(Rev.8/82)

claim unjust enrichment as to worker's compensation claims.

## IV.  Conclusion

ACCORDINGLY, the Court **DENIES IN PART** and **GRANTS IN PART** Defendant's Motion to Dismiss [25].  Specifically, the Court **DENIES** Defendant's Motion to Dismiss as to all Federal and Georgia RICO allegations in Plaintiff's Complaint, **DENIES** Defendant's Motion to Dismiss as to Plaintiffs' unjust enrichment claim as it relates to Defendant's wage savings in employing Plaintiffs at a diminished wage rate, and **GRANTS** Defendant's Motion to Dismiss as to Plaintiff's unjust enrichment claim as it relates to Defendant's savings with respect to worker's compensation claims.

IT IS SO ORDERED, this the ___ day of April, 2004.

_____
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)