# United States Court of Appeals
## For the Eleventh Circuit

FILED IN CLERK'S OFFICE
U.S.D.C. Rome
AUG 17 2005
LUTHER D. THOMAS, Clerk
By: Deputy Clerk

No. 04-13740

District Court Docket No.
04-00003-CV-HLM-4

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Jun 9, 2005
THOMAS K. KAHN
CLERK

SHIRLEY WILLIAMS,
GALE PELFREY,
BONNIE JONES,
LORA SISSON, individually and on behalf of a class,

   Plaintiffs-Appellees,

versus

MOHAWK INDUSTRIES INC.,

   Defendant-Appellant.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: [signature]
Deputy Clerk
Atlanta, Georgia

---
Appeal from the United States District Court
for the Northern District of Georgia
---

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered: June 9, 2005
For the Court: Thomas K. Kahn, Clerk
By: Gilman, Nancy

ISSUED AS MANDATE
AUG 1 6 2005
U.S. COURT OF APPEALS
ATLANTA, GA

 

## WILLIAMS v. MOHAWK INDUSTRIES, INC.

**Shirley WILLIAMS, Gale Pelfrey, Bonnie Jones, Lora Sisson, individually and on behalf of a class, Plaintiffs–Appellees,**

v.

**MOHAWK INDUSTRIES, INC., Defendant–Appellant.**

No. 04-13740.

United States Court of Appeals, Eleventh Circuit.

June 9, 2005.

**Background:** Current and former hourly employees sued employer alleging widespread employment of illegal aliens, and asserting claims under federal and state Racketeer Influenced and Corrupt Organizations (RICO) acts. The United States District Court for the Northern District of Georgia, No. 04-00003-CV-HLM-4, Harold L. Murphy, J., 314 F.Supp.2d 1333, denied in part employer's motion to dismiss, and employer appealed.

**Holdings:** The Court of Appeals held that:

(1) alleged recruitment and hiring of illegal aliens constituted "pattern of racketeering activity";

(2) hiring of illegals potentially qualified as "enterprise";

(3) common purpose requirement for prima facie RICO case was satisfied;

(4) "business injury" element for prima facie RICO case was satisfied;

(5) employees stated proximate cause element of civil RICO claim;

(6) employees satisfied statutory standing element of prima facie RICO case; and

(7) employer was potentially liable under Georgia RICO.

Affirmed in part, reversed in part, and remanded.

**1. Racketeer Influenced and Corrupt Organizations** ⟲57

Civil claimant under Racketeer Influenced and Corrupt Organizations Act (RICO) must show: (1) RICO violation; (2) requisite injury to business or property; and (3) that such injury was by reason of substantive RICO violation. 18 U.S.C.A. § 1964(c).

**2. Racketeer Influenced and Corrupt Organizations** ⟲26

"Pattern" of racketeering activity is shown, for purposes of Racketeer Influenced and Corrupt Organizations Act (RICO), when racketeer commits at least two distinct but related predicate acts. 18 U.S.C.A. § 1962(c).

**3. Aliens** ⟲56

**Racketeer Influenced and Corrupt Organizations** ⟲26

Employer's alleged recruitment of hundreds of illegal aliens at border, hiring of those aliens in order to cut costs and drive down wages of its legal workers, and shielding of illegal aliens from federal inspectors constituted "pattern of racketeering activity" within meaning of Racketeer Influenced and Corrupt Organizations Act (RICO). Immigration and Nationality Act, § 274(a)(1)(A)(iii-iv), (a)(3)(A), 8 U.S.C.A. § 1324(a)(1)(A)(iii-iv), (a)(3)(A); 18 U.S.C.A. §§ 1961(1)(F), 1962(c).

**4. Racketeer Influenced and Corrupt Organizations** ⟲50

Civil violation of Racketeer Influenced and Corrupt Organizations Act's (RICO) prohibition against conduct of enterprise through pattern of racketeering activity re-

Synopsis, Headnotes and Key Number Classification
COPYRIGHT © 2005 by West, a Thomson business

The Synopsis, Headnotes and Key Number Classification constitute no part of the opinion of the court.

**2566**         **WILLIAMS v. MOHAWK INDUSTRIES, INC.**

quires that defendant participated in operation or management of enterprise itself. 18 U.S.C.A. § 1962(c).

**5. Racketeer Influenced and Corrupt Organizations ⇐44**

Employer's alleged arrangements with recruiters and temporary employment agencies, under which recruiters supplied illegal aliens to work for employer or agencies furnished to employer illegal aliens already employed by agencies, potentially qualified as "enterprise" within meaning of Racketeer Influenced and Corrupt Organizations Act (RICO), in legal workers' action alleging that purpose of arrangements was to drive their wages down. 18 U.S.C.A. § 1962(c).

**6. Racketeer Influenced and Corrupt Organizations ⇐36**

Common purpose requirement for association-in-fact enterprise under Racketeer Influenced and Corrupt Organizations Act (RICO) case was satisfied in hourly employees' action against employer alleging that employer had worked with recruiters and temporary employment agencies to recruit and employ illegal aliens in order to cut costs and drive down wages of legal workers; alleged common purpose was to reap large economic benefit. 18 U.S.C.A. § 1962(c).

**7. Racketeer Influenced and Corrupt Organizations ⇐59**

"Business interest" injury element of prima facie civil Racketeer Influenced and Corrupt Organizations Act (RICO) case was satisfied in hourly employees' action against employer alleging recruitment and hiring of large numbers of illegal aliens in order to cut costs and drive down wages of legal workers. 18 U.S.C.A. § 1964(c).

**8. Racketeer Influenced and Corrupt Organizations ⇐2**

Racketeer Influenced and Corrupt Organizations Act (RICO) is liberally construed. 18 U.S.C.A. § 1961 et seq.

**9. Racketeer Influenced and Corrupt Organizations ⇐62**

"By reason of" requirement of Racketeer Influenced and Corrupt Organizations Act (RICO) implicates two concepts: (1) sufficiently direct injury so that plaintiff has standing to sue, and (2) proximate cause, whereby wrongful conduct is shown to be substantial cause of alleged injury and causal connection is foreseeable. 18 U.S.C.A. § 1964(c).

**10. Racketeer Influenced and Corrupt Organizations ⇐62**

Hourly employees who alleged that employer had used illegal immigrants to drive down their wages stated proximate cause element of their civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim against employer by alleging that employer's actions had purpose and effect of unlawfully increasing supply of workers available for its hourly workforce and depriving that workforce of any bargaining power, directly resulting in depressed wages. 18 U.S.C.A. § 1964(c).

**11. Racketeer Influenced and Corrupt Organizations ⇐62**

Test for standing to bring civil Racketeer Influenced and Corrupt Organizations Act (RICO) action is whether alleged injury was directly caused by RICO violation, not whether such harm was reasonably foreseeable. 18 U.S.C.A. § 1964(c).

**12. Racketeer Influenced and Corrupt Organizations** ⇔62

Hourly employees who alleged that employer had used illegal immigrants to drive down their wages satisfied statutory standing element of their prima facie civil Racketeer Influenced and Corrupt Organizations Act (RICO) case against employer; employer allegedly had engaged in widespread and knowing hiring and harboring of illegal aliens with express purpose and direct result of lowering wages of legal workers. 18 U.S.C.A. § 1964(c).

**13. Corporations** ⇔526

**Racketeer Influenced and Corrupt Organizations** ⇔112

Under Georgia law, corporations may not be sued directly under state's Racketeer Influenced and Corrupt Organizations Act (RICO) statute; however, corporation is liable under Georgia RICO if crime in question is authorized, requested, commanded, performed, or recklessly tolerated by board of directors or by managerial official acting within scope of his employment. West's Ga. Code Ann. §§ 16-2-22(a)(1), 16-14-4(a).

**14. Corporations** ⇔423

**Racketeer Influenced and Corrupt Organizations** ⇔112

Georgia corporation was potentially liable to its legal hourly workers under state's Racketeer Influenced and Corrupt Organizations Act (RICO) based on its supervisors' and managers' alleged encouragement of illegal-immigrant employees to return to United States and reapply for work at corporation in violation of federal law, and those individuals' alleged knowing and reckless acceptance, as proof of eligibility for employment, of documents reflecting successive different names for single person. 18 U.S.C.A. § 1956; West's Ga.Code Ann. §§ 16-2-22(a)(2), 16-14-3(9), 16-14-4(a).

**15. Implied and Constructive Contracts** ⇔60.1

Under Georgia law, existence of contract as matter of fact between hourly employees and employer precluded employees' unjust enrichment claim against employer alleging recruitment and hiring of illegal aliens as means of driving down legal workers' wages; if plaintiff employees were not paid, they could sue for breach of contract.

**16. Implied and Constructive Contracts** ⇔3

Under Georgia law, hourly employees lacked standing to assert unjust enrichment claim against employer alleging that employer's recruitment and hiring of illegal aliens resulted in fewer worker's compensation claims, thus driving down legal workers' wages; there was no showing of any connection between increased profits from lowered worker's compensation claims and wages paid to legal workers.

---

Appeal from the United States District Court for the Northern District of Georgia.

Before ANDERSON, HULL and GIBSON*, Circuit Judges.

PER CURIAM:

In this case, Plaintiffs Shirley Williams, Gale Pelfrey, Bonnie Jones, and Lora Sisson

---

* Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

are current or former hourly employees of Defendant Mohawk Industries, Inc. The plaintiffs filed this class-action complaint alleging that Mohawk's widespread and knowing employment and harboring of illegal workers allowed Mohawk to reduce labor costs by depressing wages for its legal hourly employees and discourage worker's-compensation claims, in violation of federal and state RICO statutes. The plaintiffs also alleged that Mohawk was unjustly enriched by the lower wages it paid, as well as the reduced number of worker's-compensation claims it paid. The district court denied in part and granted in part Mohawk's 12(b)(6) motion, and this interlocutory appeal followed. After review and oral argument, we affirm in part and reverse in part.

## I. BACKGROUND

Mohawk is the second largest carpet and rug manufacturer in the United States and has over 30,000 employees. According to the plaintiffs, Mohawk has conspired with recruiting agencies to hire and harbor illegal workers in an effort to keep labor costs as low as possible.[1] For example, according to the plaintiffs' complaint

> Mohawk employees have traveled to the United States Border, including areas near Brownsville, Texas, to recruit undocumented aliens that recently have entered the United States in violation of federal law. These employees and other persons have transported undocumented aliens from these border towns to North Georgia so that those aliens may procure employment at Mohawk. Mohawk has made various incentive payments to employees and other recruiters for locating workers that Mohawk eventually employs and harbors.

Furthermore, "[v]arious recruiters, including Mohawk employees, have provided housing to these illegal workers upon their arrival in North Georgia and have helped them find illegal employment with Mohawk." Additionally, Mohawk knowingly or recklessly accepts fraudulent documentation from the illegal aliens.

The plaintiffs further allege that Mohawk has concealed its efforts to hire and harbor illegal aliens by destroying documents and assisting illegal workers in evading detection by law enforcement. According to plaintiffs' complaint, Mohawk takes steps to shield those illegal aliens from detection by, among other things, helping them evade detection during law enforcement searches and inspections at Mohawk's facilities.

According to the complaint, Mohawk's widespread and knowing employment and harboring of illegal workers has permitted Mohawk to reduce labor costs. Mohawk has done so by reducing the number of legal workers it must hire and, thereby, increasing the labor pool of legal workers from which Mohawk hires. This practice permits Mohawk to depress the wages it pays its legal hourly workers.

Finally, the plaintiffs allege that Mohawk is "able to save substantial sums of money" by paying its workers reduced wages. Furthermore, Mohawk knows that illegal workers are less likely to file worker's-compensation claims, and, therefore, Mohawk is able to

---

1. At this point in the litigation, we must assume the facts set forth in the plaintiffs' complaint are true. See *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir.2001) (en banc) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true"). Because we must accept the allegations of plaintiffs' complaint as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may not be the actual facts.

save additional monies. According to the plaintiffs, these benefits constitute unjust enrichment under state law.

Mohawk filed a Rule 12(b)(6) motion to dismiss the plaintiffs' complaint for failure to state a claim. The district court determined that the plaintiffs had stated a claim under both federal and state RICO statutes, as well as a claim for unjust enrichment under state law for paying legal workers lower wages because of the illegal workers Mohawk employed. However, the district court dismissed the plaintiffs' unjust-enrichment claim insofar as it was based on the reduced number of worker's-compensation claims Mohawk was forced to pay.[2]

## II. FEDERAL RICO CLAIMS

Pursuant to 18 U.S.C. § 1962(c), it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). Thus, in order to establish a federal civil RICO violation under § 1962(c), the plaintiffs "must satisfy four elements of proof: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir.1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)). These requirements apply whether the RICO claim is civil or criminal in nature.

[1] In civil cases, however, RICO plaintiffs must also satisfy the requirements of 18 U.S.C. § 1964(c). Section 1964(c) states that "[a]ny person injured in his business or property by reason of" RICO's substantive provisions has the right to "recover threefold the damages he sustains ...." 18 U.S.C. § 1964(c). Thus, under § 1964(c), civil RICO claimants, such as the plaintiffs here, must show (1) the requisite injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation. We discuss each of these requirements in turn.

### A. Pattern of Racketeering Activity

As mentioned above, there are four requirements under § 1962(c). Because elements (3) and (4)—a pattern of racketeering activity—are easily met in this case (at least at the motion-to-dismiss stage), we address them first.

[2] "A 'pattern of racketeering activity,' for purposes of the RICO Act, 'requires at least two acts of racketeering activity.'" *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1397 (11th Cir.1994), *modified on other grounds by* 30 F.3d 1347 (11th Cir.1994). "An act of racketeering is commonly referred to as a 'predicate act.' A 'pattern' of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts." *Maiz v. Virani*, 253 F.3d 641, 671 (11th Cir.2001) (quotation marks, citations, and brackets omitted). "If distinct statutory violations are found, the predicate acts will be considered to be distinct irrespective of the circum-

---

2. This Court reviews the denial of a Rule 12(b)(6) motion "de novo, applying the same standard as the district court did." *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir.2002). A complaint should not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir.1998) (internal quotation marks and citation omitted).

stances under which they arose." *Cox,* 17 F.3d at 1397 (quotation marks, citations, and emphasis omitted).

[3] According to 18 U.S.C. § 1961(1)(F), " 'racketeering activity' means any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), ... if the act indictable under such section of such Act was committed for the purpose of financial gain." In this case, the plaintiffs have alleged that the defendant has engaged in an open and ongoing pattern of violations of section 274 of the Immigration and Nationality Act. In particular, plaintiffs allege that Mohawk has violated and continues to violate: (1) 8 U.S.C. § 1324(a)(3)(A), which makes it a federal crime to "knowingly hire[ ] for employment at least 10 individuals with actual knowledge that the individuals are aliens" during a twelve-month period; (2) 8 U.S.C. § 1324(a)(1)(A)(iii), which makes it a federal crime to "conceal[ ], harbor[ ], or shield from detection, or attempt[ ] to conceal, harbor or shield from detection" aliens that have illegally entered the United States; and (3) 8 U.S.C. § 1324(a)(1)(A)(iv), which makes it a federal crime to "encourage[ ] or induce[ ] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law." According to the plaintiffs' complaint, Mohawk has committed hundreds, even thousands, of violations of federal immigration laws. Consequently, we conclude that the plaintiffs have properly alleged a "pattern of racketeering activity."[3]

### B. Conduct of an Enterprise

[4] With regard to elements (1) and (2) of the four-part test under § 1962(c), the plaintiffs must establish "conduct of an enterprise" and that the enterprise had a common goal. *See United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981) ("The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct."). Furthermore, Mohawk "must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993).

An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As stated in *United States v. Goldin Indus., Inc.,* 219 F.3d 1271, 1275 (11th Cir.2000), "the existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." (internal quotation marks and citation omitted). Furthermore, "the definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." *Id.*

[5] In this case, the plaintiffs have alleged that Mohawk and third-party temp

---

3. There is no dispute that these predicate acts, if they occurred, are related. *See Pelletier v. Zweifel,* 921 F.2d 1465, 1496–97 (11th Cir.1991) ("Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." (internal quotation marks and citation omitted)).

agencies/recruiters have conspired to violate federal immigration laws, destroy documentation, and harbor illegal workers. Specifically, the plaintiffs allege that

> [e]ach recruiter is paid a fee for each worker it supplies to Mohawk, and some of those recruiters work closely with Mohawk to meet its employment need by offering a pool of illegal workers who can be dispatched to a particular Mohawk facility on short notice as the need arises. Some recruiters find workers in the Brownsville, Texas area and transport them to Georgia. Others, like TPS, have relatively formal relationships with the company in which they employ illegal workers and then loan or otherwise provide them to Mohawk for a fee. These recruiters are sometimes assisted by Mohawk employees who carry a supply of social security cards for use when a prospective or existing employee needs to assume a new identity.

Given the Rule 12(b)(6) stage of the litigation, the plaintiffs' complaint must be taken as true, and it has sufficiently alleged an "enterprise" under RICO; that is an association-in-fact between Mohawk and third-party recruiters. This Court has never required anything other than a "loose or informal" association of distinct entities. Mohawk and the third-party recruiters are distinct entities that, at least according to the complaint, are engaged in a conspiracy to bring illegal workers into this country for Mohawk's benefit. As such, the complaint sufficiently alleges an "enterprise" under RICO.

[6] As for the common purpose, the plaintiffs' complaint alleges that "[t]he recruiters and Mohawk share the common purpose of obtaining illegal workers for employment by Mohawk." The complaint further alleges that "[e]ach recruiter is paid a fee for each worker it supplies to Mohawk" and that "Mohawk has made various incentive payments to employees and other recruiters for locating workers that Mohawk eventually employs and harbors." Furthermore, "[t]he acts of racketeering activity committed by Mohawk have the same or similar objective: the reduction of wages paid to Mohawk's hourly workforce." What is clear from the complaint is that each member of the enterprise is allegedly reaping a large economic benefit from Mohawk's employment of illegal workers.

In *United States v. Church*, 955 F.2d 688, 698 (11th Cir.1992), this Court concluded that the common purpose of making money was sufficient under RICO. Because the complaint clearly alleges that the members of the enterprise stand to gain sufficient financial benefits from Mohawk's widespread employment and harboring of illegal workers, the plaintiffs have properly alleged a "common purpose" for the purposes of RICO.

Furthermore, Mohawk "must participate in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 185, 113 S.Ct. at 1173. That is, Mohawk "must have some part in directing" the affairs of the enterprise. *Id.* at 179, 113 S.Ct. at 1170. However, the Supreme Court has cautioned that "RICO liability is not limited to those with primary responsibility for the enterprise's affairs ...." *Id.* In their complaint, the plaintiffs allege that "Mohawk participates in the operation and management of the affairs of the enterprise ...," which includes some direction over the recruiters. Whatever difficulties the plaintiffs may have in proving such an allegation, they have sufficiently alleged that Mohawk is engaged in the operation or management of the enterprise. Again, at this stage in the litigation, we simply cannot say whether the plaintiffs will be able to establish that Mohawk had "some part in directing" the affairs of the

enterprise. However, they have alleged sufficient acts to survive a Rule 12(b)(6) motion.

Accordingly, we conclude that the plaintiffs' complaint states a claim that is cognizable under § 1962(c). In so doing, we note that the allegations in this case are similar to those in cases recently decided by the Second, Sixth, and Ninth Circuits. See *Trollinger v. Tyson Foods*, 370 F.3d 602 (6th Cir. 2004) (former employees alleging employer used illegal immigrants in order to depress wages); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir.2002) (legally documented workers alleging that employers leveraged hiring of undocumented workers in order to depress wages); *Commercial Cleaning Servs., L.L.C. v. Colin Service Sys., Inc.*, 271 F.3d 374 (2d Cir.2001) (company alleging competitor hired undocumented workers in order to underbid competing firms). In each of these decisions, the circuit court determined that, at the Rule 12(b)(6) stage, the plaintiffs had alleged sufficient damages to be permitted to pursue their RICO claims. Although none of the opinions specifically addressed § 1962(c)'s requirements, each of these cases has essentially the same factual basis for RICO liability as the complaint before this Court.

We recognize that the above conclusion puts our circuit in conflict with the Seventh Circuit's decision in *Baker v. IBP, Inc.*, 357 F.3d 685 (7th Cir.2004), *cert. denied*, ___ U.S. ___, 125 S.Ct. 412, 160 L.Ed.2d 318 (2004). In *Baker*, an employees' class-action lawsuit alleged that a meat-processing facility conspired with recruiters (and a Chinese aid group), and violated RICO by employing undocumented, illegal workers in an effort to drive down employee wages. The Seventh Circuit concluded that the employees' union was a necessary party to the lawsuit. *Id.* at 690–91.

However, the Seventh Circuit in *Baker* also concluded that there was "another fatal problem" with the complaint. *Id.* at 691. Although stating that an "enterprise" arguably existed, the Seventh Circuit determined that there was not a common purpose among the entities in the enterprise. *Id.* at 691. Specifically, the Seventh Circuit stated that the employer "wants to pay lower wages; the recruiters want to be paid more for services rendered (though [the employer] would like to pay them less); the Chinese Mutual Aid Association wants to assist members of its ethnic group. These are divergent goals." *Id.* at 691.

In our circuit, however, there has never been any requirement that the "common purpose" of the enterprise be the sole purpose of each and every member of the enterprise. In fact, it may often be the case that different members of a RICO enterprise will enjoy different benefits from the commission of predicate acts. This fact, however, is insufficient to defeat a civil RICO claim. Rather, all that is required is that the enterprise have *a* common purpose. In this case, the complaint alleges that Mohawk and the recruiters, under Mohawk's direction, worked together to recruit illegal workers to come to Georgia and that they had the common purpose of providing illegal workers to Mohawk so that Mohawk could reduce its labor costs and the recruiters could get paid. This commonality is all that this circuit's case law requires. See *Church*, 955 F.2d at 698. Again, while the plaintiffs may be unable to prove such allegations at trial, we cannot say at this 12(b)(6) stage of the litigation that they have failed to properly allege a common purpose.

We recognize that the *Baker* Court also concluded that there was no way to establish that the employer "operate[d] or manage[d] th[e] enterprise through a pattern of racke-

teering activity." *Baker*, 357 F.3d at 691 (emphasis omitted). However, as this Court has noted, "the Supreme Court has yet to delineate the exact boundaries of the operation or management test." *United States v. Starrett*, 55 F.3d 1525, 1546 (11th Cir.1995). Although the exact boundaries have not been established, it is possible that the plaintiffs will be able to establish that Mohawk played some part in directing the affairs of the enterprise. Whether the plaintiffs ultimately establish sufficient evidence to meet the boundaries of the operation-or-management test is a question best answered at the summary-judgment stage or at trial. Accordingly, we conclude that the plaintiffs have sufficiently alleged conduct that may potentially satisfy the operation-or-management test. As such, the plaintiffs are entitled to continue with their claims at this juncture.

Having reviewed the four elements of § 1962(c), we turn to § 1964(c).

C. *Injury to "Business or Property" Interest Under RICO*

[7, 8] As indicated above, RICO's civil-suit provision states that "[a]ny person injured in his business or property by reason of" RICO's substantive provisions has the right to "recover threefold the damages he sustains ...." 18 U.S.C. § 1964(c). "The terms 'business or property' are, of course, words of limitation which preclude [certain forms of] recovery." *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir.1992). However, RICO is to be "liberally construed." *Sedima*, 473 U.S. at 497–98, 105 S.Ct. at 3285–86 (1985). Accordingly, we must determine whether the plaintiffs have a "business or property" interest that could be injured under RICO. We need not reach whether plaintiffs have a property interest because plaintiffs clearly have alleged a business interest affected by Mohawk's alleged RICO violations.

Indeed, this case is similar to the Ninth Circuit's *Mendoza* decision, where legally documented agricultural workers sued fruit growers under RICO alleging that the growers depressed wages by hiring illegal workers. In *Mendoza*, the defendant claimed that the employees would have to show a "'property right' in the lost wages[ ] by showing that they were promised or contracted for higher wages." *Mendoza*, 301 F.3d at 1168 n. 4. The Ninth Circuit concluded that this argument was misplaced, pointing out that the plaintiffs' claim did not implicate procedural due process. *Id.* Rather, the Ninth Circuit concluded that "what is required is precisely what the employees allege here: a legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." *Id.* (citations omitted). Given that a relationship clearly exists between plaintiff workers and their employer, Mohawk, we conclude that a similar business interest exists in this case, and that the employees' alleged injury to their business interests satisfies the business-interest requirement. Consequently, the plaintiffs have alleged a sufficient injury to a business interest to pursue their RICO claims.

D. *"By Reason Of" the Substantive RICO Violations*

[9] We now turn to the "by reason of" requirement contained in § 1964(c). The "by reason of" requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause, whereby the wrongful conduct is shown to be a substantial cause of the alleged injury and the causal connection is foreseeable and not speculative. *See Trollinger*, 370 F.3d at 612 ("RICO's civil-suit provision imposes two distinct but overlapping limitations

on claimants—standing and proximate cause."); *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1307 (11th Cir.2003), *cert. denied*, 541 U.S. 1037, 124 S.Ct. 2094, 158 L.Ed.2d 723 (2004) ("[O]ne or more of the predicate acts [in a RICO claim] must not only be the 'but for' cause of the injury, but the proximate cause as well." (citations omitted)); *Mendoza*, 301 F.3d at 1168–72 (concluding that the plaintiffs had satisfied both "statutory" and "constitutional" standing requirements of RICO); *see also Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268–69, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992) (stating in a RICO case that "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover" (citations omitted)). Despite some significant overlap, we address the proximate cause and standing concepts separately.[4]

*(i) Proximate Cause*

"It is well-established that RICO plaintiffs must prove proximate causation in order to recover." *Cox*, 17 F.3d at 1399 (citations omitted). "A proximate cause is not, however, the same thing as a sole cause. Instead, a factor is a proximate cause if it is a substantial factor in the sequence of responsible causation." *Id.* (internal quotation marks and citation omitted).

[10] In this case, the plaintiffs have alleged sufficient proximate cause to withstand defendant Mohawk's motion to dismiss. According to their complaint, Mohawk has hired illegal workers "[i]n an effort to keep labor costs as low as possible." Furthermore, "Mohawk's employment and harboring of large numbers of illegal workers has enabled Mohawk to depress wages and thereby pay all of its hourly employees, including legally employed workers who are members of the class, wages that are lower than they would be if Mohawk did not engage in this illegal conduct." Again, the complaint alleges that "Mohawk's widespread employment and harboring of illegal workers has substantially and unlawfully increased the supply of workers from which Mohawk makes up its hourly workforce. This unlawful expansion of the labor pool has permitted Mohawk to depress the wages that it pays all its hourly employees ...." The plaintiffs also allege that "[o]ne purpose and intended effect of Mohawk's widespread employment and harboring of illegal workers is to deprive Mohawk's hourly workforce of any individual or collective bargaining power" and that they "were injured by direct and proximate reason of Mohawk's illegal conduct."

---

4. As the Sixth Circuit aptly explained,
   the two concepts overlap and that is particularly true in the context of civil RICO claims. As a general matter, they overlap because a plaintiff who lacks standing to vindicate a derivative injury also will be unable to show proximate cause. And as a matter of RICO law, the two concepts overlap because they both grow out of the "by reason of" limitation in RICO—namely, the requirement that claimants establish that their injury was "by reason of" a RICO predicate act violation. The "by reason of" limitation, in other words, bundles together a variety of "judicial tools," some of which are traditionally employed to decide causation questions and some of which are employed to decide standing questions. *Holmes*, 503 U.S. at 268, 112 S.Ct. [at 1318] ("Here we use 'proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects ideas of what justice demands, or of what is administratively possible and convenient.") (quotation omitted)....
   *Trollinger*, 370 F.3d at 613.

Given these allegations, which we must assume are true at this Rule 12(b)(6) stage of the litigation, it is clear that the plaintiffs have properly alleged proximate cause. According to the complaint, Mohawk's widespread scheme of hiring and harboring of illegal workers has the purpose and direct result of depressing the wages paid to the plaintiffs. This is all that is needed to establish proximate cause.

Our conclusion is consistent with the two other circuits to have addressed this proximate cause issue in RICO decisions involving schemes to depress wages of legal workers by widespread hiring of illegal workers. *See Trollinger*, 370 F.3d at 619; *Mendoza*, 301 F.3d at 1171–72.

In *Trollinger*, the Sixth Circuit considered a situation in which former Tyson employees at poultry processing plant sued their former employer under RICO, alleging that the use of illegal workers permitted the employer to lower wages via the collective-bargaining agreement with the union representing the employees. The Sixth Circuit, reviewing the district court's dismissal of the employees' complaint under Rule 12(b)(6), determined that "at this preliminary stage in the proceedings" it could not conclude that there was no likelihood of success on the merits. *Id.* at 619. The Sixth Circuit explained that it remained possible that the legal-worker plaintiffs might prove the following allegations in their complaint:

(1) that Tyson hired sufficient numbers of illegal aliens to impact the legal employees' wages; (2) that each additional illegal worker hired into the bargaining unit by Tyson has a measurable impact on the bargained-for wage-scale; (3) that the illegal immigrants allegedly brought into this country through Tyson's efforts allowed Tyson not to compete with other businesses for unskilled labor; and (4) that Tyson's legal workers did not "choose" to remain at Tyson for less money than other businesses offered, but had no choice in the matter given the hiring needs of the other businesses in the area and the influx of illegal immigrants at Tyson's facilities. While Tyson's proximate-cause argument may well carry the day at the summary-judgment stage, it requires more assistance than the complaint alone provides.

One other circuit has reached the same result on somewhat similar facts ... *Mendoza* ... *Id*. *Trollinger*, 370 F.3d at 619.[5]

Although the plaintiffs in this case may not ultimately satisfy the proximate-cause requirement, we conclude it remains possible that plaintiffs may prove their allegations, and we cannot say at this Rule 12(b)(6) stage that there is no possibility of such proof. Consequently, we join the Sixth and Ninth Circuits in concluding that employees such as the ones in this case have alleged sufficient proximate cause to proceed with their RICO claims.

*(ii) Statutory Standing*

[11] Lastly, we address RICO's statutory standing limitation that also grows out of the "by reason of" limitation in § 1964(c). "[T]he test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was

---

5. As noted earlier, in *Mendoza*, the Ninth Circuit was faced with a similar suit in which legally documented agricultural workers sued fruit growers under RICO alleging that the growers depressed wages by hiring illegal-immigrant workers. 301 F.3d at 1166. Under almost the exact same legal theory as advanced in this case, the *Mendoza* Court concluded that the plaintiffs' "causation allegations are sufficient at this stage." *Id.* at 1172.

reasonably foreseeable." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 908 (11th Cir.1998); *see Sedima*, 473 U.S. at 496-97, 105 S.Ct. at 3285 ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation" and the plaintiff's damages must "flow from the commission of the predicate acts."); *Green Leaf Nursery*, 341 F.3d at 1307 (stating that plaintiffs must show a "direct relation between the injury asserted and the injurious conduct" and that we ask "whether the alleged conduct was 'aimed primarily' at a third party" (quotation marks and citations omitted)); *Bivens*, 140 F.3d at 906 (concluding that a party whose alleged injuries result from "the misfortunes visited upon a third person by the defendant's acts lacks standing to pursue a claim under RICO" (quotation marks and citation omitted)); *Pelletier v. Zweifel*, 921 F.2d 1465, 1497 (11th Cir.1991) (stating that the plaintiff has RICO standing if he shows "a causal connection between his injury and a predicate act").[6] Thus, we must evaluate whether the plaintiffs' injury is sufficiently direct to give plaintiffs standing to sue for Mohawk's alleged RICO violations.

Both the Sixth and Ninth Circuits have expressly concluded that legal workers have sufficiently direct injuries for RICO standing in similar cases. *Trollinger*, 370 F.3d at 615-618; *Mendoza*, 301 F.3d at 1170. The Ninth Circuit's *Mendoza* decision is particularly well-reasoned and instructive on the statutory standing issue.

As mentioned earlier, the *Mendoza* plaintiffs were legal workers who claimed that the purpose and result of the defendants' scheme of hiring undocumented immigrants was to depress the wages of legally documented employees. The Ninth Circuit concluded that the plaintiffs had statutory standing because "we are unable to discern a more direct victim of the illegal conduct." *Mendoza*, 301 F.3d at 1170. The Ninth Circuit explained:

> The documented employees here do not complain of a passed-on harm. They allege that the scheme had the purpose and direct result of depressing the wages paid to them by the growers. Thus, as the district court correctly determined, "plaintiffs have stated a claim that they are the direct victims of the illegal hiring scheme."
>
> . . .
>
> We also note that the undocumented workers cannot "be counted on to bring suit for the law's vindication." As the district court noted, the fact that RICO specifically provides that illegal hiring is a predicate offense indicates that Congress contemplated the enforcement of the immigration laws through lawsuits like this one.

*Id.* (internal citations omitted). The Ninth Circuit further stated that

> the workers must be allowed to make their case through presentation of evidence, including experts who will testify about the labor market, the geographic market, and the effects of the illegal scheme. Questions regarding the relevant labor market and the growers' power within that market are exceedingly complex and best addressed by economic experts and other evidence at a later stage in the proceedings.

*Id.* at 1171.

[12] Plaintiffs' complaint clearly alleges that Mohawk has engaged in widespread and

---

6. This Court has more often evaluated the "by reason of" requirement primarily as part of its proximate-cause analysis, as opposed to the distinct concept of standing. However, despite significant overlap, we must also examine whether the plaintiffs' injury is sufficiently direct to permit standing.

knowing hiring and harboring of illegal aliens with the express purpose and direct result of lowering the wages of legal workers. For example, the complaint alleges that "[o]ne purpose and intended effect of Mohawk's widespread employment and harboring of illegal workers is to deprive Mohawk's hourly workforce of any individual or collective bargaining power." The plaintiffs also allege that "[t]he acts of racketeering activity committed by Mohawk have the same or similar objective: the reduction of wages paid to Mohawk's hourly workforce." Furthermore, the plaintiffs "were injured by direct and proximate reason of Mohawk's illegal conduct." Given this stage of the litigation, we conclude that the plaintiffs have sufficiently alleged that Mohawk's illegal conduct was aimed primarily at them. Consequently, the district court correctly denied Mohawk's 12(b)(6) motion as it relates to the plaintiffs' federal civil RICO claim.

### III. STATE LAW RICO

Under the Georgia RICO statute, "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. 16-14-4(a). Unlike federal civil RICO, the Georgia RICO statute does not require proof of an "enterprise." *Cobb County v. Jones Group, P.L.C.*, 218 Ga.App. 149, 460 S.E.2d 516, 520–21 (1995). Rather, under Georgia RICO, the plaintiffs need only establish racketeering activity; that is, "a plaintiff must show that the defendant committed predicate offenses (set forth in O.C.G.A. § 16–14–3(9)) at least twice." *Id.* at 521 (quotation marks and citation omitted).

With regard to their state-law RICO claim, the plaintiffs rely on 18 U.S.C. § 1546 (relating to the fraud and misuse of visas, permits, and other documents) for their predicate offenses.[7] Despite being limited to § 1546, the plaintiffs have alleged sufficiently numerous violations to satisfy the racketeering activity requirement under Georgia state law. In fact, according to the complaint, "Mohawk has committed hundreds, probably thousands, of violations of ... 18 U.S.C. § 1546 as part of its pattern of racketeering activity."

There are, however, two issues under the Georgia RICO statute that warrant further discussion: (1) whether, under the Georgia RICO statute, a corporation may be sued; and (2) whether the plaintiffs have sufficiently alleged proximate cause to have standing to bring a Georgia RICO suit.

#### A. Whether Corporations May be Sued Under Georgia RICO

"Although this is a civil suit, RICO predicate acts are criminal offenses." *Cobb County*, 460 S.E.2d at 521 (quotation marks omitted). Therefore, in order to determine whether a corporation may be held liable under RICO, Georgia courts look to O.C.G.A. § 16-2-22. *See Cobb County*, 460 S.E.2d at 521.

---

7. According to O.C.G.A. § 16-14-3(9)(A)(xxix), "racketeering activity" is defined as "conduct defined as 'racketeering activity' under 18 U.S.C. Section 1961(1)(A), (B), (C), and (D)." The only "racketeering activity" contained in 18 U.S.C. § 1961(1)(A), (B), (C), or (D) on which the plaintiffs rely is § 1546. To the extent the plaintiffs attempt to rely on 8 U.S.C. § 1324, as they do with their federal civil RICO claims, such a claim is barred under the Georgia RICO statute because 8 U.S.C. § 1324 is listed as a "racketeering offense" in 18 U.S.C. § 1961(1)(F), and not in subsections (A), (B), (C), or (D).

[13] There are two means by which a corporation may be held liable: (1) directly (under O.C.G.A. § 16-2-22(a)(1)); and (2) through its agents and employees under certain situations (under O.C.G.A. § 16-2-22(a)(2)). The Georgia Supreme Court already has concluded that corporations may not be sued directly under RICO. *Clark v. Security Life Ins. Co. of America*, 270 Ga. 165, 509 S.E.2d 602, 604 n. 11 (1998) ("A corporation may also face prosecution under O.C.G.A. § 16-2-22(a)(1) for a crime if the statute defining the crime clearly indicates a legislative purpose to impose liability on a corporation. RICO, however, is not such a statute ....").

Although a corporation cannot be prosecuted directly under RICO, a corporation will be liable under Georgia RICO "if the 'crime is authorized, requested, commanded, performed, or recklessly tolerated by the board of directors or by a managerial official who is acting within the scope of his employment.'" *Clark*, 509 S.E.2d at 604 (quoting § 16-2-22(a)(2)). Whether the acts were performed at the request, command, or authorization of the board of directors or other managers is a question of proof at trial, not a sufficiency-of-the-pleading issue. *See State v. Military Circle Pet Center No. 94, Inc.*, 257 Ga. 388, 360 S.E.2d 248, 249 (1987) ("Although the state must prove the applicable provisions of [§ 16-2-22(a)(2)] at trial against a criminal defendant, it is not necessary that the state allege these provisions in the accusation.").

[14] In this case, the plaintiffs' complaint alleges that "Mohawk supervisors have encouraged these [illegal-immigrant] employees to return to the United States and reapply for work at Mohawk in violation of United States law." Furthermore, "Mohawk also has knowingly and recklessly accepted proof of eligibility for employment documents that reflect successive different names for a single person." The plaintiffs' complaint is rife with allegations that supervisors and managers at Mohawk were either aware of, or in reckless disregard of, the misuse of various work-related documents. Consequently, the plaintiffs have alleged sufficient conduct that, if proven, would allow them to hold Mohawk liable under state law.

### B. Standing to Pursue State-Law RICO Claims

As with Federal RICO claims, under Georgia's RICO statute, "[a]ny person who is injured by reason of any violation of" Georgia's RICO statute "shall have a cause of action for three times the actual damages sustained ...." O.C.G.A. § 16-14-6(c). "[B]ecause the state RICO act is modeled upon and closely analogous to the federal RICO statute," Georgia courts "look to federal authority" in determining RICO standing. *Maddox v. So. Engineering Co.*, 231 Ga.App. 802, 500 S.E.2d 591, 594 (1998) (quotation marks and citation omitted). We already have concluded that the plaintiffs have alleged sufficient injury to pursue their federal RICO claims, and accordingly, we conclude that they have alleged a sufficient injury to pursue their state RICO claims as well. Although under Georgia law the plaintiffs are limited to predicate acts arising out of 18 U.S.C. § 1546, we conclude that the plaintiffs' allegations are neither too remote nor too indirect to satisfy Georgia's proximate-cause requirement under state-law RICO. *See Maddox*, 500 S.E.2d at 594 ("In short, the language 'by reason of' imposes a proximate causation requirement on the plaintiff." (citation omitted)); *id.* (A plaintiff "must show a causal connection between his injury and a predicate act." (citation omitted)).

### IV. UNJUST ENRICHMENT

[15] The plaintiffs' complaint claims that Mohawk's illegal conduct permits it "to reap substantial wage savings" because Mohawk pays plaintiffs lower wages than it would otherwise be forced to pay. Therefore, according to the plaintiffs' complaint, Mohawk has been unjustly enriched under state law. Plaintiffs also claim that Mohawk has been unjustly enriched because the hiring of illegal aliens has led to a reduced number of worker's-compensation claims. Both of plaintiffs' state-law unjust-enrichment claims fail.

Here, the plaintiffs were all paid an agreed-upon wage. In essence, the plaintiffs have a contract to work for the defendant and were paid the agreed-upon wage. In Georgia, "[u]njust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract ...." *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 508 S.E.2d 646, 648 (1998) (quotation marks and citation omitted); see *Bonem v. Golf Club of Georgia, Inc.*, 264 Ga.App. 573, 591 S.E.2d 462, 467–68 (2003). In this case, there was a legal contract as a matter of fact (i.e., if the plaintiffs were not paid, they could sue for breach of the employment contract). See, e.g., *SurgiJet, Inc. v. Hicks*, 236 Ga.App. 80, 511 S.E.2d 194, 195 (1999); *Brazzeal v. Commercial Cas. Ins. Co.*, 51 Ga.App. 471, 180 S.E. 853, 853 (1935). Therefore, there can be no unjust enrichment. Consequently, the plaintiffs' unjust-enrichment claim as it related to Mohawk's purported savings from lower wages should have been dismissed.

[16] As for plaintiffs' claims that hiring illegal workers resulted in fewer worker's-compensation claims, there is no reasonable allegation that this fact, even if true, is connected to the plaintiffs receiving lower wages. To put it another way, the fact that Mohawk may have increased profits by lowering the number of worker's-compensation claims it paid is not related to what wages Mohawk paid the plaintiffs. Consequently, the district court correctly determined that the plaintiffs did not have standing to assert this claim.

### V. CONCLUSION

For all the above reasons, we conclude that the district court properly denied Mohawk's Rule 12(b)(6) motion as it related to both the plaintiffs' federal and state RICO claims. Furthermore, the district court properly dismissed the plaintiffs' unjust-enrichment claim as it related to worker's compensation. However, the district court should have also dismissed the plaintiffs' unjust-enrichment claim as it related to the agreed-upon wages that plaintiffs received.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

U.S. Court of Appeals, Eleventh Circuit—West, a Thomson business, Saint Paul, Minn.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: *[signature]*
Deputy Clerk
Atlanta, Georgia