## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| SHIRLEY WILLIAMS, GALE PELFREY, BONNIE JONES and LORA SISSON, individually and on behalf of a class, | )<br>)<br>)<br>)   Civil Action<br>)   File No. 4:04-cv-03-HLM<br>) |
| Plaintiffs, | )<br>)   **CLASS ACTION**<br>) |
| vs. | )<br>) |
| MOHAWK INDUSTRIES, INC., | )<br>) |
| Defendant. | )<br>) |

## REDACTED REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Bobby Lee Cook
Georgia Bar No. 183100
COOK & CONNELLY
9899 Commerce Street
Summerville, GA 30747
(706) 295-0014

John E. Floyd
Georgia Bar No. 266413
Joshua F. Thorpe
Georgia Bar No. 710665
BONDURANT, MIXSON & ELMORE
LLP
1201 W. Peachtree Street, N.W., Suite
3900
Atlanta, Georgia 30309
(404) 881-4100

Howard Foster
(*admitted pro hac vice*)
JOHNSON & BELL, LTD.
Suite 2700
33 W. Monroe Street
Chicago, IL 60603
(312) 372-0770

Matthew Thames
Georgia Bar No. 703130
1419 Chattanooga Ave.
P.O. Box 2203
Dalton, GA 30722-0399
(706) 278-0466

### *ATTORNEYS FOR PLAINTIFFS*

## TABLE OF CONTENTS

Page No.

INTRODUCTION ................................................................................ 1

ARGUMENT AND CITATION OF AUTHORITIES ........................... 2

I.   PLAINTIFFS MEET THE RULE 23 REQUIREMENTS ...................... 2

  A.   Plaintiffs Have Standing ................................................. 2

  B.   Plaintiffs Have Satisfied the Rule 23(a) Requirements ................. 2

     1.   Numerosity ................................................................ 2

     2.   Commonality ........................................................... 8

     3.   Typicality ................................................................. 8

     4.   Adequacy ................................................................. 9

  C.   Plaintiffs' Claim for Injunctive Relief Satisfies
       Rule 23(b)(2) ............................................................ 10

  D.   Plaintiffs' Claims Satisfy Rule 23(b)(3) ............................. 10

     1.   Alleged Decentralization Does Not Negate
          Predominance ....................................................... 10

          Operations ............................................................. 10

          Enterprise/Conspiracy ........................................... 13

          Wages/Injury ........................................................ 16

i

2.    Mohawk's Erroneous Statute of Limitations
      Argument Does not Undermine the Predominance
      of Common Issues ................................................................ 18

3.    Superiority ........................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                           **Page No.**

*Alabama v. Blue Bird Body Co.,*
   573 F.2d 309 (5th Cir. 1978) ................................................................. 15, 16

*Arizona Contractors Ass'n v. Candelaria,*
   2008 WL 343082 (D. Ariz. Feb. 7, 2008) .................................................. 3, 4

*Arizona Contractors Ass'n v. Candelaria,*
   No. 07-CV-02496 (D. Ariz. Feb. 19, 2008) ............................................. 3, 17

*Atkinson v. Owens-Illinois,*
   No. C74-2429A, 1975 WL 160 (N.D. Ga. Mar. 31, 1975) ............................ 2

*Bingham v. Zolt,*
   66 F.3d 553 (2d Cir. 1995) ...................................................................... 19

*Bivens Gardens Office Bldg. Inc. v. Barnett Bank,*
   906 F.2d 1546 (11th Cir. 1990) ............................................................ 19, 20

*Blarek Encore Receivable Mgmt., Inc.,*
   244 F.R.D. 525 (E.D. Wis. 2007) .............................................................. 9

*Buford v. H&R Block, Inc.,*
   168 F.R.D. 340 (S.D. Ga. 1996) .............................................................. 10

*Cooper v. Pacific Life Ins. Co.,*
   229 F.R.D. 245 (S.D. Ga. 2005) ........................................................... 9, 10

*Hernandez v. Balakian,*
   480 F. Supp.2d 1198 (E.D. Cal. 2007) ....................................................... 7

*In re Tri-State Crematory Litig.*
   215 F.R.D. 660 (N.D. Ga. 2003) ............................................................ 2, 3

*Jones v. Childers*
    18 F.3d 899, 911 (11th Cir. 1994) ............................................................ 13, 17

*Kennedy v. Tallant,*
    710 F.2d 711 (11th Cir. 1983) ...................................................................... 20

*Kirkpatrick v. J.C. Bradford & Co.,*
    827 F.2d 718 (11th Cir. 1987).......................................................................... 20

*Klay v. Humana*
    382 F.3d 1241 (11th Cir. 2004) ............................................................ *Passim*

*Love v. Nat'l Med. Enters.,*
    230 F.3d 765 (5th Cir. 2000) ........................................................................ 19

*Mendoza v. Zirkle Fruit Co.*
    222 F.R.D. 439 (E.D. Wash. 2004) ........................................................ 3, 6, 7

*Pasha v. State,*
    273 Ga. App. 788 (2005) .............................................................................. 14

*Rotella v. Wood*
    528 U.S. 549 (2000)................................................................................. 3, 19

*Salinas v. United States,*
    522 U.S. 52 (1997).......................................................................................... 15

*Schwab v. Philip Morris USA,*
    449 F. Supp.2d 992 (E.D.N.Y. 2006) ............................................................ 10

*Southern Intermodal Logistics, Inc. v. D.J. Powers Co.,*
    251 Ga. App. 865 (2001) .............................................................................. 19

*Trollinger v. Tyson Foods, Inc.,*
    2006 WL 319022 (E.D. Tenn. 2006)............................................................ 19

*Trollinger v. Tyson Foods, Inc.,*
    2007 WL 1091217 (E.D. Tenn. 2007).......................................................... 19

iv

*Trollinger v. Tyson Foods, Inc.,*
    2008 WL 305032 (E.D. Tenn. Jan. 13, 2008) ................................................. 3

*Trollinger v. Tyson Foods, Inc.,*
    2008 WL 413635 (E.D. Tenn. Feb. 13, 2008)................................................. 7

*United States v. Anderson,*
    326 F.3d 1319 (11th Cir. 2003) ....................................................................... 15

*United States v. Cagnina,*
    697 F.2d 915 (11th Cir. 1983) ......................................................................... 14

*United States v. Curry,*
    188 Fed. Appx. 863 (11th Cir. 2006)............................................................. 15

*United States v. Elliott,*
    571 F.2d 880 (5th Cir. 1978) ........................................................................... 14

*United States v. Goldin Indus., Inc.,*
    219 F.3d 1271 (11th Cir. 2000) ....................................................................... 14

*United States v. Gonzalez,* No. 4:07CR140-P_B,
    2008 WL 160636 (N.D. Miss. Jan. 15, 2008) ................................................. 5

*United States v. Holley,*
    493 F.2d 581 (9th Cir. 1974) ........................................................................... 7

*United States v. Valera,*
    845 F.2d 923 (11th Cir. 1988) ......................................................................... 15

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,*
    350 F.3d 1181 (11th Cir. 2003) ....................................................................... 9

*Williams v. Mohawk Indus., Inc.*
    465 F.3d 1277 (11th Cir. 2006)....................................................................... 13

## Federal Statutes and Regulations

8 U.S.C. § 274a.1(1)............................................................................. 6

8 U.S.C. § 312.1(a)............................................................................. 7

18 U.S.C. § 1373 ............................................................................... 4

72 Fed. Reg. 45611 (Aug. 15, 2007)...................................................... 5

## State Statutes

O.C.G.A. § 16-4-4(a) .......................................................................... 14

O.C.G.A. § 16-4-4(c) .......................................................................... 14

O.C.G.A. § 16-14-8............................................................................ 18

## INTRODUCTION

Mohawk's opposition to class certification fails because even if Mohawk's decentralization mantra were true, it has no force in a RICO case in which every class member will (1) have to prove a pattern of racketeering activity, enterprise and conspiracy, and (2) rely on precisely the same evidence to prove those elements. In *Klay v. Humana*, 382 F.3d 1241 (11th Cir. 2004), the Eleventh Circuit dealt with one of the most decentralized fact patterns imaginable, but held that common issues regarding pattern, enterprise and conspiracy predominated over any individual issues. Here, a single defendant participated in every hiring and harboring transaction at issue, providing an even stronger case for certification. Proof that a Mohawk employee knowingly hired or harbored an illegal worker may turn on evidence specific to that transaction, but such proof is ***common*** because every class member will rely on it. Whether there are two plaintiffs in this case or thousands, the evidence of Mohawk's RICO violations will be the same.

Plaintiffs have also identified common proof of injury.


REDACTED

Pltffs.'

Br. in Support of Mot. for Class Certification ("Pl. Br.") at 26-30.

1

REDACTED

Thus, increases in that labor supply through the hiring and harboring of illegal workers impact all hourly employees, regardless of the plant in which they work. Mohawk's real point, that it does not believe Plaintiffs can **_prove_** injury, is a merits argument has no place in the class certification inquiry.

## ARGUMENT AND CITATION OF AUTHORITIES

### I.    PLAINTIFFS MEET THE RULE 23 REQUIREMENTS.

**A.    Plaintiffs Have Standing.**  Mohawk does not dispute that Plaintiffs have standing to assert federal and Georgia RICO claims. Plaintiff Jones, a current employee, may pursue injunctive and monetary relief on behalf of a class. Plaintiff Pelfrey has standing to pursue class-wide monetary relief and is not precluded from doing so because she is a former employee. *Atkinson v. Owens-Illinois*, No. C74-2429A, 1975 WL 160, at **4-5 (N.D. Ga. Mar. 31, 1975).

**B.    Plaintiffs Have Satisfied the Rule 23(a) Requirements.**

**1.    Numerosity.**  Mohawk does not dispute numerosity,

REDACTED                                    Mhk Opp. at 1.

Mohawk does erroneously argue that the class is not ascertainable. First, the only two courts to address whether Plaintiffs' proposed methods for ascertaining the members of the class meet the "minimal standard of identifiability," *In re Tri-*

2

*State Crematory Litig.*, 215 F.R.D. 660, 690 (N.D. Ga. 2003), have concluded that they do. *See* Pl. Br. at 14-15 (discussing *Mendoza* and *Trollinger*).

Second, this "minimal" standard simply requires a "legally definable class" (here, legal Mohawk workers) that "can be ascertained through reasonable effort." *Tri-State*, 215 F.R.D. at 690. Plaintiffs need not demonstrate a single source from which every member of the class can be identified. Instead, as *Mendoza* and *Trollinger* confirm, Plaintiffs may apply a combination of methods during the course of this litigation to identify illegal workers. A class of work-authorized Mohawk employees certainly exists. And although Mohawk's purported expert, lawyer Robert Divine, goes to great lengths to identify excuses to avoid finding out which of Mohawk's workers are legal, there is no question that the class can be ascertained by doing the necessary work.[1]  Mohawk's attitude towards this task "displays [none] of the resourcefulness one expects from business people seeking efficient solutions to problems."[2]

Third, none of the roadblocks Mohawk seeks to erect to accessing relevant

---

[1] The Divine declaration is inadmissible because it is a 30-page brief that improperly (1) circumvents the Court's page limitations and (2) opines on legal issues. *See Trollinger v. Tyson Foods, Inc.*, 2008 WL 305032, at *5 (E.D. Tenn. Jan. 13, 2008), attached hereto as Plaintiffs' Exhibit ("PX") 36 (excluding professor's testimony on legal issues).

[2] *Arizona Contractors Ass'n v. Candelaria*, No. 07-CV-02496, at 7 (D. Ariz. Feb. 19, 2008) (rejecting declarations of employers reluctant to use E-Verify) (PX37).

3

information in government databases can preclude Plaintiffs and the Court from identifying the class. According to 8 U.S.C. § 1373, any federal government entity or officer, including this Court, can request and receive immigration data from the INS (now ICE) "[*n*]*otwithstanding any other provision of Federal, State, or local law*." (Emphasis added); *see Arizona Contractors Ass'n v. Candelaria*, 2008 WL 343082, at *13 (D. Ariz. Feb. 7, 2008) (PX38) (courts can request information under § 1373). Via Order or subpoena, therefore, this Court can direct the INS to query the E-Verify database for information on all of Mohawk's employees (not just new hires) and provide the results. *Id.* at *4; 8 U.S.C. § 1373(c) (requiring INS to respond).

Fourth, this and the other tools Plaintiffs propose to use are valid components of proof that a worker is an unauthorized alien. Since 1994, the Social Security Administration ("SSA") has sent annual "no-match" letters to employers when the SSA cannot match its records of names and social security numbers to the information employers provide on wage reports. PX39 ¶ 6. While errors may occur, the federal agencies charged with immigration enforcement have consistently taken the position that "no-match letters may also identify individuals who lack work authorization under the immigration laws who have provided false names or social security numbers." PX40 ¶ 4; PX41 at 1-12. According to the

4

Secretary of the Department of Homeland Security, SSA no-matches frequently

identify illegal workers:

> [T]here are also times – and frankly, a lot of times – when that mismatch
> reflects the fact that the name and the number aren't real, or they don't
> match because someone is using a false name or a false number in order to
> work illegally.

PX42 at 7.[3]  As a result, the government has advised employers that they cannot

ignore no-match letters and has relied on no-match data to enforce the immigration

laws. *See* 72 Fed. Reg. 45611 (Aug. 15, 2007); PX41 at 5-7.[4]

Even without future database queries, Plaintiffs will start not only with

REDACTED

Before merits discovery begins, Plaintiffs know that

REDACTED

_____

[3] *See* PX43 at 1 (GAO report that no-match data can be used to identify illegal
workers); PX44 at 2 (Inspector General report that "unauthorized noncitizens
contribute to SSN misuse").

[4] *United States v. Gonzalez*, No. 4:07CR140-P_B, 2008 WL 160636 (N.D. Miss.
Jan. 15, 2008), for example, recounts (1) the use of three no match letters in an ICE
investigation into illegal hiring, (2) holds that the letters are admissible to prove
immigration crimes and (3) rejects many of the arguments that Mr. Divine and
Mohawk make concerning the probative value of those letters.

REDACTED

His

opinions thus ignore relevant evidence and the government's practice of using no-match data to prosecute immigration crimes.

Further, Mohawk has (or should have) I-9 forms for thousands of employees. While Mohawk refused to produce these forms in class discovery, Plaintiffs expect to find that many of the forms are improperly completed or missing. Mr. Divine apparently anticipates the same thing. *See id.* ¶ 36. While Mohawk may spin improper or missing forms as "mistakes," the Court and jury are entitled to conclude that the employees at issue are unauthorized aliens.[5]

Plaintiffs' proposals are in no way "illegal." There is nothing illegal about reviewing no-match letters or I-9 forms or requiring an employer to obtain information readily available in government databases like the Social Security Number Verification Service ("SSNVS"). The district court in *Mendoza* did precisely that. *Mendoza v. Zirkle Fruit Co.*, No. CY-00-3024-FVS, at *1 (E.D.

---

[5] *See* 8 C.F.R. § 274a.1(l) (inference of constructive knowledge that employee "is an unauthorized alien" available when employer "[f]ails to complete or improperly completes the Employment Eligibility Verification, Form I-9"). At the least, such evidence is a factor in determining the work authorization status of an employee.

Wash. 2004), attached as PX45.[6] The SSA accepts such inquiries for current and former employees and can process as many as 250,000 names and social security numbers in a single day. *See* http://ssa.gov/employer/ssnv.htm.

Plaintiffs will use the methods cited above–as well as any other relevant information obtained in discovery or public databases–to identify class members.[7] If Plaintiffs' efforts leave any questions about a particular worker's employment eligibility, they can be addressed in a claims administration process that requires workers to establish their right to participate in a recovery, as is common in antitrust and other class actions. *See* PX47 (claim form requiring proof of purchase in *Diamonds* antitrust class action).

This plan of attack distinguishes this case from *Trollinger*, which recently granted summary judgment on the ground that the plaintiffs did not prove that the defendant hired sufficient numbers of illegal workers. *See Trollinger v. Tyson Foods, Inc.*, 2008 WL 413635 (E.D. Tenn. Feb. 13, 2008), attached as PX48.

---

[6] The *Trollinger* court denied a similar request as moot, not illegal. *See* PX46.

[7] Mr. Divine's opinion that a worker's inability to speak English has no significance in this process deliberately misses the point. Plaintiffs have no intention of relying on that fact in isolation. Rather, Plaintiffs will examine all the available circumstances, including any contradiction implied by an employee's claim to be a citizen or legal permanent resident and an unexplained inability to communicate in the English language. That inference is recognized in federal law, *see* 8 C.F.R. § 312.1(a), and it has been accepted in numerous opinions that Mr. Divine fails to mention. *See United States v. Holley*, 493 F.2d 581, 582-83 (9th Cir. 1974); *Hernandez v. Balakian*, 480 F. Supp.2d 1198, 1208 (E.D. Cal. 2007).

7

There, the plaintiffs sought to prove their case without the documents and evidence discussed above. Yet, even after granting summary judgment, the court concluded that it was possible to prove the presence of illegal workers. *Id.* at \*3. The evidence here—including hundreds of no-matches and testimony in the record—already surpasses the evidence in *Trollinger*.

      **2.    Commonality.** Mohawk fails to respond to Plaintiffs' identification of specific common questions, (Pl. Br. at 15-16), and thus apparently concedes that Plaintiffs have met the requirements of Rule 23(a)(3).

      **3.    Typicality.** That Plaintiff Jones works at a location that allegedly has not used temporary workers is irrelevant because Ms. Jones (and the other class members) claim that Mohawk violated RICO both by harboring illegal temporary workers <u>and</u> directly hiring illegal workers.[8] As a result, Ms. Jones's RICO claims are precisely the same as the RICO claims of the other class members, which is what matters for typicality. Pl. Br. at 17-18. Second, the evidence shows that her plant ***does*** use illegal workers. Ms. Jones testified that she has "repeatedly witnessed" the illegal worker recycling process alleged in the Complaint, pursuant to which Mohawk employs workers "under one name for a

---

[8] Accordingly Mohawk's analysis of the distribution of temporary workers across Mohawk's facilities is irrelevant and Mohawk's attempt to create conflicts between the class members is unavailing.

period of time and then re-hir[es] the very same person under a completely different name." Dkt. # 77, Ex. B ¶ 2; *id.* ¶¶ 3-6; Complaint ¶¶ 19, 25-26; Dkt. #80, Ex. A. Third, even if there were not evidence of illegal hiring at her plant, Ms. Jones, like every class member, alleges that Mohawk's racketeering activity has depressed the wage scales that dictate wages at *__all__* of Mohawk's plants.

    **4.**   **Adequacy.** Plaintiffs' position is that the class has been injured by Mohawk's hiring and harboring of *__illegal__* workers, not Hispanic workers. Plaintiffs' evidence of economic injury will be specific to illegal workers and will therefore benefit, not harm, legal Hispanic workers. Neither Plaintiffs nor legal Hispanic workers "benefitted from the conduct alleged to have harmed the class members on the whole," as in *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003).

    Plaintiffs have more than sufficient knowledge about the claims in this case to serve as class representatives. "There is no requirement that the representative plaintiff be knowledgeable of either the allegations or the legal theories on which the lawsuit rests." *Blarek Encore Receivable Mgmt., Inc.*, 244 F.R.D. 525, 529 (E.D. Wis. 2007) (citation omitted). "[R]equiring too much of class representatives 'could well prevent the vindication of the legal rights of the absent class members under the guise of protecting those rights.'" *Cooper v. Pacific Life*

9

*Ins. Co.*, 229 F.R.D. 245, 258 (S.D. Ga. 2005) (citation omitted).

Mohawk's principal case, *Buford v. H&R Block, Inc.*, 168 F.R.D. 340 (S.D. Ga. 1996), establishes that plaintiffs who understand their roles and the factual allegations of the case are adequate class representatives. *Id.* at 353-54. Such is the case here, where Plaintiffs have testified to substantial knowledge of the allegations in the Complaint and the purpose of a class action.[9] Further, "[i]t is unrealistic in a complex RICO action involving decades of alleged fraud and collusion to expect lay plaintiffs to be experts on the intricate legal details of their case." *Schwab v. Philip Morris USA*, 449 F. Supp.2d 992, 1110 (E.D.N.Y. 2006).

### C.    Plaintiffs' Claim for Injunctive Relief Satisfies Rule 23(b)(2).

Mohawk misinterprets Plaintiffs' request for (b)(2) certification, which is directed only to Plaintiffs' claim for injunctive relief. That claim does not involve **_any_** request for monetary relief. Plaintiffs separately request that the Court also certify their claims for monetary and injunctive relief under (b)(3).

### D.    Plaintiffs' Claims Satisfy Rule 23(b)(3).

#### 1.    Alleged Decentralization Does Not Negate Predominance.

**Operations.** Mohawk's decentralization mantra                    REDACTED

---

[9] *See* PX49 at 8-16, 25-26, 34-35, 39, 42, 44, 48-49, 51-52, 56-57, 64, 76, 104-05; PX50 at 22-23, 30-31, 34-40, 42, 54, 56, 58-60, 64-66, 70-73, 77-80, 84, 87, 89-91, 93, 95, 104, 110-11, 113, 116, 119, 126-128, 140-41.

REDACTED                              does not undermine

predominance in this RICO case. *Klay* explains precisely why enterprise, pattern

of racketeering activity and conspiracy issues predominate even in a civil RICO

action that is aimed at a genuinely decentralized enterprise. The fact pattern in

*Klay*, where plaintiffs alleged that almost every HMO in the country (independent

entities) conspired to underpay almost every doctor in the country over a twelve-

year period, could not have involved more decentralization. 382 F.3d at 1246.

Despite the legal and geographical separation among the various defendants and

participants in the enterprise, the Eleventh Circuit recognized that every class

member would have to prove an enterprise, pattern of racketeering activity and

conspiracy to prevail on her RICO claims. Thus, those issues predominated:

> *Motel 6* and *Rutstein* were both cases in which individuals were seeking to
> litigate separate discrimination claims that arose from a variety of individual
> incidents together in the same class action simply because they alleged that
> the acts of discrimination occurred pursuant to corporate policies. ***In the
> instant case, however, the plaintiffs' RICO claims are not simply
> individual allegations of underpayments lumped together, and the
> allegation of an official corporate policy or conspiracy is not simply a
> piece of circumstantial evidence being used to support such individual
> underpayment claims. Instead, the very gravamen of the RICO claims is
> the "pattern of racketeering activities" and the existence of a national
> conspiracy to underpay doctors. These are not facts from which jurors
> will be asked to infer the commission of wrongful acts against individual
> plaintiffs; these very facts constitute essential elements of each plaintiff's
> RICO claims.*** While the existence of a policy of discrimination did not
> constitute an element of any of the causes of action in *Rutstein* or *Motel 6*,
> the existence of a general conspiracy to violate certain federal laws, or a

pattern and practice of aiding and abetting other HMOs' violations of those laws, is an essential element of each individual plaintiff's RICO-related claims. Thus, while corporate policies were only circumstantially relevant in the discrimination cases, and insufficient to overcome the tremendous individualized issues of fact that remained in those cases, they constitute the very heart of the plaintiffs' RICO claims here, and would necessarily have to be re-proven by every plaintiff if each doctor's claims were tried separately.

*Id.* at 1257 (citation omitted and emphasis added).

*Klay* thus directly answers Mohawk's citation to two other discrimination cases, *Cooper v. Southern Co.*, and *Rhodes v. Cracker Barrel Old Country Store, Inc.*, and explains why civil RICO cases are different. In a discrimination case, proof of one plaintiff's discrimination claim does not require proof of any other plaintiff's claim. But in a federal civil RICO case, every plaintiff must prove a ***pattern*** of racketeering activity, an enterprise and a conspiracy. Thus, "resolution of the[se] classwide issues will further each individual class member's claim against the defendant." *Klay*, 382 F.3d at 1254. That is the standard for predominance, which Mohawk never addresses. Moreover, unlike *Cooper*, in which proof of discrimination against one plaintiff would not prove another plaintiff's injury, proof of an extensive pattern of racketeering activity and an effect on Mohawk's wage scales would establish ***class-wide*** injury in this case.

The issues of enterprise, pattern and conspiracy predominate not just in terms of their legal significance, but on a practical level as well. When Plaintiffs

12

prove an act of illegal hiring or harboring at a Mohawk plant, every class member will rely on that act, whether the act occurs at a plant in Calhoun or Chatsworth or Dalton. As the Eleventh Circuit has held, "[a] showing that the predicate acts are 'part of an ongoing entity's regular way of doing business'" can satisfy the pattern requirement of federal RICO for "an ongoing legitimate business." *Jones v. Childers*, 18 F.3d 899, 911 (11th Cir. 1994) (citation omitted).

**Enterprise/Conspiracy.** Mohawk's arguments regarding enterprise and conspiracy are nothing more than merits objections. These arguments ignore that ***Mohawk*** retains and pays every temporary employment agency that supplies the company with illegal workers[10] and ***Mohawk*** directly hires its own illegal workers as part of the pattern of racketeering activity. In any event, Mohawk's skepticism on the merits cannot defeat class certification. *See Klay*, 382 F.3d at 1253 (skepticism regarding "assert[ion] that the defendants belonged to a shadowy, mysterious 'Managed Case Enterprise,'" did not preclude predominance finding).

Here, the Eleventh Circuit has already held that Plaintiffs' allegations of an association among Mohawk and third-party recruiters would prove an enterprise and are "best answered at the summary-judgment stage or at trial." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1284-86 (11th Cir. 2006). Mohawk ignores

---

[10] *See, e.g.*, PX22 at 179          REDACTED
                                        PX16 at 233-34 (same).

13

this Circuit's repeated holding that an enterprise includes any "association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes." *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000). And Mohawk cannot escape a finding of enterprise by asserting that some participants might not know of each other.[11]

Mohawk further ignores that the Georgia RICO statute does not require proof of an enterprise. *See* O.C.G.A. § 16-4-4(a); Pl. Br. at 25. Mohawk offers no basis for denying certification of a Georgia RICO claim under that provision.

As to conspiracy, Mohawk misconstrues Plaintiffs' claim under O.C.G.A. § 16-14-4(c) and applicable law. "The essence of conspiracy is a common design, and conduct which discloses a common design may give rise to the inference of conspiracy." *Pasha v. State*, 273 Ga. App. 788, 790 (2005) (citation omitted). The conspiracy here had the common design of depressing wages for all of Mohawk's hourly employees. Each supplier of illegal workers furthered that design; it is irrelevant whether these suppliers worked with each other: "[I]t suffices that [a

---

[11] *See United States v. Cagnina*, 697 F.2d 915, 922 (11th Cir. 1983) (evidence that enterprise members knew of each other not required and absence of that evidence cannot aid defendant who oversaw and participated in illicit activity); *United States v. Elliott*, 571 F.2d 880, 898 (5th Cir. 1978) (loose association where one actor directs separate criminal activities constitutes enterprise). Mohawk's attempt to rely on *In re Managed Care Litig.*, is ineffective because that decision was part of the *Klay* litigation, where the enterprise issue predominated.

14

conspirator] adopt the goal of furthering or facilitating the criminal endeavor. . . .

One can be a conspirator by agreeing to facilitate only some of the acts leading to

the substantive offense." *Salinas v. United States*, 522 U.S. 52, 65 (1997).

Mohawk's multiple conspiracies argument fails to acknowledge that "[i]f a

defendant's actions facilitated the endeavors of other co[-]conspirators or

facilitated the venture as a whole, then a single conspiracy is shown.'" *United*

*States v. Curry*, 188 Fed. Appx. 863, 871 (11th Cir. 2006) (citation omitted).

Moreover, *United States v. Valera*, 845 F.2d 923, 930 (11th Cir. 1988) explains that

"a series of agreements, which, pre-RICO, would constitute multiple conspiracies,

can form, under RICO, a single 'enterprise' conspiracy." (Citations omitted).

Further, the Eleventh Circuit "permits the finding of a single conspiracy where a

'key man' directs the activities, coordinating the individual efforts of various

combinations of people." *United States v. Anderson*, 326 F.3d 1319, 1327-28 (11[th]

Cir. 2003). "Whether the evidence supports finding a single conspiracy is a

question of fact for the jury," *Valera*, 845 F.2d at 928, and Plaintiffs' proof of that

Mohawk directed a single conspiracy is common proof on which all class members

will rely. Thus, the issue of conspiracy predominates here as it did in *Klay*.[12]

---

[12] Mohawk's reliance on *Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir.
1978) is misplaced. The problem there was that the plaintiffs proposed to prove a
nationwide conspiracy by proving separate conspiracies in each state. *See id.* at

**Wages/Injury.** Mohawk's arguments regarding wage-setting and proof of injury are also merits arguments that cannot preclude certification and are at odds with the record.

REDACTED

Pl Br. at 27-30.

Moreover, Mohawk's claim that it has a decentralized wage-setting philosophy does not vitiate Plaintiffs' common proof of injury.

REDACTED

*Id.* at 29-30 & n.19. Any theoretical decentralization in wage-setting is irrelevant because Mohawk has in fact used a pattern of racketeering activity to maintain its labor supply and suppress wages. At any rate, what matters at the class stage is simply that Plaintiffs have offered common proof of injury.

Mohawk has no effective rejoinder to the common proof of injury Plaintiffs expect to offer with expert testimony.                  REDACTED

---

323. Here, Plaintiffs propose to prove that numerous actors joined a single conspiracy directed by Mohawk to lower Mohawk's labor costs.

16

REDACTED

13

Mohawk's attacks on Professor Borjas's credibility, which misconstrue

excerpts of his prior writings, are merits arguments that do not preclude class

certification. The *Trollinger* court rejected those attacks during the *Daubert* phase

of that case. Defense lawyers at the same firm that has represented Mohawk

concocted the same alleged contradiction between Professor Borjas's work in

*Trollinger* and his prior writings. PX51 at 15 & n.18. The court, however, held

that he would be allowed to rely on his methodology "in conjunction with his vast

scholarship in economics dealing with immigration."[14] While an expert need not

meet *Daubert* at the class stage, *Trollinger* confirms that Mohawk's attacks do not

undermine Professor Borjas's methods for determining injury on a class wide

basis. *See also Arizona Contractors*, PX37 at 9 (relying heavily on Professor

Borjas's testimony that illegal hiring depresses wages for legal workers).

Professor Borjas has criticized certain city to city comparisons in the prior

literature on the grounds that they tend to underestimate the economic impact of

immigration. He makes no about-face, and his declaration acknowledges that labor

---

[13] DX15 ¶ 13                                REDACTED

[14] PX36 at *9. The court excluded Professor Borjas's prior calculation of damages
because the plaintiffs withdrew the foundation for that testimony. *Id.*

17

mobility will tend to understate the impact of Mohawk's illegal hiring measured by regional comparisons. PX33 at 7 n.6. [15] But it is one thing to acknowledge that those effects may prevent Plaintiffs from measuring the full extent of the harm caused by Mohawk's illegal conduct, for example, as some of Mohawk's legal workers relocate. It is quite another to argue that those limitations preclude Plaintiffs from presenting the jury with the damages they *can* measure with the aid of expert analysis. Nothing in Professor Borjas's academic writings suggests that it is impossible to identify and estimate the impact of a single firm's illegal hiring on the wages paid to legal workers.[16] His testimony that he *can* apply his academic work, which relies on basic economic theory and standard analytical tools, to conduct such an analysis satisfies Plaintiffs' burden at the class stage.

### 2. Mohawk's Erroneous Statute of Limitations Argument Does Not Undermine the Predominance of Common Issues.

Plaintiffs seek to recover only for injuries that occurred during the limitations period, *i.e.*, less than five years before the filing of the Complaint on 1/5/99. O.C.G.A. § 16-14-8 (five-year statute for Georgia RICO). Mohawk has no argument that statutes of limitations bar the claims of the many class members

---

[15] Professor Borjas's academic work assumes a perfectly competitive market. Economic reality and the evidence in this case already suggest that Mohawk is not perfectly constrained by market forces. *See* PX 24 at 133-35
REDACTED

[16] Mohawk's attacks on Professor Hamermesh's methods fail for similar reasons.

hired after 1/5/99. And the separate accrual rule defeats its claim that if class members hired before 1/5/99 suffered injuries before that date, they are barred from recovering for injuries suffered after that date.

*Trollinger* rejected the argument Mohawk advances here based on this separate accrual rule, concluding that "each discrete alleged illegal hiring constituted an independent action that caused new injury. Plaintiffs meet the requirements of the separate accrual test that each illegal hiring constitutes a new and independent act that inflicted new and accumulating injury on the Plaintiffs." *Trollinger v. Tyson Foods, Inc.*, 2006 WL 319022, at *7 (E.D. Tenn. 2006) (PX52). Mohawk engaged in new predicate acts throughout the limitations period; each new act inflicted a new injury that started the limitations period anew.[17] The application of this rule in this context was so clear that the *Trollinger* plaintiffs won summary judgment on this defense. *Trollinger v. Tyson Foods, Inc.*, 2007 WL 1091217, at *5 (E.D. Tenn. 2007) (PX53). The Eleventh Circuit and Georgia have adopted the separate accrual rule for RICO, and thus the same result obtains here.[18] Whether class members hired before 1/5/99 were aware of injuries they

---

[17] *See Bingham v. Zolt*, 66 F.3d 553, 561 (2d Cir. 1995); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 775 (5th Cir. 2000).

[18] *Bivens Gardens Office Bldg. Inc. v. Barnett Bank,* 906 F.2d 1546, 1552-55 (11th Cir. 1990), *overruled in part on other grounds*, *Rotella v. Wood,* 528 U.S. 549 (2000) ("If, '[a]t a later date, a new and independent injury is incurred from the

suffered before that date is irrelevant; under RICO, they may sue for new injuries suffered after that date, *i.e.*, within the limitations period.

Mohawk's statute of limitations argument raises class-wide, not individual, legal issues. But "even if some of the class members were threatened with a potential statute of limitations defense, that problem would not necessarily defeat the availability of a class action suit." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). This is so because "common questions in these cases cannot legitimately be considered subordinate to the individual questions presented by the different state statutes of limitations that may be applicable." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987). As in *Klay*, the issues of enterprise, pattern and conspiracy "would tend to predominate over all but the most complex individualized issues." 382 F.3d at 1258-59.

      **3.**   **Superiority.** Mohawk does not dispute that class certification is the superior method, and the only viable method, for adjudicating this controversy.

Joshua F. Thorpe,
Ga. Bar No. 710665
Email: *thorpe@bmelaw.com*

---

same RICO violation, the plaintiff is again 'injured in his business or property' and his right to sue for damages accrues at the time that he discovered or should have discovered the new injury.'") (citation omitted); *Southern Intermodal Logistics, Inc. v. D.J. Powers Co.*, 251 Ga. App. 865, 872 (2001).

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D of the Local Rules for the United States District

Court for the Northern District of Georgia, I hereby certify that the foregoing

pleading has been prepared in Times New Roman, 14 point font, as permitted by

Local Rule 5.1B.

Joshua F. Thorpe
Georgia Bar No. 710665
Email: *thorpe@bmelaw.com*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have electronically filed the within and foregoing

**REDACTED REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**

**FOR CLASS CERTIFICATION** with the Clerk of Court using the CM/ECF

system, which will automatically send email notification of such filing to the

following attorneys of record:

R. Carl Cannon                          Juan P. Morillo
ccannon@constangy.com                   juan.morillo@cliffordchance.com

Steven T. Cottreau
steve.cottreau@cliffordchance.com

I hereby certify that I have on this day mailed by United States Postal

Service, first-class postage prepaid, the document and Notice of Electronic Filing

to the following non-CM/ECF participants:

Rosemary C. Lumpkins                    Stephen M. Nickelsburg
Constangy, Brooks & Smith, LLC          Clifford Chance LLP
230 Peachtree Street, N.W.              2001 K Street, N.W.
2400 Peachtree Center Tower             Washington, DC  20006
Atlanta, GA  30303

Virginia A. Seitz
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC  20005

This 22nd day of February 2008.

/s/Joshua F. Thorpe
Joshua F. Thorpe
Georgia Bar No. 710665