have performed in this case. (Id. ¶ 10.) Finally, Attorney Floyd opines that his law firm and the individual attorneys from that firm who are involved in this case have the experience and skill necessary to represent the class in this case. (Id. ¶ 11.)

### c.   Howard W. Foster

Attorney Howard W. Foster, who also serves as counsel for Plaintiffs in this case, has provided a declaration indicating that he has considerable experience in RICO actions, including experience as class counsel in RICO actions proceeding under the same legal theory at issue in this case, and that he also teaches a class regarding Civil RICO at a law school. (Decl. of Howard W. Foster ¶ 2.) Attorney Foster further provides the Court with information concerning the work that he and his co-counsel have

65

performed in this case.  (Id. ¶ 3.)  Attorney Foster opines that he and his firm have the experience and skill necessary to represent the class adequately in this case.  (Id. ¶ 4.)

### d.    Matthew D. Thames

Finally, Attorney Matthew D. Thames, who also serves as counsel for Plaintiffs in this litigation, has submitted a declaration stating that Attorney Thames has significant experience in litigating against carpet manufacturers on behalf of plaintiff factory workers.  (Decl. of Matthew D. Thames ¶ 2.) Attorney Thames further provides information concerning the work that he has performed in this case, and states that he has the experience and skill necessary to represent the putative class adequately.  (Id. ¶¶ 3-4.)

### B.    Procedural Background

On January 6, 2004, Plaintiffs filed this lawsuit.

66

Plaintiffs are current and former hourly employees of Defendant who claim that Defendant's alleged employment and harboring of illegal aliens has depressed their wages. Plaintiffs assert the following claims: (1) a claim that Defendant's conduct violates 18 U.S.C.A. § 1962(c) (Compl. ¶¶ 88-92); (2) a claim that Defendant's conduct violates O.C.G.A. § 16-14-4(a) (id. ¶¶ 93-98); (3) a claim that Defendant's conduct violates O.C.G.A. § 16-14-4(c) (id. ¶¶ 99-105); and a claim for unjust enrichment arising under Georgia law (id. ¶¶ 106-110). Plaintiffs also seek certification of a class pursuant to Federal Rule of Civil Procedure 23. (Id. ¶ 46.)

On February 9, 2004, Defendant filed a Motion to Dismiss. Defendant requested that the Court dismiss Plaintiffs' federal and state RICO claims. Defendant also

AO 72A

(Rev.8/82)

requested that the Court decline to exercise its pendent jurisdiction over Plaintiffs' state law claims.

On April 12, 2004, the Court granted in part and denied in part Defendant's Motion to Dismiss. (Order of Apr. 12, 2004.) The Court denied the Motion to Dismiss with respect to Plaintiffs' federal and Georgia RICO claims and with respect to Plaintiff's unjust enrichment claim relating to Defendant's wage savings in employing Plaintiffs at a reduced rate, but granted the Motion to Dismiss with respect to Plaintiffs' unjust enrichment claim relating to Defendant's savings with respect to workers' compensation claims. (Id.)

On May 27, 2004, the Court granted Defendant's request to certify its April 12, 2004, Order for an interlocutory appeal. (Order of May 27, 2004.) The Court also stayed discovery pending resolution of the interlocutory

68

appeal.  (Id.)

On June 9, 2005, the United States Court of Appeals for the Eleventh Circuit entered an Order affirming in part and reversing in part the Court's ruling on the Motion to Dismiss.  Williams v. Mohawk Indus., Inc., 411 F.3d 1252 (11th Cir. 2005).  The Eleventh Circuit affirmed the Court's decision with respect to Plaintiffs' RICO claims, but reversed the Court's denial of the Motion to Dismiss with respect to Plaintiffs' unjust enrichment claims based on Defendant's wage savings in employing Plaintiffs at a reduced rate.  Id.

Defendant filed a petition for rehearing en banc with the Eleventh Circuit.  On July 29, 2005, while that petition remained pending before the Eleventh Circuit, Plaintiffs filed a Motion to Lift the Stay of Discovery in this Court.

On August 8, 2005, the Eleventh Circuit denied

69

AO 72A

(Rev.8/82)

Defendant's petition for rehearing en banc. On August 11, 2005, Defendant filed a Motion to Continue the Stay of Discovery Pending its Petition for Certiorari.

On August 16, 2005, the Eleventh Circuit issued its mandate in the case. On August 18, 2005, the Eleventh Circuit returned the record on appeal to the Court.

On August 18, 2005, the Court entered an Order staying discovery in this case until the Supreme Court either denied Defendant's petition for a writ of certiorari or granted Defendant's petition and decided the case on its merits. (Order of Aug. 18, 2005.) On October 7, 2005, Defendant filed a petition for certiorari with the Supreme Court, raising the following questions for review: (1) whether a defendant corporation and its agents can constitute an enterprise under RICO; and (2) whether Plaintiffs had stated

70

proximately caused injuries to business property by alleging that the hourly wages they accepted were too low. On December 12, 2005, the Supreme Court granted certiorari as to the first question presented in the petition. Mohawk Indus., Inc. v. Williams, 126 S. Ct. 830 (2005).

On April 25, 2006, the Supreme Court held oral arguments in the case. On June 5, 2006, the Supreme Court dismissed the writ of certiorari limited to the first question contained in the petition for certiorari as improvidently granted, and remanded the case to the Eleventh Circuit for further consideration in light of Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006). Mohawk Indus., Inc. v. Williams, 126 S. Ct. 2016 (2006).

On September 27, 2006, the Eleventh Circuit issued an opinion concluding that the Court properly denied

71

Defendant's Motion to Dismiss as to Plaintiffs' federal and state RICO claims, and that the Court improperly denied the Motion with respect to Plaintiffs' unjust enrichment claims. Williams v. Mohawk Indus., Inc., 465 F.3d 1277 (11th Cir. 2006). The Eleventh Circuit remanded the case to this Court "for further proceedings." Id. at 1295.

On October 9, 2006, Defendant filed a petition for rehearing en banc. On November 22, 2006, the Eleventh Circuit denied Defendant's petition for rehearing en banc. On November 30, 2006, the Eleventh Circuit issued its mandate.

On December 13, 2006, Plaintiffs filed a Motion for Discovery. Plaintiffs requested that the Court issue an Order confirming that the stay of discovery in this case had expired according to its terms and directing the parties to

72

proceed with discovery according to the terms outlined in the March 15, 2004, scheduling order entered by the Court.

On December 19, 2006, Defendant filed a second petition for a writ of certiorari with the Supreme Court. On January 2, 2007, Defendant filed a response in opposition to Plaintiff's Motion for Discovery, arguing that the Court should stay discovery in the case until the Supreme Court denied Defendant's petition for a writ of certiorari or ruled on the merits of the case.

On January 16, 2007, the Court entered an Order denying Plaintiffs' Motion for Discovery. (Order of Jan. 16, 2007.) The Court stayed discovery in the case until the Supreme Court denied Defendant's petition for a writ of certiorari or decided the case on the merits after granting Defendant's petition. (Id.)

AO 72A

(Rev.8/82)

On February 26, 2007, the Supreme Court denied Defendant's second petition for a writ of certiorari. Mohawk Indus., Inc. v. Williams, 127 S. Ct. 1381 (2007). The case subsequently was returned to this Court for further proceedings.

On March 21, 2007, Plaintiffs filed an Emergency Motion for Hearing Regarding Mohawk's Contact With Witnesses. (Docket Entry No. 85.) On April 9, 2007, the Court denied that Motion. (Order of Apr. 9, 2007.)

On March 30, 2007, Plaintiffs filed a Motion for Sanctions and to Compel as a Result of Mohawk's Presentation of an Unprepared Corporate Designee. (Docket Entry No. 95.) On that same day, Plaintiffs filed a Motion for the Entry of a Document Preservation Order. (Docket Entry No. 96.) On April 27, 2007, the Court entered

AO 72A

(Rev.8/82)

an Order denying the Motion for the Entry of a Document Preservation Order as moot, as Plaintiffs' counsel indicated an intent to withdraw that Motion without prejudice. (Order of April 27, 2007.) Similarly, on May 14, 2007, the Court entered an Order denying Plaintiffs' Motion for Sanctions without prejudice after Plaintiffs withdrew the Motion. (Order of May 14, 2007.)

On May 18, 2007, Plaintiffs filed a Notice of Death of Plaintiff. (Docket Entry No. 126.) That Notice informed the Court of the death of Plaintiff Lora Sisson. (Id.)

On June 6, 2007, the parties filed a Joint Stipulation. (Docket Entry No. 136.) The Joint Stipulation states, in relevant part:

> 1.    Plaintiffs allege that they are current and former hourly employees of Mohawk.

AO 72A

(Rev.8/82)

2.   Mohawk has denied that it employs or has employed Plaintiffs–or any other hourly workers–within the State of Georgia. Mohawk has contended that certain subsidiaries, including but not limited to Aladdin Manufacturing Corporation, Mohawk Carpet Corporation and Mohawk ESV, Inc., have employed Plaintiffs and other hourly workers in Georgia.

3.   The parties stipulate that, for purposes of this action only, no party will rely on the fact or contention that one or more Mohawk subsidiaries–rather than Mohawk itself–may have employed, paid for, or contracted for hourly workers (a) in connection with any aspect of class certification, (b) to establish or dispute any liability or violation of state or federal law, or (c) to avoid the collection of any judgment or award in this action.

4.   The parties stipulate that, for purposes of this action only, no party will rely on the fact or contention that one or more Mohawk

76

AO 72A
(Rev.8/82)

subsidiaries–rather than Mohawk itself–may have contracted with or had other dealings with temporary employment agencies, recruiting firms, and individual recruiters (a) in connection with any aspect of class certification, (b) to establish or dispute any liability or violation of state or federal law, or (c) to avoid the collection of any judgment or award in this action.

5.    The parties stipulate that, for purposes of this action only, that Mohawk will assume any liability for the conduct of its subsidiaries.    The parties further agree and stipulate that Plaintiffs need not and will not add any other Mohawk subsidiary as a defendant in this action.

6.    For purpose of this action only, the parties stipulate that any current or former hourly employee in Georgia of any Mohawk subsidiary (including, but not limited to, Gale Pelfrey, Shirley Williams and Bonnie Jones) has standing to pursue claims for injuries to their wages against Mohawk in this action.

77

7.    Nothing in these stipulations, however, will affect the ability of any party to rely upon other issues of corporate organization–including but not limited to Mohawk's divisional structure–(a) in connection with any aspect of class certification, or (b) to dispute any legal violation or liability.

. . .

(Id. ¶¶ 1-7.)

On December 10, 2007, Plaintiffs filed a Notice of Death of Plaintiff, notifying the Court of the death of Plaintiff Shirley Williams.  (Docket Entry No. 169.)

On December 18, 2007, Plaintiffs filed their Motion for Class Certification.   (Docket Entry No. 174.)   Plaintiffs request that the Court certify the following class:

All persons legally authorized to be employed in the United States who are or have been employed in hourly positions by Mohawk Industries, Inc., its

78

subsidiaries or affiliates in Georgia at any time from January 5, 1999 to the present, other than Excluded Employees.

Excluded Employees are employees whose employment at Mohawk has been limited to: Dal-Tile, Unilin, or any Mohawk facility or facilities in Milledgeville, Dublin, Tifton, Norcross, Kennesaw or Atlanta, Georgia.

(Id. at 1-2.)  Plaintiffs seek certification of their claim for injunctive relief under Federal Rule of Civil Procedure 23(b)(2), and request that the Court certify all of their claims under Rule 23(b)(3).

Defendant opposes Plaintiffs' Motion for Class Certification.  The briefing process for the Motion is complete, and the Court therefore concludes that the Motion is ripe for resolution by the Court.

## II.    Standard for Class Certification

### A.    In General

Federal Rule of Civil Procedure 23 governs motions to proceed as a class action in federal court.  Rule 23 requires a two-step inquiry to determine whether class certification is appropriate.  Fed. R. Civ. P. 23.  Plaintiffs bear the burden of satisfying each of Rule 23's certification requirements. Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 456 (11th Cir. 1996).  The determination whether a plaintiff has satisfied the requirements imposed by Rule 23 is left to the discretion of the trial court.  Califano v. Yamasaki, 442 U.S. 682, 703 (1979); Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1386 (11th Cir. 1998).

When assessing a motion for class certification, the Court ordinary does not inquire whether the plaintiffs have

80

adduced sufficient evidence to prevail on the merits of their claims.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974); Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 456 (11th Cir. 1996).  The Court, however, "performs a 'rigorous analysis' of the arguments offered in support of certifying the class."  Rhodes v. Cracker Barrel Old Country Store, Inc., 213 F.R.D. 619, 673 (N.D. Ga. 2003) (citing Gilchrist v. Bolger, 733 F.2d 1551, 1556 (11th Cir. 1984)).

"When performing this analysis, the Court is not limited solely to the substance of the parties' pleadings; indeed, the Court should allow—and has allowed in this case—the parties to conduct discovery and adduce evidence relevant to the class certification issue."  Rhodes, 213 F.R.D. at 673 (citing Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1570-71 (11th Cir. 1992)).  As the Supreme

81

Court has recognized, the need for such discovery varies

depending on the circumstances presented by each case:

> "[T]he class determination generally involves
> considerations that are enmeshed in the factual
> and legal issues comprising the plaintiff's cause of
> action." [Coopers & Lybrand v. Livesay, 437 U.S.
> 463, 469 (1978)] (quoting Mercantile Nat. Bank v.
> Langdeau, 371 U.S. 555, 558).  Sometimes the
> issues are plain enough from the pleadings to
> determine whether the interests of the absent
> parties are fairly encompassed within the named
> plaintiff's claim, and sometimes it may be
> necessary for the court to probe behind the
> pleadings before coming to rest on the certification
> question.

General Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982);

Hudson, 90 F.3d at 457; see also In re Polypropylene

Carpet Antitrust Litig., 178 F.R.D. 603, 610-11, 614 (N.D.

Ga. 1997) ("Polypropylene I") (noting, because motion for

class certification pursuant to Rule 23(b)(3) requires court to examine whether evidence to be used by plaintiffs at trial is common to class, court must perform preliminary review of plaintiffs' proposed evidence).   In sum, the Court must determine "through information submitted outside of the pleadings that the requirements of Rule 23 are met, not whether plaintiffs' claims are viable." Telecomm Technical Servs. v. Siemens Rolm Commc'ns, Inc., 172 F.R.D. 532, 543 (N.D. Ga. 1997).   "Stated differently, the Court will examine whether sufficient evidence exists to reasonably conclude that Plaintiffs may proceed in the manner proposed, not whether the evidence can withstand any and all factual challenges leveled by Defendant[]." Rhodes, 213 F.R.D. at 673.

## B.   Evaluation of Expert Testimony

83

At the class certification stage, the Court "need not evaluate competing expert opinions pursuant to Federal Rule of Evidence 702 or the rule of <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)." <u>In re Microcrystalline Cellulose Antitrust Litig.</u>, 218 F.R.D. 79, 83 (E.D. Pa. 2003). Indeed, at this stage of the proceedings, the Court "'should not delve into the merits of an expert's opinion, or indulge in dueling between opposing experts.'" <u>Fisher v. CIBA Speciality Chems. Corp.</u>, 238 F.R.D. 273, 281 (S.D. Ala. 2006) (quoting <u>In re Natural Gas Commodities Litig.</u>, 231 F.R.D. 171, 182 (S.D.N.Y. 2005)) (internal quotation marks omitted). The Court also "need not assign any one opinion particular weight." <u>In re Microcrystalline Cellulose Antitrust Litig.</u>, 218 F.R.D. at 83.

84

AO 72A

(Rev.8/82)

"An expert opinion must meet only a 'low hurdle' to receive consideration at the Rule 23 stage." Fisher, 238 F.R.D. at 281 (citing In re Natural Gas Commodities Litig., 231 F.R.D. at 182). The Court asks only "'whether the expert evidence is sufficiently probative to be useful in evaluating whether class certification requirements have been met.'" Id. (quoting Dukes v. Wal-Mart, Inc., 222 F.R.D. 189, 191 (N.D. Cal. 2004)).

Defendant raises numerous arguments as to why Defendant believes the Court should not consider the expert testimony presented by Plaintiffs. Those arguments, however, essentially present Daubert challenges or challenges to the merits of the opinions offered by Plaintiffs' experts. The Court need not, and does not, consider such challenges at this stage of the proceedings. Rather, the

85

Court concludes, for the limited purposes of ruling on the instant Motion, that the expert evidence presented by Plaintiffs is sufficiently probative to be useful to the Court in determining whether Plaintiffs have satisfied the requirements for class certification.    Plaintiffs' expert evidence consequently satisfies the low hurdle required at this stage of the proceedings.

## C.    Requirements of the Federal Rules of Civil Procedure

Before the Court may certify a case as a class action, the case must satisfy all four requirements of Federal Rule of Civil Procedure 23(a), and also must fall within one of the categories described in Rule 24(b). Rhodes, 213 F.R.D. at 673-74. Rule 23(a) requires Plaintiffs to show:

(1)    the class is so numerous that joinder of all members is impracticable,

86

(2)    there are questions of law or fact common to
the class,

(3)    the claims or defenses of the representative
parties are typical of the claims or defenses of
the class, and

(4)    the representative parties will fairly and
adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs argue that the putative class's claim for
injunctive relief qualifies for certification under Rule 23(b)(2).
Rule 23(b)(2) allows certification if "the party opposing the
class has acted or refused to act on grounds generally
applicable to the class, thereby making appropriate final
injunctive relief or corresponding declaratory relief with
respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs also claim that the putative class fits within

87

Rule 23(b)(3).  Rule 23(b)(3) requires that: (1) questions of law or fact common to members of the class predominate over questions affecting only individual members; and (2) a class action must be superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

The Court first addresses whether Plaintiffs have standing to pursue their claims.  The Court then discusses Plaintiffs' showing under Rule 23(a) and, finally, discusses whether Plaintiffs have satisfied the requirements of Rule 23(b)(2) or Rule 23(b)(3).

## III.  Standing

As an initial matter, Defendant contends that the named

88

Plaintiffs lack standing to pursue their claims.  The United States Court of Appeals for the Eleventh Circuit has observed:

> [I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.  "[A]ny analysis of class certification must begin with the issue of standing."  "Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others."  It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert.  Rather, "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at

89

least one named plaintiff has suffered the injury that gives rise to that claim."

Prado-Steiman v. Bush, 221 F.3d 1266, 1279-80 (11th Cir. 2000) (citations omitted) (alteration in original). Plaintiffs, as the parties claiming jurisdiction, have the burden of establishing standing. Fla. Pub. Interest Research Group Citizen Lobby, Inc. v. Envtl. Prot. Agency, 386 F.3d 1070, 1083 (11th Cir. 2004).

"Article III of the United States Constitution limits the power of federal courts to adjudicating actual 'cases' and 'controversies.'" Nat'l Alliance for the Mentally Ill, St. Johns, Inc. v. Bd. of County Comm'rs of St. Johns County, 376 F.3d 1292, 1294 (11th Cir. 2004). "The most significant case-or-controversy doctrine is the requirement of standing." Id. "'In essence the question of standing is whether the

90

litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" Id. (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).

To satisfy the standing requirement, a party must show: (1) that he has suffered an injury in fact; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury "will be 'redressed by a favorable decision.'" Bischoff v. Osceola County, Fla., 222 F.3d 874, 883 (11th Cir. 2000).

Here, the Court finds that at least one of the named Plaintiffs has standing to assert all of the claims advanced by Plaintiffs. Although Defendant correctly notes that the named Plaintiffs who are former employees of Defendant[2]

---

[2]Plaintiff Pelfrey is a former employee of Defendant. As previously noted, Plaintiffs Williams and Sisson passed away since

lack standing to raise claims for injunctive relief, the evidence in the record indicates that Plaintiff Jones still is employed by Defendant.    See Reid v. Lockheed Martin Aeronautics Co., 205 F.R.D. 655, 665 n.13 (N.D. Ga. 2001) (observing that former employees lacked standing to seek injunctive relief).  At least one named Plaintiff consequently has standing to pursue claims for injunctive relief.[3]

_____

the filing of this action, and thus obviously are no longer employed by Defendant.

[3]To the extent that Defendant contends that Plaintiff Jones lacks standing to pursue claims because Plaintiff Jones worked at a facility that did not use temporary labor, this issue "is more properly one of commonality and typicality than of standing." Reid, 205 F.R.D. at 663 n.9.  Consequently, the Court addresses that contention in connection with the commonality and typicality inquiries.

92

## IV. Rule 23(a) Analysis

### A. Numerosity

The numerosity requirement is satisfied if the proposed class is so numerous that joinder of all members is impracticable. Fed R. Civ. P. 23(a)(1). The impracticability requirement does not require that joinder be impossible; rather, a plaintiff need only show that joinder would be extremely difficult or inconvenient. Anderson v. Garner, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997). Additionally, a plaintiff "generally must proffer some evidence or a reasonable estimate of the number of members comprising the purported class." In re Disposable Contact Lens Antitrust Litig., 170 F.R.D. 524, 529 (M.D. Fla. 1996).

Here, Plaintiffs allege that the class satisfies the numerosity requirement, and Defendant apparently agrees.

93

AO 72A

(Rev.8/82)

(Def.'s Resp. Pls.' Mot. Class Certification at 1 ("Plaintiffs seek to represent a class consisting of 49,708 members."). The Court finds that the proposed class is sufficiently numerous to make joinder of all members extremely difficult or inconvenient.

A second element of the numerosity requirement is that the proposed class meet a minimal standard of identifiability. Rhodes, 213 F.R.D. at 674.  Although "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained, . . . [Plaintiffs] must establish that there exists a legally definable 'class' that can be ascertained through reasonable effort." Earnest v. Gen. Motors Corp., 923 F. Supp. 1469, 1473 & n.4 (N.D. Ala. 1996) (quotations and citations omitted).  The class simply must meet a "minimum standard of definiteness

94

which will allow the trial court to determine membership in the proposed class." Id.; see also Telecomm Technical Servs., 172 F.R.D. at 543-44 (noting all members of class need not be specifically identified and may be dispersed geographically).

One court has noted that to meet Rule 23(a)'s requirement that the class be identifiable, "a proposed class definition must specify a particular group harmed during a particular time period via a particular manner, such that the district court can utilize objective indicia to determine who is and is not part of the class." Fisher, 238 F.R.D. at 301. Courts have declined to certify classes "where the proposed [class] definition would require individualized fact-finding to identify class members." Id.

Plaintiffs suggest that they can identify the members of

95

the proposed class through Defendant's records, notifications that third parties have provided to Defendant concerning use of social security numbers, submission of the names and social security numbers of Defendant's hourly workers to E-Verify, by reviewing I-9 forms, and by using databases such as Lexis-Nexis or People Finder. Defendant devotes a significant amount of time and energy to contending that those methods will not allow Plaintiffs or the Court to identify the members of the proposed class. The Court, however, finds at this point, and solely for purposes of the instant Motion, that the alleged deficiencies pointed out by Defendant do not cause the proposed class to fail the "minimal" standard of ascertainability.

In sum, the Court finds that the proposed class satisfies the numerosity requirement. The Court further concludes

96

that the proposed class meets the minimal standard of identifiability required by Rule 23(a).

## B. Commonality

To satisfy the commonality requirement, a plaintiff must show the presence of questions of law or fact common to the entire class. Fed. R. Civ. P. 23(a)(2). Stated differently, Rule 23(a)(2) requires a plaintiff to demonstrate the existence of issues subject to class-wide proof. Hudson, 90 F.3d at 457. "[W]hile it is not necessary that every question of law or fact is common to every class member, commonality will not exist as long as there is a predominance of individual issues." Domestic Air, 137 F.R.D. at 699 (citing 3 Herbert B. Newburg, Newburg on Class Actions § 18.09, at 464 (2d ed. 1985)).

Here, Plaintiffs argue that several questions of fact and

97

law are common to the proposed class.    In particular,
Plaintiffs contend that the common questions at issue in this
case include:

> (1) <u>Enterprise</u>:  Has  Mohawk  conducted  or
> participated,  directly  or  indirectly,  in  the
> conduct of an enterprise's affairs?  What are
> the  nature  and  extent  of  the  relationships
> between  Mohawk  and  the  third  parties  that
> supply Mohawk with illegal workers?

> (2) <u>Pattern of Racketeering Activity</u>: Has Mohawk
> engaged in a pattern of racketeering activity?
> How many persons who are not authorized to
> be  employed  in  the  United  States  has
> Mohawk  employed  in  hourly  positions  in
> Georgia  during  the  Class  Period?    Did
> Mohawk knowingly hire those unauthorized
> aliens?    How  many  aliens  has  Mohawk
> harbored  during  the  Class  Period?    Did
> Mohawk knowingly or recklessly harbor those
> aliens?  Has Mohawk knowingly or recklessly

98

encouraged or induced aliens to come to or reside in the United States? Has Mohawk knowingly accepted false employment authorization documents? Has Mohawk knowingly used false identification documents?

(3) <u>Conspiracy</u>: Has Mohawk engaged in a conspiracy to violate § 16-4-4(a) of the Georgia RICO statute?

(4) <u>Injury</u>: To what extent has Mohawk's pattern of racketeering activity depressed the wages of the class members and/or increased or maintained Mohawk's profits?

(5) <u>Injunctive Relief</u>: What injunctive relief is required to remedy Mohawk's violations of the federal and Georgia RICO statutes?

(Pls.' Br. Supp. Mot. Class Certification at 15-16.)

For the following reasons, the Court concludes that this

AO 72A

(Rev.8/82)

case does not satisfy the commonality requirement. Contrary to Plaintiffs' arguments that Defendant engaged in one grand conspiracy to employ illegal workers, the evidence in the record indicates that Defendant's operations, including its use of temporary employment agencies and wage-setting practices, are extremely decentralized. Indeed, the evidence shows that Defendant's corporate-level management, including its human resources department, did not enter into relationships with temporary agencies or even exercise control over those relationships, and did not exercise control over wages. Instead, the evidence in the record demonstrates that each of Defendant's five divisions at issue in this case conducted its own hiring, entered into its own relationships with various temporary employment agencies, and had discretion and

100

autonomy to choose whether to enter into such relationships and to set the terms of the relationships. The record further demonstrates that each division set its own wages for its non-temporary hourly employees. The record also shows that some locations within divisions even conducted their own hiring, and that the management at those locations had discretion to choose whether to use temporary employees or to engage in relationships with temporary employment agencies. The evidence thus reveals that the relationships with the various temporary employment agencies occurred on a division-by-division or facility-by-facility basis, rather than on a corporate-level basis. Under those circumstances, the Court finds that Plaintiffs have failed to satisfy the commonality requirement. See Reid, 205 F.R.D. at 669-70 (noting that plaintiffs in employment discrimination

101

suit failed to satisfy commonality requirement where evidence indicated that employment practices were established at local level in various facilities); see also Cooper v. S. Co., 390 F.3d 695, 715 (11th Cir. 2004) (stating courts frequently have declined to certify class actions where "class certification was sought by employees working in widely diverse job types, spread throughout different facilities and geographic locations"); Wright v. Circuit City Stores, Inc., 201 F.R.D. 526, 541 (N.D. Ala. 2001) (observing, in discrimination case, that plaintiffs who were employed in different stores, in different states, in different departments, and at different levels within company hierarchy did not have claims that were susceptible to generalized proof or defenses).[4]

---

[4]Plaintiffs argue that the Court should treat this case differently because it is a RICO action, rather than an employment

102

## C.  Typicality

The typicality requirement is satisfied if the claims and defenses of the representative parties are typical of the claims and defenses of the class.  Fed R. Civ. P. 23(a)(3). A representative plaintiff's claim is typical if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984).  Stated differently, the Court simply inquires whether the named representative's claims "have the same essential

---

discrimination case.  The Court understands and appreciates Plaintiffs' argument. The Court, however, cannot simply ignore the evidence in the record, which fails to support Plaintiffs' contention that Defendant engaged in a corporate-wide RICO enterprise with temporary employment agencies to employ illegal workers and thereby depress the wages of workers who were eligible for employment in the United States.

103

characteristics as the claims of the class at large." Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985).

"Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." Kornberg, 741 F.2d at 1337. Furthermore, "[d]ifferences in the amount of damages between the class representative and other class members does not affect typicality." Id. A plaintiff thus can satisfy the typicality requirement "even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class." Domestic Air, 137 F.R.D. at 698 (quoting 7A Charles Alan

104

Wright, Arthur R. Miller, & Mary Kay Kane, <u>Federal Practice and Procedure</u>: Civil § 1764 (2d ed. 1986)). "However, 'there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class.'" <u>Wright</u>, 201 F.R.D. at 543 (quoting <u>Kornberg</u>, 741 F.2d at 1337).

For the following reasons, the Court finds that Plaintiffs have failed to satisfy the typicality requirement. First, Plaintiff Jones never worked at a facility owned by Defendant that used temporary labor. Plaintiff Jones' claims thus are not typical of the claims of members of the proposed class, many of whom may have worked at facilities owned by Defendant that used temporary labor.

Additionally, both Plaintiff Jones and Plaintiff Pelfrey worked at only a handful of Defendant's facilities that

105

Plaintiffs seek to include in the class definition. As previously noted, the evidence in the record indicates that decisions as to the use of temporary labor, as to agreements with temporary employment agencies, and as to wage-setting were made by the various divisions or even on a facility-by-facility basis. Under those circumstances, the Court simply cannot find that the named Plaintiffs' claims are typical of those of the members of the proposed class at large. See Cooper, 390 F.3d at 714-15 (noting that district court did not abuse its discretion in concluding that plaintiffs failed to satisfy typicality requirement where compensation and promotion decisions were made by individual managers in disparate location, and where plaintiffs sought to represent very broad class that purported to represent all African-American employees of defendants, even though

106

named plaintiffs, collectively, did not have claims that would have been typical of entire class); <u>Wright</u>, 201 F.R.D. at 544-45 (finding typicality requirement was not satisfied where class representatives worked in only six of 125 to 160 stores, warehouses, and service centers, located throughout fifteen states, that plaintiffs sought to include in class certification).

Finally, Plaintiff Pelfrey fails the typicality requirement with respect to her claims for injunctive relief. As previously noted, Plaintiff Pelfrey lacks standing to seek injunctive relief. Under those circumstances, Plaintiff Pelfrey does not meet the typicality requirement with respect to her claims for injunctive relief. <u>Franze v. Equitable Assurance</u>, 296 F.3d 1250, 1254 (11th Cir. 2002) ("'[w]ithout individual standing to raise a legal claim, a named representative does not have

107

the requisite typicality to raise the same claim on behalf of a class.'") (quoting Piazza v. Ebsco Indus., 273 F.3d 1341, 1345 (11th Cir. 2001)) (alteration in original).

In sum, the Court concludes that Plaintiffs have failed to satisfy the typicality requirement of Rule 23(a). The Court next discusses Rule 23(a)'s adequacy requirement.

### D. Adequacy

To satisfy the adequacy requirement, Plaintiffs must show that they will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(b)(4). This requirement involves a two-part inquiry: (1) whether the proposed class' counsel possesses the qualifications and experience to conduct the litigation; and (2) whether Plaintiffs possess interests that are antagonistic to the interests of other class members. Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718,

108

AO 72A

(Rev.8/82)

726 (11th Cir. 1987); <u>Telecomm Technical Servs.</u>, 172 F.R.D. at 543-44.  The Court addresses those questions in turn.

Defendants do not contest the qualifications of proposed class counsel.  Proposed class counsel have considerable experience in class action litigation, and their performance in the litigation to date indicates that proposed class counsel possess the necessary qualifications and experience to conduct the litigation.  The Court therefore concludes that Plaintiffs satisfy the first element of the adequacy requirement of Rule 23(a)(4).

"The adequacy requirement also serves to 'uncover conflicts of interest between named parties and the class they seek to represent.'" <u>Wright</u>, 201 F.R.D. at 545 (quoting <u>Robinson v. Sears, Roebuck & Co.</u>, 111 F. Supp. 2d 1101,

1124 (E.D. Ark. 2000)). "'A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" Id. (quoting Robinson, 111 F. Supp. 2d at 1124). Further, "class representatives should have 'the personal characteristics and integrity necessary to fulfill the fiduciary role of class representatives.'" Id. (quoting Kirkpatrick, 827 F.2d at 726).

Defendant argues, among other things, that the named Plaintiffs are not adequate class representatives because the named class members lack sufficient knowledge and understanding of the nature of this action and the facts underlying this action. The Court has reviewed the depositions of each of the named Plaintiffs, and cannot find that the named Plaintiffs lack sufficient knowledge of the facts underlying this action or sufficient understanding of the

110

facts underlying this action to be adequate representatives. The Court therefore rejects this argument.

Defendant further contends that Plaintiff Pelfrey is not an adequate representative with respect to Plaintiffs' claims for injunctive relief, as Plaintiff Pelfrey is no longer employed by Defendant. See Wright, 201 F.R.D. at 546 (finding plaintiffs failed to satisfy adequacy requirement, partly because none of plaintiffs were current employees of defendant and had no ties to defendant or prospect of benefit from injunctive relief plaintiffs were seeking). While this argument has merit, Plaintiff Jones remains employed by Defendant, and she has standing to seek injunctive relief. The Court therefore cannot find that Plaintiffs fail the adequacy requirement based on this argument.

For the reasons discussed above, the Court finds that

111

Plaintiffs' counsel possess the qualifications and experience necessary to conduct this litigation, and that the named Plaintiffs are adequate class representatives.  The Court therefore concludes that Plaintiffs satisfy the adequacy requirement.

### E.    Summary

In sum, the Court finds that Plaintiffs satisfy the numerosity and adequacy requirements of Rule 23(a).  The Court, however, concludes that Plaintiffs cannot satisfy Rule 23(a)'s commonality and typicality requirements.  The Court therefore cannot certify this case as a class action, because Plaintiffs have failed to satisfy all of the requirements of Rule 23(a).  In an abundance of caution, however, the Court will discuss whether Plaintiffs can satisfy the requirements of Rule 23(b)(2) or Rule 23(b)(3).

112

## IV. Rule 23(b) Analysis

In addition to satisfying all of the criteria of Rule 23(a), Plaintiffs must meet the requirements set forth in Rule 23(b). Here, Plaintiffs seek to certify their claims for injunctive relief under Rule 23(b)(2), and also seek to certify their claims under Rule 23(b)(3). Plaintiffs thus seek to certify a "hybrid" class action. Reid, 205 F.R.D. at 686 (describing "hybrid" class action as action in which plaintiffs sought to certify their claims for injunctive relief under Rule 23(b)(2) and their claims for damages under Rule 23(b)(3)). The Court first addresses Plaintiffs' request for class certification under Rule 23(b)(2), and then addresses Plaintiffs' request for class certification under Rule 23(b)(3).

113

## A.    Rule 23(b)(2)

Class certification is appropriate under Rule 23(b)(2) when the plaintiffs satisfy the requirements of Rule 23(a) and the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Subsection (b)(2) class actions are 'limited to those class actions seeking preliminary injunctive or corresponding declaratory relief.'" Barnes v. Am. Tobacco Co., 161 F.3d 127, 142 (3d Cir. 1998) (quoting 1 Newburg, supra, at 4-39).

Here, Plaintiffs seek injunctive relief for only one of their three remaining claims–their claim for Defendant's alleged violation of O.C.G.A. § 16-14-4(a).   (Compl. ¶¶ 97-98.) Plaintiffs, however, also request an award of treble

114

damages, plus an award of punitive damages, in connection with that same claim. (Id. ¶¶ 95-96.) Similarly, Plaintiffs request treble and punitive damages in connection with their claims for alleged violations of 18 U.S.C.A. § 1962(c) and O.C.G.A. § 16-14-4(c). (Id. § XII (prayer for relief)).

Punitive damages and treble damages are "legal relief that can only be awarded in a Rule 23(b)(2) class action when the damages sought are 'incidental' to the claims for equitable and declaratory relief." Cooper, 390 F.3d at 720 (quoting Murray v. Auslander, 244 F.3d 807, 812 (11th Cir. 2001)). "Damage claims in a Rule 23(b)(2) class action must be incidental to the equitable and declaratory relief because the basic premise of such a class action—that class members suffer a common injury properly addressed by class-wide equitable relief—'begins to break down when the

115

class seeks to recover . . . monetary relief to be allocated based on individual injuries.'" Id. (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 413 (5th Cir. 1998)). In Murray, the United States Court of Appeals for the Eleventh Circuit adopted the position of the United States Court of Appeals for the Fifth Circuit in Allison:

> By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. . . . Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. . . . Liability for incidental damages should not . . . entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

116

Murray, 244 F.3d at 812 (quoting Allison, 151 F.3d at 415) (emphasis in original; omissions in original).  "In keeping with the requirement that monetary damages be incidental to equitable relief in Rule 23(b)(2) class actions, the advisory committee's note to Rule 23 explains that certification under section (b)(2) is not proper in 'cases in which the appropriate final relief relates exclusively or predominately to money damages.'" Cooper, 390 F.3d at 720-21 (emphasis in original).

Applying the rule set forth in Cooper, it is clear that the monetary damages sought by Plaintiffs are not simply incidental to the injunctive relief sought by Plaintiffs. Indeed, Plaintiffs primarily seek monetary damages. Consequently, certification under Rule 23(b)(2) is inappropriate.

To the extent that Plaintiffs contend that the Court

117

simply may certify only Plaintiffs' claims for injunctive relief under Rule 23(b)(2), this approach also is inappropriate. As another judge in this District has noted, the Seventh Amendment may prohibit such an approach. Reid, 205 F.R.D. at 686. As the Reid court observed:

> The Seventh Amendment preserves the right to a jury trial "in Suits at common law." Although the amendment specifically mentions suits at common law, the Supreme Court has made clear that the right to jury trial applies in any suit "in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered."

Id. (citations omitted) (alterations in original). The Reid court concluded that a jury trial was required with respect to the plaintiffs' claims for damages because the parties in Reid had the right to a jury trial in a Title VII case

118

seeking both compensatory and punitive damages, and because both sides had demanded a jury trial. Id. The Reid court noted:

> Many of the factual issues relevant to Plaintiffs' damages claims, however, are also relevant to Plaintiffs' equitable claims. As such, the litigants have the right to a determination of these issues by a single jury. Adjudication would therefore require one jury to resolve the many individual and case-specific issues relating to Plaintiffs' employment discrimination claims prior to any ruling by the court with regard to equitable remedies. The court finds that such a task would be overly cumbersome and would result in litigation characterized by confusion and incoherency.

205 F.R.D. at 686-87.

In the instant case, Plaintiffs have a right to a jury trial on their claims for damages, and they have demanded a

119

jury trial on those claims.  (Compl. § XIII E (Prayer for Relief).)  Consequently, a jury trial is required with respect to Plaintiffs' claims for damages.  Here, as in <u>Reid</u>, many of the factual issues relevant to Plaintiffs' damages claims also are relevant to Plaintiffs' claim for injunctive relief, and the parties have the right to have a single jury determine those issues.    The  Court  agrees  with  the  <u>Reid</u>  court  that employing an approach whereby one jury would resolve all of the many individual and case-specific issues relating to Plaintiffs' claims before the Court issued a ruling as to equitable  remedies  would  be  overly  cumbersome, confusing, and highly inefficient.  The Court consequently declines to adopt the approach suggested by Plaintiffs.

Additionally, even if the named Plaintiffs were willing to forego class certification with respect to damages to pursue

120

injunctive relief on behalf of the class, it is far from clear that the named Plaintiffs would represent the interests of the other class members adequately. <u>Cooper</u>, 390 F.3d at 721. As the Eleventh Circuit recognized in <u>Cooper</u>, "the monetary damages requested might be of far greater significance than injunctive relief" for many of the class members, especially for those who no longer work for Defendant. <u>Id.</u> For those reasons, the Court will not certify a class only as to Plaintiffs' claim for injunctive relief.

In sum, the Court finds that Rule 23(b)(2) certification is inappropriate because Plaintiffs' claims for monetary damages are not simply incidental to Plaintiffs' claim for injunctive relief. The Court further concludes that certification of only Plaintiffs' claims for injunctive relief under Rule 23(b)(2) is inappropriate. The Court therefore

121

denies Plaintiffs' request for certification under Rule 23(b)(2).

## B. Rule 23(b)(3)

Rule 23(b)(3) raises two questions: (1) whether issues of law or fact common to members of the class predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3) states:

> The matters pertinent to the findings [of predominance and superiority] include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D)

122

AO 72A

(Rev.8/82)

the difficulties likely to be encountered in management of a class action.

Id. The Advisory Committee's notes emphasize that Rule 23(b)(3) is designed for cases "in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Id. advisory committee's notes to the 1966 Revision of Rule 23(b)(3) (reprinted in 39 F.R.D. 69, 102-03 (1966)). Before reaching these issues, however, the Court must identify the substantive law governing Plaintiffs' claims.

## A. Substantive Law Governing Claims

### 1. Federal RICO Claims

The Eleventh Circuit set forth a thorough summary of

123

the law governing Plaintiffs' federal RICO claims in its previous opinion in this case. In the interest of brevity and efficiency, the Court incorporates that portion of the Eleventh Circuit's opinion into this Order, and will not repeat that portion of the opinion, or set forth an entirely new section summarizing the applicable law governing Plaintiffs' RICO claims, in this Order. <u>Williams</u>, 465 F.3d at 1282-92.

### 2.    Georgia RICO Claims

Similarly, the Eleventh Circuit's previous opinion in this case sets forth a thorough summary of the law governing Plaintiffs' Georgia RICO claims. In the interest of brevity and efficiency, the Court again incorporates that portion of the Eleventh Circuit's opinion into this Order, rather than repeating that portion of the opinion or setting forth an entirely new section summarizing Georgia RICO law in this

124

Order.  <u>Williams</u>, 465 F.3d at 1292-94.

## B. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623 (1997).  A plaintiff may satisfy this requirement by showing that issues subject to class-wide proof predominate over issues requiring proof that is unique to the individual class members. <u>Jackson v. Motel 6 Multipurpose, Inc.</u>, 130 F.3d 999, 1005 (11th Cir. 1997).

In deciding this question, the Court must keep in mind two related purposes of class action litigation: (1) promoting economies of time, effort, and expense; and (2) providing individuals with relatively small claims the opportunity to assert their rights.    Fed.  R.  Civ.  P.  23(b)  advisory

125

committee's notes to the 1966 Revision of Rule 23(b)(3);
Amchem, 521 U.S. at 617 ("the Advisory Committee [in
drafting Rule 23(b)(3)] had dominantly in mind vindication of
'the rights of groups of people who individually would be
without effective strength to bring their opponents into court
at all'"). If common questions do not predominate, however,
no economies will be achieved through the use of the class
action device. Fed. R. Civ. P. 23(b)(3) advisory committee's
notes to the 1966 Revision of Rule 23(b)(3).

The predominance requirement "does not require that
all issues be common to all parties," rather, it mandates that
"'resolution of the common questions affect all or a
substantial number of the class members.'" Watson v. Shell
Oil Co., 979 F.2d 1014, 1022 (5th Cir. 1992) (quoting
Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir.

AO 72A

(Rev.8/82)

1986)).   "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action."   <u>Rutstein v. Avis Rent-A-Car Sys., Inc.</u>, 211 F.3d 1228, 1234 (11th Cir. 2000) (citing <u>Amchem</u>, 521 U.S. at 623).   The Eleventh Circuit has warned that "'serious drawbacks to the maintenance of a class action are presented where initial determinations, such as the issue of liability vel non, turn upon highly individualized facts.'" <u>Id.</u> at 1235-36 (quoting <u>McCarthy v. Kleindienst</u>, 741 F.2d 1406, 1415 (D.C. Cir. 1984)).

"Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."   <u>In re Visa Check/Master Money Antitrust Litig.</u>, 280 F.3d 124, 139 (2d

127

Cir. 2001) (citing <u>Bertulli v. Indep. Ass'n of Cont'l Pilots</u>, 242
F.3d 290, 290 (5th Cir. 2001); <u>accord</u> <u>Sterling v. Velsicol
Chem. Corp.</u>, 855 F.2d 1188, 1197 (6th Cir. 1988) ("where
the defendant's liability can be determined on a class-wide
basis because the cause of the disaster is a single course
of conduct which is identical for each of the plaintiffs, a class
action may be the best suited vehicle to resolve such a
controversy") (quoting in <u>In re Teletronics Pacing Sys., Inc.</u>,
172 F.R.D. 271, 288 (S.D. Ohio 1997)).

Although "the presence of commonality alone is not
sufficient to fulfill Rule 23(b)(3) . . . '[w]hen common
questions present a significant aspect of the case and they
can be resolved for all members of the class in a single
adjudication, there is clear justification for handling the
dispute on a representative rather than on an individual

128

basis.'" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th

Cir. 1998) (quoting 7A Wright, Miller & Kane, supra, § 1778);

accord Mullen v. Treasure Chest Casino, LLC, 186 F.3d

620, 626 (5th Cir. 1999) ("'In order to 'predominate,'

common issues must constitute a significant part of the

individual cases.'") (quoting Jenkins v. Raymark Indus., 782

F.2d 468, 472 (5th Cir. 1986)). "Common issues will not

predominate over individual questions if, 'as a practical

matter, the resolution of . . . [an] overarching common issue

breaks down into an unmanageable variety of individual

legal and factual issues.'"    Cooper, 390 F.3d at 722

(quoting Andrews v. Am. Tel. & Tel. Co., 95 F.3d 1014,

1023 (11th Cir. 1996)) (omission and alteration in original).

Here, the resolution of the common issues that Plaintiffs

claim exist will, by necessity, break down into an

129

unmanageable number of individual legal and factual issues. As previously noted, the evidence in the record fails to support a determination that Defendant engaged in a relationship with the various temporary employment agencies at a corporate-wide level. Rather, the evidence indicates that: (1) the individual divisions, and, in many cases, the individual facilities, had discretion to determine whether to enter into relationships with temporary employment agencies, to determine which of the various temporary employment agencies to use, and to determine whether to use temporary labor at all; (2) Defendant's corporate-level management had little control over the relationships between the divisions or facilities and the temporary employment agencies; (3) many facilities may have chosen not to use temporary labor at all during the

130

proposed class period; (4) the divisions each operated their own hiring centers and made their own decisions with respect to employee hiring and discipline; (5) the divisions, rather than Defendant's corporate management, established wages for their hourly employees; and (6) the wages for the hourly employees differed from division to division, and, often, from facility to facility for the same position. To determine whether a RICO enterprise existed, the Court will have to examine each of the relationships between the divisions or facilities and the various temporary employment agencies. Additionally, although the Court need not, and does not, evaluate the merits of Defendant's statute of limitations argument at this point, it is highly likely that the Court will have to engage in fact-specific inquiries as to each member of the class, or as to each facility or

131

division, to evaluate this argument. Under those circumstances, the Court cannot find that common issues predominate over individual inquiries.

For the reasons discussed above, the Court finds that individual factual issues and inquiries predominate over any common issues that this case may present. The Court therefore concludes that Plaintiffs have failed to satisfy Rule 23(b)(3)'s predominance requirement. Class certification under Rule 23(b)(3) consequently is inappropriate.

## C. Superiority

Plaintiffs seeking certification of a class under Rule 23(b)(3) also must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When determining whether a case satisfies the superiority

132

requirement, the Court should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Id. The Court discusses those factors in turn.

First, the individual class members likely have little, if any, interest in pursuing separate actions against Defendant. Second, to the Court's knowledge, the instant action and the related Carpenter action are the only cases filed that involve allegations of Defendant's alleged hiring of

133

illegal workers.  Third, this case has been pending before the Court for more than four years, and the Court already has supervised class discovery in the case and ruled on a Motion to Dismiss.  Defendant also has its headquarters in this Division, and many of the potential class members reside in or near this Division.  Under those circumstances, these three factors counsel in favor of finding that Plaintiffs have satisfied the superiority requirement.

The fourth factor, however, tips the scales in favor of concluding that Plaintiffs have failed to satisfy the superiority requirement.  As previously noted, resolution of the issues involved in this case will, by necessity, break down into an unmanageable number of individual legal and factual issues.  Given this concern, and given the Court's finding that common issues do not predominate, the Court

134

concludes that a class action is not superior to other available methods for adjudicating this controversy. The Court therefore finds that Plaintiffs have failed to satisfy the superiority requirement of Rule 23(b)(3). The Court consequently cannot certify this case as a class action under Rule 23(b)(3).

135

## V. Conclusion

ACCORDINGLY, the Court **DENIES** Plaintiffs' Motion for Class Certification [174]. **This Order is not intended for publication.**[5]

IT IS SO ORDERED, this the 3 day of March, 2008.

_____
UNITED STATES DISTRICT JUDGE

---

[5]The Court has learned that certain of its Orders in other cases are available on Westlaw. The Court did not authorize the publication of many of those Orders, and the Court and its staff were not contacted prior to the publication of many of those Orders. The Court does not routinely make its Orders available on Westlaw or LEXIS, and would not ordinarily have chosen to publish many of the Orders attributed to this Court that are now available on Westlaw. The Court does not intend to authorize the instant Order for publication, and expects counsel to abide by this decision. The Court expects counsel or individuals who seek to publish the Court's Orders to consult the Court prior to sending the Orders to Westlaw, LEXIS, or any other similar legal-related publisher.

136