FILED IN CLERK'S OFFICE
U.S.D.C. Rome

JUN 2 9 2009

JAMES N. HATTEN, Clerk
By:
Deputy Clerk

# United States Court of Appeals
## For the Eleventh Circuit

No. 08-13446

District Court Docket No.
04-00003-CV-HLM-4



FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

May 28, 2009

THOMAS K. KAHN
CLERK

SHIRLEY WILLIAMS,
GALE PELFREY,
BONNIE JONES,
LORA SISSON, individually
and on behalf of a class,

Plaintiffs-Appellants,

versus

MOHAWK INDUSTRIES, INC.,

Defendant-Appellee.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By:
Deputy Clerk
Atlanta, Georgia

--------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Georgia
--------------------------------------------------------------

J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
JUN 2 6 2009
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered:    May 28, 2009
For the Court:    Thomas K. Kahn, Clerk
By:    Clark, Djuanna



[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
┌─────────────────────────┐
│         FILED           │
│ U.S. COURT OF APPEALS   │
│   ELEVENTH CIRCUIT      │
│      MAY 28, 2009       │
│   THOMAS K. KAHN        │
│        CLERK            │
└─────────────────────────┘
```

No. 08-13446

D. C. Docket No. 04-00003-CV-HLM-4

SHIRLEY WILLIAMS,
GALE PELFREY,
BONNIE JONES,
LORA SISSON, individually
and on behalf of a class,

Plaintiffs-Appellants,

versus

MOHAWK INDUSTRIES, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

(May 28, 2009)

Before BARKETT, PRYOR and FARRIS,* Circuit Judges.

_____

*Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PRYOR, Circuit Judge:

This appeal concerns whether the district court abused its discretion when it denied a motion to certify a class action for employees of Mohawk Industries who complain that Mohawk engaged in racketeering activity by hiring illegal aliens and depressing the employees' wages. This appeal is the third time that our Court has considered issues in this litigation. <u>Williams v. Mohawk Indus., Inc.</u> (<u>Mohawk I</u>), 411 F.3d 1252 (11th Cir. 2005) (per curiam); <u>Williams v. Mohawk Indus., Inc.</u> (<u>Mohawk II</u>), 465 F.3d 1277 (11th Cir. 2006) (per curiam). We conclude that the district court abused its discretion when it denied the employees' motion for class certification. The district court erred when it ruled that the employees' complaint fails to present issues of law or fact common to the class, Fed. R. Civ. P. 23(a)(2), and when it ruled that the claims of the proposed representatives are not typical of the claims of the absent class members, <u>id.</u> (a)(3). Those errors also led the district court to misapply the standard for determining whether the employees may maintain a class action for compensatory relief, <u>id.</u> (b)(3), and a hybrid class for injunctive relief, <u>id.</u> (b)(2). We reverse and remand for further proceedings.

## I. BACKGROUND

Our discussion of the background is divided in two parts. First, we discuss the course of the litigation before the employees moved to certify a class action.

2

Second, we discuss the employees' motion for class certification and the denial of that motion by the district court.

## A. The Course of the Litigation

On January 6, 2004, current and former employees of Mohawk who worked for hourly wages at various facilities in northern Georgia filed a complaint that Mohawk engaged in a pattern of racketeering activity prohibited by the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. § 1962(c), by hiring and harboring illegal aliens in violation of the Immigration and Nationality Act, 8 U.S.C. §§ 1324(a)(1)(A)(iii), (a)(1)(A)(iv), (a)(3)(A). The employees alleged that Mohawk formed an enterprise with various temporary employment agencies to hire illegal aliens and depress wages. The employees alleged that they were harmed by the racketeering activity of Mohawk because their wages were depressed. The employees also alleged that Mohawk violated the Georgia statute that prohibits racketeering activity, Ga. Code Ann. § 16-14-4(a), (c), by committing various predicate acts involving fraud and misuse of visas, 18 U.S.C. §§ 1546(a), (b), and that Mohawk was unjustly enriched by its criminal activities under the law of Georgia.

Mohawk moved to dismiss the employees' complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6). The district court granted the motion as to one

3

claim of unjust enrichment based on the alien workers' hesitation to bring worker's compensation claims, but denied the motion as to all other claims. At the request of Mohawk, the district court certified the order for an interlocutory appeal. We affirmed the decision of the district court that the employees stated claims under the federal and Georgia RICO statutes, but we reversed the decision that the employees stated a separate claim for unjust enrichment about agreed-upon wages. Mohawk I, 411 F.3d at 1266.

Mohawk petitioned the Supreme Court for a writ of certiorari and raised two questions for review: (1) whether a defendant corporation and its agents may constitute an enterprise under RICO; and (2) whether the employees had stated a claim that the alleged practices of Mohawk proximately caused injuries to business property in the form of depressed wages. The Supreme Court granted certiorari as to the first question, but then dismissed the petition as improvidently granted and remanded to our Court for further consideration in the light of Anza v. Ideal Steel Supply Corporation, 547 U.S. 451, 126 S. Ct. 1991 (2006). Mohawk Indus., Inc. v. Williams, 547 U.S. 516, 126 S. Ct. 2016 (2006). We again concluded that the claims of unjust enrichment failed and that the employees stated claims of racketeering under state and federal statutes, and we remanded to the district court for further proceedings. Mohawk II, 465 F.3d at 1295.

4

## B. The Class Certification Decision

After discovery commenced, the employees moved to certify the following class of lawful employees of Mohawk in North Georgia:

> All persons legally authorized to be employed in the United States who are or have been employed in hourly positions by Mohawk Industries, Inc., its subsidiaries or affiliates in Georgia at any time from January 5, 1999 to the present, other than Excluded Employees.

> Excluded Employees are employees whose employment at Mohawk has been limited to: Dal-Tile, Unilin, or any Mohawk facility or facilities in Milledgeville, Dublin, Tifton, Norcross, Kennesaw or Atlanta, Georgia.

The employees sought certification of one of their claims under Georgia law, Ga. Code. Ann. § 16-14-4(a), for injunctive relief under Federal Rule of Civil Procedure 23(b)(2), and sought certification of all of their claims under Rule 23(b)(3).

The employees alleged several common questions when they sought certification, including whether "Mohawk conducted or participated, directly or indirectly, in the conduct of an enterprise's affairs," whether "Mohawk engaged in a pattern of racketeering activity," and whether "Mohawk engaged in a pattern of racketeering activity . . . . [or] a conspiracy to violate § 16-14-4(a) of the Georgia RICO statute." Mohawk argued that its hiring and wage-setting practices were decentralized and differed significantly over time, that there was no evidence of a

5

single enterprise or conspiracy, and that proof of injury was not possible. The employees responded that "Mohawk's decentralization mantra" was irrelevant to the commonality analysis because the employees had alleged common questions for which they would present common proof.

The employees also argued that the claims of the named plaintiffs were typical: "The Named Plaintiffs' claims and the claims of the class members arise out of the same 'course of conduct' (the operation and management of an enterprise through which Mohawk hires and harbors illegal workers) and 'the same legal theory' (that this unlawful conduct depresses wages)." Mohawk responded that the claims of plaintiffs Jones and Pelfrey were not typical because Jones never worked at a Mohawk location that used temporary labor and Pelfrey was a former employee. The employees responded that Jones's claim was typical because her allegation, like the allegation of the class, was that the illegal hiring by Mohawk depressed all the wages of legal employees, regardless of location.

The employees also argued that the scheme by Mohawk to hire and harbor illegal workers satisfied the requirement that a defendant "has acted . . . on grounds that apply generally to the class," Fed. R. Civ. P. 23(b)(2). Mohawk argued against certification under subsection (b)(2) on the ground that the damages sought by the employees were not incidental to their claim for equitable relief. The employees

6

responded that they were seeking certification of a hybrid class for only injunctive relief under subsections (b)(2) and (c)(4), and that class would be separate from the class for which they were seeking monetary damages under subsection (b)(3).

The employees argued that the common issues whether Mohawk conducted the affairs of an enterprise, engaged in a pattern of racketeering activity, and participated in a conspiracy, and whether and to what extent the class suffered injury predominated because those issues would have to be resolved in every class member's individual action. Mohawk argued that hiring and wage-setting differed across the class, there was no evidence of a single enterprise or conspiracy, there was no common method of proving injury or damages, and defenses based on statutes of limitation would require individual determinations. The employees responded that any hiring and wage discretion did not negate the existence of common questions, arguments about the existence of an enterprise and damages were premature arguments about the merits of their complaint, and the employees sought only damages incurred during the limitations period.

The district court denied class certification. The district court determined that the employees satisfied the requirements of numerosity, Fed. R. Civ. P. 23(a)(1), and adequacy of representation, id. (a)(4), but that the employees did not satisfy the requirements of commonality, id. (a)(2), and typicality, id. (a)(3). The

district court agreed with Mohawk that the employees had not satisfied the commonality requirement because "[c]ontrary to Plaintiffs' arguments that Defendant engaged in one grand conspiracy to employ illegal workers, the evidence in the record indicates that Defendant's operations, including its use of temporary employment agencies and wage-setting practices, are extremely decentralized." The district court also agreed with Mohawk that neither of the proposed class representatives presented claims typical of the class because Jones never worked at a Mohawk facility that used temporary labor and because both Jones and Pelfrey "worked at only a handful of [Mohawk's] facilities."

The district court agreed with Mohawk that a class could not be certified under subsection (b)(2). The district court concluded that the employees' demand for monetary damages was not incidental to their demand for injunctive relief. The district court also declined to certify a "hybrid class" for both monetary and injunctive relief on the ground that having one jury "resolve all of the many individual and case-specific issues relating to Plaintiff's claims before the Court issued a ruling as to equitable remedies would be overly cumbersome, confusing, and highly inefficient."

The district court refused to certify a class under Rule 23(b)(3) on the grounds that common issues did not predominate and the class action would not be

8

superior to other available methods of relief. The district court again relied on the

corporate structure of Mohawk when it determined that class litigation would

present an "unmanageable number of individual legal and factual issues" because

"the evidence in the record fails to support a determination that Defendant engaged

in a relationship with the various temporary employment agencies at a corporate-

wide level." The district court determined that the first three factors in the

superiority analysis weighed in favor of the employees, but the district court

determined that the "manageability" factor "tips the scales in favor of concluding

that Plaintiffs have failed to satisfy the superiority requirement. . . . [because] [a]s

previously noted, resolution of the issues involved in this case will, by necessity,

break down into an unmanageable number of individual legal and factual issues."

        The district court did not evaluate the employees' expert testimony. The

district court concluded that arguments by Mohawk attacking the experts were

"essentially . . . [evidentiary] challenges or challenges to the merits of the opinions

offered by Plaintiffs' experts." The district court determined that "the expert

evidence presented by Plaintiffs is sufficiently probative to be useful to the Court

in determining whether Plaintiffs have satisfied the requirements for class

certification."

## II. STANDARD OF REVIEW

9

We review a denial of class certification for an abuse of discretion.  Heffner
v. Blue Cross & Blue Shield of Ala., Inc., 443 F.3d 1330, 1337 (11th Cir. 2006).
"[A]n abuse of discretion occurs if the judge fails to apply the proper legal
standard or to follow proper procedures in making the determination, or makes
findings of fact that are clearly erroneous."  Birmingham Steel Corp. v. TVA, 353
F.3d 1331, 1335 (11th Cir. 2003) (internal quotation marks and alterations
omitted).

## III. DISCUSSION

Our discussion is divided in four parts.  First, we address the employees'
argument that the district court abused its discretion when it determined that the
employees did not present a question of law or fact that was common to all
members of the class under Rule 23(a)(2).  Second, we address the employees'
argument that the district court abused its discretion when it determined that the
claims of the proposed class representatives were not typical of the claims of the
class under Rule 23(a)(3).  Third, we address the employees' argument that the
district court abused its discretion when it determined that the questions of law or
fact common to all class members do not predominate over any questions affecting
individual members and that a class action is not superior under Rule 23(b)(3).
Fourth, we address the employees' argument that the district court abused its

10

discretion when it declined to certify a hybrid class for injunctive relief under Rule 23(b)(2) and (c)(4).

### A. The District Court Abused Its Discretion When It Determined That the Employees Failed To Present Questions of Law or Fact Common to All Members of the Class.

A class may be certified only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). Commonality requires "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982) (footnote omitted).

The employees presented two overarching questions that are common to all members of the class: (1) whether "Mohawk conducted or participated, directly or indirectly, in the conduct of an enterprise's affairs" under the federal RICO statute; and (2) whether "Mohawk engaged in a pattern of racketeering activity . . . . [or] a conspiracy to violate § 16-14-4(a) of the Georgia RICO statute." Under section 1962(c) of the federal RICO statute, the employees "'must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Mohawk I, 411 F.3d at 1256 (quoting Jones v. Childers, 18 F.3d 899,

910 (11th Cir. 1994)) (internal quotation marks omitted). As to elements one and two, all the employees must prove that Mohawk "participate[d] in the operation or management of the enterprise," Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S. Ct. 1163, 1173 (1993). As to elements three and four, all the employees must prove that Mohawk engaged in a pattern of racketeering activity by hiring and harboring illegal aliens. The law of Georgia makes it "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." Ga. Code Ann. § 16-14-4(a). The Georgia RICO statute does not require proof of an enterprise, but it requires "'proof that the defendant committed predicate offenses . . . at least twice.'" Mohawk I, 411 F.3d at 1264 (quoting Cobb County v. Jones Group, P.L.C., 218 Ga. App. 149, 154, 460 S.E.2d 516, 521 (1995)). All the employees allege and must prove under Georgia law that Mohawk violated federal criminal prohibitions of fraud and misuse of visas, 18 U.S.C. § 1546, which is a predicate offense under the law of Georgia, Ga. Code. Ann. § 16-14-3(9). These are all common questions because each employee would have to prove these elements of their claims of racketeering activity under federal and state law to establish the liability of Mohawk.

12

We agree with the employees that the district court erred when it relied on our precedents about the certification of a class action for a complaint of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. In <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1257 (11th Cir. 2004), we explained that claims under RICO, in contrast with claims under Title VII, are often susceptible to common proof:

> RICO claims are not simply individual allegations of underpayments lumped together, and the allegation of an official corporate policy or conspiracy is not simply a piece of circumstantial evidence being used to support such individual underpayment claims. Instead, the very gravamen of the RICO claims is the "pattern of racketeering activities" and the existence of a national conspiracy . . . . These are not facts from which jurors will be asked to infer the commission of wrongful acts against individual plaintiffs; these very facts constitute essential elements of each plaintiff's RICO claims.

The district court relied on the decentralized decisions of Mohawk about hiring and wages to conclude that the employees' complaint does not present questions common to the class, but the employees' complaint is not dependent on proof of individual acts of disparate treatment as often is the case under Title VII.

We agree with the employees that their complaint raises questions that are common to all members of the class. These common questions are sufficient to satisfy the low hurdle of Rule 23(a)(2). Whether Mohawk conducted the affairs of an enterprise through a pattern of racketeering activity that depressed the wages of

all employees is a question common to each employee's complaint. The district court abused its discretion when it ruled that the employees' complaint did not present questions of law or fact common to the proposed class.

### B. The District Court Abused Its Discretion When It Determined That the Named Plaintiffs Did Not Present Claims that Were Typical of the Class.

A class may be certified only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The claim of a class representative is typical if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." Auslander, 244 F.3d at 811. "The typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories." Id. (internal quotation marks omitted).

We agree with the employees that the district court abused its discretion when it ruled that the claims of Jones and Pelfrey were not typical of the claims of absent class members. Jones and Pelfrey allege that Mohawk conducted the affairs of an enterprise by hiring illegal labor, which depressed the employees' wages. This claim is typical of the claims of other members of the class because the claims

14

are based on the same legal theory. Because the employees' claim is that the hiring of illegal aliens by Mohawk depressed the wages of all legal hourly workers regardless of location, whether the two class representatives worked at a few locations is irrelevant. Although this legal theory may ultimately not be sustained by the evidence, it is typical of the class of which Jones and Pelfrey are representative.

### C. The District Court Abused Its Discretion When It Considered Whether To Certify a Class Action Under Rule 23(b)(3).

A class action may be certified under subsection (b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" Klay, 382 F.3d at 1255 (quoting Ingram v. Coca-Cola Co., 200 F.R.D. 685, 699 (N.D. Ga. 2001)) (alteration in original). "'[S]erious drawbacks to the maintenance of a class action are presented where initial determinations, such as the issue of liability vel non, turn upon highly individualized facts.'" Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235–36 (11th Cir. 2000) (quoting McCarthy v. Kleindienst,

741 F.2d 1406, 1415 (D.C. Cir. 1984)). "[T]he Rule requires a pragmatic

assessment of the entire action and all the issues involved." 5 James Wm. Moore

et al., Moore's Federal Practice § 23.45[1], at 23-217 (3d ed. 2008). "Where, after

adjudication of the classwide issues, plaintiffs must still introduce a great deal of

individualized proof or argue a number of individualized legal points to establish

most or all of the elements of their individual claims, such claims are not suitable

for class certification under Rule 23(b)(3)." Klay, 382 F.3d at 1255. "Even if Rule

23(a)'s commonality requirement may be satisfied . . . , the predominance criterion

is far more demanding." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623–24,

117 S. Ct. 2231, 2250 (1997).

In Klay, we explained that "the common issues of fact [in a RICO action],

concerning the existence of a[n enterprise and] a pattern of racketeering activity . .

. are quite substantial. They would tend to predominate over all but the most

complex individual issues." 382 F.3d at 1258–59. "It is primarily when there are

significant individualized questions going to liability that the need for

individualized assessments of damages is enough to preclude 23(b)(3)

certification." Id. at 1260.

Although "a court should not determine the merits of a claim at the class

certification stage, it is appropriate to 'consider the merits of the case to the degree

necessary to determine whether the requirements of Rule 23 will be satisfied.'"

Heffner, 443 F.3d at 1337 (quoting Valley Drug Co. v. Geneva Pharm., Inc., 350

F.3d 1181, 1188 n.15 (11th Cir. 2003)). A district court must consider, for

example, how the class will prove causation and injury and whether those elements

will be subject to class-wide proof:

> [T]he issue of liability . . . includes not only the question of violation,
> but also the question of fact of injury, or impact. . . . In making the
> determination as to predominance, of utmost importance is whether
> "impact" should be considered an issue common to the class and
> subject to generalized proof, or whether it is instead an issue unique to
> each class member, and thus the type of question [that] might defeat
> the predominance requirement of Rule 23(b)(3).

Alabama v. Blue Bird Body Co., 573 F.2d 309, 320 (5th Cir. 1978). "[I]f

generalized proof of impact is . . . improper, then the district court must carefully

consider whether this requirement of individual proof does not defeat the class

certification on either predominance or manageability grounds." Id. at 324.

Certification under Rule 23(b)(3) also requires that the class action device

"is superior to other available methods for fairly and efficiently adjudicating the

controversy." "In many respects, the predominance analysis . . . has a tremendous

impact on the superiority analysis . . . for the simple reason that, the more common

issues predominate over individualized issues, the more desirable a class action

lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." Klay, 382 F.3d

at 1269.  Rule 23(b)(3) provides what the Advisory Committee Notes describe as a

non-exhaustive list of four factors that are pertinent to the finding of superiority:

> **(A)** the class members' interests in individually controlling the
> prosecution or defense of separate actions; **(B)** the extent and nature of
> any litigation concerning the controversy already begun by or against
> class members; **(C)** the desirability or undesirability of concentrating
> the litigation of the claims in the particular forum; and **(D)** the likely
> difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Although the district court concluded that the employees' proposed class

action would be unmanageable, we have explained two reasons that the factor of

manageability is ordinarily satisfied so long as common issues predominate over

individual issues:

> First, we are not assessing whether this class action will create
> significant management problems, but instead determining whether it
> will create relatively more management problems than any of the
> alternatives . . . .  Second, where a court has already made a finding
> that common issues predominate over individualized issues, we would
> be hard pressed to conclude that a class action is less manageable than
> individual actions.

Klay, 382 F.3d at 1273.  If a district court determines that issues common to all

class members predominate over individual issues, then a class action will likely be

more manageable than and superior to individual actions.

The district court failed to conduct a rigorous analysis of predominance and

superiority.  The district court instead repeated its erroneous determination about a

lack of common issues. The district court stated, without any meaningful explanation, that the decentralized decisions of Mohawk regarding hiring and wages of hourly employees would mean that any common issues would "by necessity, break down into an unmanageable number of individual legal and factual issues." Because the district court abused its discretion by repeating its error about issues common to all class members, the district court did not and could not conduct the correct analysis to determine whether questions affecting only individual members predominated over questions common to all members of the class.

The employees argue that their injury is subject to common proof because every employee was damaged by the illegal hiring by Mohawk, irrespective of an employee's job description or location, but the district court failed to address the employees' argument about classwide proof. The district court instead accepted the employees' expert testimony without examining it or explaining its affect on the predominance analysis. On remand, the district court must test and evaluate the employees' argument that their injury is subject to common proof.

We remand for the district court to conduct a pragmatic assessment of whether common issues predominate over individual issues and whether a class action is superior to other forms of relief under Rule 23(b)(3). Because the denial

19

of class certification by the district court turned on the erroneous premise that there

were no questions common to the class, the district court failed to consider whether

the common issues predominated over individual issues and whether a class action

was superior to individual actions.  See Wooden v. Bd. of Regents of Univ. Sys. of

Ga., 247 F.3d 1262, 1288 (11th Cir. 2001) (holding that a denial of class

certification should be vacated and remanded "to the extent it turned on the

[incorrect] notion that Green could not serve as a class representative").  These are

questions "for the district court to address in the first instance, not this Court . . . ."

Id.

### D. If It Certifies a Class Under Rule 23(b)(3), the District Court Must Determine Whether Certification of a Hybrid Class Under Rule 23(b)(2) and (c)(4) Is Appropriate.

The employees admit that they are not entitled to maintain a class action

under Rule 23(b)(2) for most of their claims.  Certification of a class under

subsection (b)(2) is appropriate when "the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a

whole."  Fed. R. Civ. P. 23(b)(2).  Monetary damages are "legal relief that can only

be awarded in a Rule 23(b)(2) class action when the damages sought are incidental

to the claims for equitable and declaratory relief."  Cooper v. Southern Co., 390

20

F.3d 695, 720 (11th Cir. 2004) (internal quotation marks omitted). "[T]he advisory committee's note to Rule 23 explains that certification under section (b)(2) is <u>not</u> proper in 'cases in which the appropriate final relief relates exclusively or <u>predominantly</u> to money damages.'" <u>Id.</u> at 721 (quoting Fed. R. Civ. P. 23(b)(2), advisory committee's note (emphasis added)). It is undisputed that the employees seek primarily treble compensatory damages and punitive damages.

The employees seek a class for injunctive relief, under Rule 23(b)(2), as to one of their claims under state law, Ga. Code. Ann. § 16-14-4(a), and the employees argue that the district court should certify a hybrid class for that claim under Rule 23(c)(4), which permits certification "with respect to particular issues." Fed. R. Civ. P. 23(c)(4). We have explained that a "hybrid class action" may be certified in some cases:

> "It is possible to create hybrids in given cases. Since in theory there should be no hard requirement that (b)(2) be mutually exclusive, and since subpart (c)(4)(A) allows an action to be maintained 'with respect to particular issues,' the fact that damages are sought as well as an injunction or declaratory relief should not be fatal to a request for a (b)(2) suit, as long as the resulting hybrid case can be fairly and effectively managed."

<u>Holmes v. Cont'l Can Co.</u>, 706 F.2d 1144, 1158 n.10 (11th Cir. 1983) (quoting 3B J. Moore, <u>Moore's Federal Practice</u> ¶ 23.40[4], at 23-308 (2d ed. 1981)).

As with the analysis of predominance, the flawed analysis of commonality

by the district court infected its consideration of a hybrid class action.  If the district court determines that common issues predominate and certifies a class for damages under subsection (b)(3), the district court must consider whether to certify a class under subsection (b)(2) with respect to the employees' claim for equitable relief.  The district court declined to certify a hybrid class because allowing many individual suits for liability and monetary relief followed by judicial resolution of class-wide equitable relief would be "overly cumbersome, confusing, and highly inefficient."  This inefficiency dissolves if the district court determines common issues predominate and certifies a class under subsection (b)(3).  The definition of the hybrid class under subsection (b)(2) would be confined to current employees of Mohawk because only those members of the employees' proposed class have standing to seek injunctive relief.  See Nix v. Fulton Lodge No. 2 of the Int'l Ass'n of Machinists & Aerospace Workers, 452 F.2d 794, 797 (5th Cir. 1971).  If the employees succeed in establishing the liability of Mohawk in their suit for damages under subsection (b)(3), the district court would consider whether to fashion equitable relief under subsection (b)(2).

## IV. CONCLUSION

We **VACATE** the decision of the district court denying class certification and **REMAND** for further proceedings consistent with this opinion.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

22