**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| SHIRLEY WILLIAMS, GALE | ) | |
| PELFREY, BONNIE JONES and | ) | |
| LORA SISSON, individually and on | ) | Civil Action |
| behalf of a class, | ) | File No. 4:04-cv-03-HLM |
| | ) | |
|     Plaintiffs, | ) | **CLASS ACTION** |
| | ) | |
| vs. | ) | |
| | ) | |
| MOHAWK INDUSTRIES, INC., | ) | |
| | ) | |
|     Defendant. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF SETTLEMENT**

Bobby Lee Cook
Cook & Connelly
9899 Commerce Street
P.O. Box 370
Summerville, GA 30747
Tel:   (706) 857-3421
Fax:   (706) 857-1520

Howard Foster
Foster P.C.
55 W. Wacker Drive
Suite 1400
Chicago, IL 60601
Tel:   (312) 726-1600

Matthew Thames
1419 Chattanooga Ave.
P.O. Box 2203
Dalton, GA 30722
Tel:   (706) 278-0466

William V. Johnson
Johnson & Bell, Ltd
33 West Monroe Street
Chicago, Illinois 60603
Tel. (312) 372-0770

John E. Floyd
Joshua F. Thorpe
Ronan P. Doherty
Nicole G. Iannarone
Bondurant, Mixson &
Elmore, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309
Tel:   (404) 881-4100
Fax:   (404) 881-4111

Attorneys for Plaintiffs

## INTRODUCTION

Subject to this Court's approval, the parties to this action have reached a settlement agreement that provides significant benefits to the proposed class, including an $18 million Settlement Fund and a commitment from Defendant Mohawk Industries, Inc. ("Mohawk") to conduct training regarding verification of employment eligibility. The settlement relieves both sides of the uncertainty and expense of continued, protracted litigation. For nearly six years, the parties have waged a hard-fought battle over plaintiffs' claim that Mohawk violated the federal and Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Acts by hiring illegal workers in its Northwest Georgia facilities. No other case based on similar allegations has resulted in more than a $1.3 million settlement, and most such cases have not resulted in any class relief.

In the absence of a settlement, this action would likely go on for many more years and the outcome would be uncertain for both sides. The parties' battle has already included three rulings by the Eleventh Circuit Court of Appeals, a trip to the United States Supreme Court and an initial, now vacated, ruling by this Court that plaintiffs were not entitled to class certification. As matters stand, this Court would, in accordance with the Eleventh Circuit's most recent ruling, have to make a new determination as to whether plaintiffs are entitled to class certification. If the Court

755856.1

certified the class, motions for summary judgment, motions to bar plaintiffs' experts, motions to decertify the class, a trial and more appeals would surely follow.  The result of those years of additional litigation would not be guaranteed for either side.  The parties and Mohawk's insurance carrier, Zurich American Insurance Co. ("Zurich"), have thus reached a settlement that meets the requirements of fairness, adequacy and reasonableness.

Plaintiffs Bonnie Jones and Gale Pelfrey move this Court to enter the attached Proposed Order:  (1) preliminarily approving the Settlement Agreement; (2) provisionally certifying the proposed Class; (3) preliminarily certifying Plaintiffs Jones and Pelfrey as Class Representatives; (4) preliminarily certifying the undersigned plaintiffs' counsel as Class Counsel; (5) authorizing the form and manner of Notice to be sent to Class Members concerning the Settlement Agreement; (6) approving the Settlement Agreement's time frame for exclusion requests ("opt outs") and objections; and (7) approving a time frame for conducting a formal fairness hearing.

## I.    Summary of the Class Claims

Plaintiffs filed this lawsuit more than six years ago, on January 6, 2004.[1]  The four original plaintiffs were current and former hourly employees who worked for

---

[1] *See* Complaint (Jan. 6, 2004) [Dkt. No. 1].  *See also* Order at 66-67 (Mar. 3, 2008) [Dkt. No. 190] (recounting procedural history) ("Class Certification Order").

755856.1

Mohawk in north Georgia.  The two surviving plaintiffs are Gale Pelfrey, a former

Mohawk employee, and Bonnie Jones, who still works for Mohawk.[2]

Plaintiffs alleged that Mohawk had violated the federal and Georgia RICO Acts

by hiring illegal aliens.  In addition, plaintiffs alleged that Mohawk had harbored

illegal workers who were hired and supplied by temporary employment agencies.

Plaintiffs alleged this conduct had depressed the wages that they earned for their work

at Mohawk from January 1999 forward.

## II.    Summary of the Litigation

The procedural history of the case reflects long and hard-fought efforts by each

side.  Mohawk has mounted a staunch defense, challenging plaintiffs at every juncture.

And plaintiffs have responded to each such challenge.

### A.    Mohawk Moved to Dismiss the Complaint.

First, Mohawk moved to dismiss the complaint.  Because Congress did not add

immigration predicates to the RICO statute until 1996, there were, at the time this

action was filed, relatively few prior cases in which employees sought to use RICO

statutes to recover damages for wage depression allegedly caused by illegal hiring.  By

the time the Court considered Mohawk's Motion to Dismiss, a split in the circuit courts

---

[2] Plaintiffs filed Notices of Death for Lora Sisson and Shirley Williams on May 18, 2007 [Dkt. No. 126] and December 10, 2007 [Dkt. No. 169] respectively.

755856.1

3

of appeal had developed over the viability of plaintiffs' legal theories.  This Court

denied Mohawk's Motion to Dismiss plaintiffs' federal and Georgia RICO claims, but

the split in authority led to a three-year appeal over whether plaintiffs could pursue

their claims for wage depression.  After two trips to the Eleventh Circuit and an

intervening trip to the U.S. Supreme Court, the case was remanded to this Court so that

discovery could begin in February 2007.

### B.     The Parties Conducted Extensive Discovery.

Over an eight-month discovery period, plaintiffs and Mohawk diligently pursued

class discovery.  In response to plaintiffs' document requests, Mohawk produced

nearly one million pages and over 20 million electronic records.  Plaintiffs also

deposed Mohawk corporate representatives on the issues of Mohawk's (1) document

management systems and retention efforts; (2) corporate and division structure; (3)

wages; (4) hiring policies; and (5) relationships and practices with temporary

employment agencies.  In addition, plaintiffs took discovery of several temporary

employment agencies that had supplied Mohawk with workers in Northwest Georgia.

That effort produced an additional 10,000 pages of documents and depositions of

seven additional witnesses.  In turn, Mohawk took written discovery and deposition

testimony from the Class Representatives.  In addition, the parties litigated and

755856.1

resolved a series of discovery-related disputes over Mohawk's document retention policies and Mohawk's response to plaintiffs' document requests.

In the course of conducting class discovery, the parties gathered significant information relevant to the risks of the litigation and the benefits of settlement. For example, the parties have collected and exchanged detailed information and records concerning the size and membership of the class. From Mohawk's databases and other records, the parties have discovered the volume of hours, wages and benefits paid to the class members. In addition, the parties have uncovered information that relates to the merits of plaintiffs' action and their ability to establish or contest damages.

### C. This Court Denied Class Certification.

On December 18, 2007, plaintiffs moved for class certification to pursue both damages and injunctive relief, and Mohawk opposed the motion. In addition to documents and testimony from the parties, both sides presented expert testimony from labor economists and immigration experts.

On March 3, 2008, this Court denied class certification. The Court held that plaintiffs had standing and had satisfied the Rule 23(a) requirements of numerosity and adequacy.[3] In particular, the Court held that Plaintiffs Pelfrey and Jones were adequate

---

[3] *See* Class Certification Order [Dkt. No. 190] at 93-97 (numerosity), 108-112 (adequacy).

755856.1

5

class representatives, with sufficient knowledge of the claims to represent the Class.[4]

The Court also held that plaintiffs' counsel were well qualified to represent the

plaintiffs in this litigation:

> Proposed class counsel have considerable experience in class action litigation, and their performance in the litigation to date indicates that proposed class counsel possess the necessary qualifications and experience to conduct the litigation.[5]

Nevertheless, the Court denied class certification after concluding that plaintiffs had

not met the requirements of commonality, typicality, predominance or superiority for a

Rule 23(b)(3) class action.[6]

On appeal, the Eleventh Circuit vacated this Court's decision and remanded for

further class certification proceedings. In *Williams v. Mohawk Industries, Inc.*, 568

F.3d 1350, 1355-57 (11th Cir. 2009) ("*Williams III*"), the court of appeals held that the

proposed class satisfied all the Rule 23(a) requirements, including commonality and

typicality. *Williams III*, however, remanded for further consideration of whether

plaintiffs could meet the Rule 23(b)(3) requirements of predominance and superiority.[7]

---

[4] *Id.* at 110-11.

[5] *Id.* at 109.

[6] *Id.* at 97-108. In addition, the Court declined to certify a class to pursue injunctive relief under Rule 23(b)(2) and (c)(4). *Id.* at 117-22.

[7] *Williams III*, 568 F.3d at 1357-60. The Eleventh Circuit further remanded for further consideration of whether to certify a hybrid class for injunctive relief under Rules 23(b)(2) and (c)(4).

755856.1

The Supreme Court denied Mohawk's Petition for Certiorari to review *Williams III* on November 2, 2009.[8]  The conflicting decisions of this Court and the Eleventh Circuit regarding whether class certification is appropriate illustrate the risks for both sides in this litigation.

### D.    The Parties Engaged in Settlement Efforts.

Like the litigation that precedes it, the Settlement Agreement the parties now propose to the Court is the product of long and hard-fought negotiations.  Over the course of the dispute, the parties made several attempts at settlement negotiations.  The Eleventh Circuit first required the parties to discuss settlement in 2005, at the outset of Mohawk's interlocutory appeal in *Williams I*.  The parties next tried to conduct their own settlement negotiations in the spring of 2007, but those discussions broke down.

The parties did not have any additional settlement discussions until the Eleventh Circuit again required mediation in late 2008 as part of plaintiffs' appeal in *Williams III*.  Although the parties spent a day with an Eleventh Circuit mediator and continued to discuss a possible resolution over the following months, they were unable to make any significant progress towards settlement.

Settlement discussions did not resume until the Eleventh Circuit vacated the denial of class certification in *Williams III*.  At that point, Mohawk's insurance carrier,

---

[8] *Mohawk Industries, Inc. v. Williams*, 130 S. Ct. 500 (2009).

Zurich, joined the discussions and the parties engaged Hunter Hughes, a private mediator in Atlanta, Georgia.  As the Court knows, Mr. Hughes is an experienced, diligent and talented mediator who has helped settle numerous difficult and high-profile cases.[9]  The parties worked with Mr. Hughes for several months, including a full day mediation session with representatives for Mohawk, Zurich and plaintiffs' counsel.  After four months of hard-fought negotiations, however, the parties remained at an impasse.

On December 2, 2009, the parties' counsel, counsel for Zurich and the mediator attended a Court-ordered a status and settlement conference, at which the Court urged the parties to take full account of the risks of further litigation in this matter and to redouble their efforts to settle the case.  After another full day of mediation, the parties preliminarily reached agreement on the terms of a settlement and then prepared the Settlement Agreement, attached hereto as Exhibit 1.

### III.    Summary of the Proposed Settlement

---

[9] *See, e.g., Ingram v. Coca-Cola Co*., 200 F.R.D. 685, 687 (N.D. Ga. 2001) (noting Mr. Hughes' involvement in settling the Coca-Cola Title VII class action); *Tucker v. Walgreen Co*., No. 05-440, 2007 WL 2915587, at * (S.D. Ill. Oct. 5, 2007) (Mr. Hughes successfully mediated an employment class action against Walgreens).

755856.1

8

The proposed settlement requires Mohawk and Zurich to establish a Settlement Fund of $18 million.[10]  The proposed settlement also requires Mohawk to conduct annual training regarding verification of employment eligibility and to maintain a telephone hotline to receive reports of alleged employment eligibility violations.[11]

The Settlement Agreement requires Mohawk and Zurich to establish a Settlement Fund Account with initial deposits totaling $12 million within seven business days after preliminary approval.  Zurich is then required to deposit up to an additional $6 million to bring the Settlement Fund Account up to $18 million as necessary.  The individual awards to Class Members will be based in part on each Class Member's length of service at Mohawk in hourly jobs at facilities covered by the Class Definition.  As a result, the longer a Settlement Class Member worked for Mohawk, the more substantial the award to that Class Member.  Distributions from the Settlement Fund Account will proceed as follows:

The Class Representative Service Awards.  The parties have agreed that the two surviving class representatives, Bonnie Jones and Gale Pelfrey, may apply for awards of up to $25,000 each in recognition of their service to the Class.[12]

---

[10] *See* Settlement Agreement ¶ III(A).

[11] *Id*. ¶ II.

[12] *Id*. ¶ III(D)(1).

755856.1

9

The Administration, Withholding, Expense and Fee Award.  The proposed settlement contemplates that Class Counsel will apply for an award of up to one-third of the Settlement Fund (up to $6 million) to (1) pay the costs of settlement administration, which will likely be approximately $285,000; (2) pay employer withholding obligations on the wage portion of the awards to individual Class Members; (3) reimburse Class Counsel for the expenses they have advanced and incurred to prosecute this case (Class Counsel estimate that such expenses totaled approximately $365,000 as of December 31, 2009); and (4) pay attorneys' fees. Mohawk and Zurich have agreed that they will not oppose any of this application.[13]

Supplemental Settlement Administration Payment.  In the event the costs of settlement administration and the employer withholding obligations exceed $500,000, a supplemental payment will be made from the Settlement Fund.[14]

Awards to Individual Class Members.  After deduction of the foregoing items, the remainder of the Settlement Fund will be allocated 1/3 to a Wages Fund and 2/3 to a Non-Wages Fund.[15]  Those funds will then be distributed to the Class Members according to their length of service at Mohawk.  *First*, the Settlement Agreement

---

[13] *Id.* ¶ III(B)(2).
[14] *Id.* ¶ III (B)(3).
[15] *Id.* ¶ III (B)(4).

755856.1

10

provides that each Class Member will receive a Base Award depending on their length of their employment at Mohawk:

- Class Members with 1 to 29 days of service will receive a base award of $25;

- Class Members with 30 to 90 days of service will receive a base award of $75; and

- Class Members with 90 days of service or more will receive a base award of $150.[16]

One third of each such Base Award shall be paid from the Wages Fund and the remaining 2/3 of each such Base Award shall be paid from the Non-Wages Fund.

*Second*, the Settlement Agreement provides that each Class Member shall also be allocated an Additional Award calculated as a pro-rata share of the Settlement Fund that remains after making the Base Awards. Those pro rata shares will be calculated by taking each Class Member's days of service as a percentage of the total days of service for all Class Members. Accordingly, the longer a Class Member worked at Mohawk the higher his or her pro rata share of the remaining funds and his or her Additional Award will be. Like the Base Award, 1/3 of each such Additional Award shall be paid from the Wage Fund and 2/3 of the Additional Award shall be paid from the Non-Wage Fund.

---

[16] *Id*. ¶ III(C)(1).

Each Class Member will be allocated an Individual Wages Fund Award and an Individual Non-Wages Fund Award. The Individual Wages Fund Award will consist of 1/3 of the individual's Base Award and Additional Award. The Individual Non-Wages Fund Award consists of 2/3 of each Class Member's Base Award and 2/3 of the Class Member's Additional Award.

To claim their individual awards, Class Members must complete and timely return a Claim Form and Release. While the precise amount allocated for individual awards cannot be determined until the Court determines the other awards set forth above, the amount allocated for individual Class Members awards is likely to be $11,950,000 or more. Any awards not claimed by Class Members shall revert to Zurich. In the event that more than fifty percent of the approximately 48,000 Class Members file a claim, Zurich has the right, but not the obligation, to terminate the Settlement Agreement.[17]

The Settlement Agreement requires Mohawk to conduct annual training on the federal and Georgia laws relating to verifying employment eligibility. In addition, Mohawk has agreed to maintain a hotline to which callers may anonymously report alleged violations of federal and Georgia law relating to the verification of

---

[17] *Id.* ¶ IV.

755856.1

12

employment eligibility at the Mohawk facilities included within the Class Definition.[18]
The Settlement Agreement requires Mohawk to maintain these efforts for two years
after the effective date of the settlement.  These provisions benefit the class by helping
ensure that Mohawk's compliance processes deter the employment of illegal workers.

In accordance with Rule 23(e)(3), the parties state that the Settlement
Agreement is the only agreement the parties have made in connection with this
proposed settlement.

## IV. The Court Should Approve the Proposed Settlement

### A. The Law Governing Approval of Class Settlements

Rule 23(e) requires court approval of any class action settlement.[19]  In *Bennett v. Behring Corporation*, the Eleventh Circuit held that the purpose of this review is to

---

[18] *Id.* ¶ II.

[19] The Class Action Fairness Act ("CAFA") does not apply to this case because this action was filed prior to the statute's effective date of February 18, 2005.  *See* Pub. L. 109-2, § 9, Feb. 18. 2005, 119 Stat. 14 ("The amendments made by this Act [CAFA] shall apply to any civil action commenced on or after the date of enactment of this Act [February 18, 2005]."); *Tmesys, Inc. v. Eufaula Drugs, Inc.*, 462 F.3d 1317 (11th Cir. 2006) (same).  In any event, this settlement does not (a) involve coupons or (b) present the prospect of a net loss by class members or (c) discriminate based on geographic location of class members, which are the three specific settlement concerns addressed by that Act.  *See* 28 U.S.C. §§ 1712-14.

755856.1

ensure the class settlement is "fair, adequate and reasonable and is not the product of collusion between the parties."[20]  The approval process occurs in several steps.

First, the district court conducts a preliminary evaluation of the fairness and adequacy of the settlement to determine whether there is good reason to schedule a full fairness hearing and notify the settlement class.[21]  "The purpose of this cursory examination is to detect defects in the settlement that would risk making 'notice to the class, with its attendant expenses, and a hearing ... futile gestures.'"[22]  The Court's task, therefore "is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation."[23]  If the settlement appears to be fair and adequate upon a preliminary examination, then the Court directs the plaintiffs to send notice of the proposed

---

[20] 737 F.2d 982, 986 (11th Cir. 1984) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

[21] *See* Manual for Complex Litigation (Fourth) § 21.632 at 320-21; *In re Skinner Group, Inc.*, 206 B.R. 252, 261-62 (Bankr. N.D. Ga. 1997).  *See e.g.,* Order Granting Preliminary Approval of Partial Settlement With Covenant Funeral Service of Chatanooga, LLC, *In re Tri-State Crematory Litig.*, MDL No. 1467 (Oct. 4, 2004).

[22] *In re Electronic Data Sys. Corp. "ERISA" Litig.*, 2005 WL 1875545, at *4 (E.D. Tex. June 30, 2005) (quoting Newberg on Class Actions § 11:25 (4th ed. 2002)).

[23] *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (citation omitted).

755856.1

settlement to the class.  After receiving any objections from the class members, the court conducts a final fairness hearing on approval.[24]

At this final fairness hearing, *Bennett* directs the district court to evaluate the settlement in light of the following factors "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved."[25]  The district court evaluates these six factors in light of "the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."[26]

"'[A]ccordingly class-action settlements will be disapproved only upon 'considerable circumspection.'"[27]

---

[24] *See generally* Manual for Complex Litigation, Fourth, § 21.632 at 320-21; *In re Skinner*, 206 B.R. at 261-62; *McNamara*, 214 F.R.D. at 426; *In re Prudential Ins.*, 962 F. Supp. at 562.

[25] *Bennett*, 737 F.2d at 986; *see also Sterling v. Stewart*, 158 F.3d 1199, 1204 (11th Cir. 1998).

[26] *See also United States v. Alabama*, 271 Fed. Appx. 896 (11th Cir. 2008); *United States v. City of Miami*, 614 F.2d 1322 (5th Cir. 1980)

[27] *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) (quoting *Jamison v. Butcher & Sherrerd,* 68 F.R.D. 479, 481 (E.D. Pa. 1975)).

755856.1

**B.    The Court Should Grant Preliminary Approval of the Settlements**

This proposed settlement is at the first stage described above, in which the

Court's task is to "determine whether notice of the proposed settlement pursuant to

Rule 23(e) should be given to class members" and a fairness hearing conducted.[28]

With an eye towards the factors for final approval identified in *Cotton* and *Bennett*, the

Court should grant preliminary approval of these settlements and order that notice be

sent to the Class.

**1.    The Proposed Settlement Is Reasonable in Light of the Possible Recovery and Uncertainty of Outcome at Trial.**

The first three factors identified by the Eleventh Circuit essentially require the

Court to consider the reasonableness of the settlement in light of the possible recovery

and risk of loss.[29]  Plaintiffs' claims have survived six years of litigation and appeals,

and with a potential class of 48,000 employees and an eleven-year class period, they

may prove valuable.  However, plaintiffs still face the hurdle of obtaining class

certification, which this Court initially denied.  Even if plaintiffs obtained class

certification, their claims and alleged wage depression damages remain difficult to

prove.  To litigate the case through trial, plaintiffs and Mohawk would have to devote

many more years and resources to the case.  After that, the result would turn on the

---

[28] 2 H. Newberg and A. Conte, *Newberg on Class Actions* § 11.25, at 11-36 (3d ed. 1992).

[29] *See Bennett*, 737 F.2d at 986.

755856.1

decision of a jury that might decide to award nothing.  The proposed settlement

eliminates all those risks and expenses and replaces them with a certain recovery for

any Class Member who does not opt out.

   In addition, the Court can and should consider the reasonableness of the

proposed settlement in light of the far less favorable results that have been obtained in

other similar cases.[30]  The parties are aware of several similar actions that have been

resolved with **no benefit** for the employee class members.  For example, in *Baker v.*

*IBP, Inc.*, the employees' claims were dismissed on the pleadings.[31]  In *Trollinger v.*

---

[30] *See, e.g.,* Manual for Complex Litigation (Fourth) § 21.62 at 316 (district court can consider "the comparison of the results achieved for individual class . . . members by the settlement or compromise and the results achieved . . . for other claimants pressing similar claims").

[31] 357 F.3d 685 (7th Cir. 2004).  *Accord Nichols v. Mahoney*, 608 F. Supp.2d 526 (S.D.N.Y. 2009) (dismissing similar wage depression claims by employees); *Hager v. ABX Air, Inc.,* Civil Action File No. 2:07-cv-317, 2008 WL 819293 (S.D. Ohio Mar. 25, 2008) (granting-in-part motion to dismiss similar claims; plaintiff later dismissed remaining claims without prejudice); *Cruz v. Cinram, Inc*., Civil Action File No. 4:08-cv-342, Final Dismissal Order [Dkt. No. 52] (N.D. Ala. Nov. 12, 2008) (dismissing RICO claims after plaintiff failed to file an amended complaint); *Zavala v. Wal-Mart Stores, Inc*., 393 F.Supp.2d 295 (D.N.J. 2005) (dismissing RICO claims);  *System Management, Inc. v. Loiselle*, 91 F.Supp.2d 401 (D. Mass. 2000) (dismissing employees' claims).  *Cf. also Canyon County v. Syngenta Seeds, Inc*., 519 F.3d 969 (9th Cir. 2008) (affirming the dismissal of county's attempt to hold employers' liable for immigration violations under RICO statute); *DelRio-Mocci v. Connolly Properties, Inc*., Civil Action File No. 08-2753, 2009 WL 971394 (D.N.J. Apr. 9, 2009) (dismissing immigration based RICO claims against apartment owner); *Powell v. Wal-Mart Stores, Inc*., Civil Action File No. 1:06CV00603, 2007 WL 987321 (N.D. Ohio Mar. 30, 2007) (dismissing employee's claim for personal injury based on illegal hiring RICO claims against employer).

755856.1

*Tyson Foods, Inc.*, the district court certified a class but granted summary judgment against the employee class.[32]  The result was the same in *Marin v. Evans Fruit Co.*, where the plaintiffs filed suit in 2006 and the court certified a class in 2008.  After merits discovery, the court granted summary judgment against the employee class.[33]  And in *Cunningham v. Offshore Specialty Fabricators, Inc.*, where the plaintiff-employees filed suit in 2004, the district court granted summary judgment on their RICO claims on April 1, 2010.[34]

The parties are further aware of additional cases in which the litigation has proceeded for years and the employees have yet to recover anything against the defendants.  For example, in *Brewer v. Salyer*, the plaintiffs filed suit in September 2006 and the court certified a class in May 2009, but the employer has filed for bankruptcy and the plaintiffs remain in merits discovery in their case against the employer's president.[35]  In *Valenzuela v. Swift Beef Co.*, the plaintiffs filed suit in

---

[32] *See Trollinger v. Tyson Foods*, 543 F. Supp.2d 842 (E.D. Tenn. 2008).  *Marin v. Evans Fruit Co.*, 2:06-cv-03090 (E.D. Wash) (summary judgment granted for employer)

[33] Civil Action File No. CV-06-3090, 2008 WL 5377915 (E.D. Wash. Dec. 23, 2008).

[34] *See Cunningham v. Offshore Specialty Fabricators, Inc.*, 5:04-cv-00282, Summary Judgment Order [Dkt. No. 519] (E.D. Tex. Apr. 1, 2010), available on PACER.

[35] Civil Action File No. 1:06cv1324, 2010 WL 144423 (Jan. 11, 2010 E.D. Cal. 2010).  *See also Hall v. White*, Civil Action File No. 3:07-cv-484, Joint Notice Regarding Case Status [Dkt. No. 141] (N.D. Ala. Mar. 5, 2010) (plaintiffs filed suit against employer's officers in March 2007; any claims against employer were discharged in bankruptcy on Dec. 10, 2009).

755856.1

2006, the court denied class certification in January 2009 and the parties then agreed to terminate the case.[36]  And in *Hernandez v. Balakian*, the plaintiffs filed suit in 2006 but dismissed without prejudice two years later.[37]  In fact, *Mendoza v. Zirkle Fruit Co.*, which resulted in a settlement fund of approximately $1.3 million, is the only other case in which employees recovered anything from pursuing similar claims.

In light of this history, the proposed settlement in this case easily meets Rule 23(e)'s standard that the settlement be "fair, reasonable, and adequate."  First and foremost, the $18 million Settlement Fund here is more than ten times higher than the fund in the only other case to produce a financial benefit for employee class members. In addition, this proposed settlement includes the training and hotline features that benefit the Class by helping ensure that Mohawk's hiring and compliance processes deter the employment of illegal workers.  As a result, the proposed settlement provides the Class Members with significant benefits that would be uncertain and much delayed by further litigating the case.

> **2.    The Proposed Settlement Is Reasonable in Light of the Complexity, Expense and Duration of the Litigation.**

---

[36] Civil Action File No. 3:06-cv-02322 (N.D. Tex), Order denying class certification [Dkt. No. 91] and Stipulation of Dismissal With Prejudice [Dkt. No. 92], available on PACER.

[37] No. 1:06-cv-01383 (E.D. Cal.) (filed in 2006, dismissed without prejudice in 2008). *See also Motino v. Toys "R" Us, Inc*., Civil Action File No. 2:06-cv-00370, (D.N.J. Apr. 1, 2009) (plaintiffs filed suit in January 2006 and dismissed without prejudice on Apr. 1, 2009).

755856.1

The Eleventh Circuit has also directed district courts to consider the reasonableness of proposed class settlements in light of "the complexity, expense and duration of litigation." *Bennett*, 737 F.2d at 986. This factor also favors preliminary approval of the proposed settlement because further litigation will be highly complex, expensive, and uncertain. The proposed settlement offers the Class a certain and substantial recovery and reforms Mohawk's hiring practices. There is no assurance of any recovery—let alone a more substantial recovery—if the litigation continues.

This case has already been pending for over six years. It has been hard-fought, time-consuming, and expensive. The Class Representatives have already devoted significant time and attention to participating in the litigation. Class Counsel have invested hundreds of thousands of dollars in expenses as well as millions of dollars in attorney time to litigate the case. Mohawk has made similar investments in expenses and attorneys' fees to defend the case.

Despite all that effort and expense, there remains much work to do before this case can be tried. After six years, the case remains in the class certification stage. Following *Williams III*, there is no guarantee that such a class will be certified. And even if this Court certifies a class, further requests to appeal—with all the attendant delay and expense—will certainly follow.

In addition, the parties will have to devote years to further merits and expert discovery. Motions for summary judgment and to exclude expert testimony will

755856.1

follow.  And in the event plaintiffs' claims survive, the resulting trial would take many

months to prepare and many weeks of court time to try.  Neither side can predict what

result a jury might return.  But both sides can predict with certainty that those

proceedings will require years of additional litigation, hundreds of thousands of dollars

in expenses, and many millions in attorneys' fees.  Considering "the complexity,

expense and duration" of continued litigation, the Court should preliminarily approve

the Settlement Agreement.

### 3. The Proposed Settlement Is Reasonable in Light of the Stage of the Proceedings at Which It Has Been Achieved.

Finally, this Court must consider "the stage of proceedings at which the

settlement was achieved."  *Bennett*, 737 F.2d at 986.  This factor also supports

preliminary approval because the parties have already spent more than six years

litigating this case.  Settlements have been approved and affirmed on appeal in this

Circuit at far earlier stages of litigation or discovery.[38]

The settlement negotiations themselves have been lengthy.  The parties have

made several efforts to resolve the case, beginning in February 2007.  Even this last

round of negotiations, conducted with the aid of an experienced, independent mediator,

---

[38] *See, e.g., Cotton,* 559 F.2d at 1332 (affirming approval of settlement with little
formal discovery); *Mashburn*, 684 F. Supp. at 669 ("The law is clear that early
settlements are to be encouraged, and accordingly, only some reasonable amount of
discovery should be required to make these determinations [regarding the fairness of
the settlement].").

has taken more than six months to complete.  Moreover, it was not until the Court

urged the parties to redouble their efforts that the impasse was broken and the parties

reached the Settlement Agreement now before the Court.

### IV.  The Court Should Certify a Settlement Class.

Where the case is presented for class certification and settlement at the same

time, the "judge should make a preliminary determination that the proposed class

satisfies the criteria of Rule 23(a) and at least one of the subsections of Rule 23(b)."[39]

Accordingly, the Court should preliminarily certify the following class for settlement:

> All persons legally authorized to be employed in the United States who are or
> have been employed in hourly positions in Georgia by Mohawk Industries, Inc.,
> its subsidiaries or affiliates at any time from January 1, 1999 to December 31,
> 2009 (the "Class Period"), other than an Excluded Employee (the "Class" or the
> "Class Definition").

> An "Excluded Employee" is an employee whose employment at Mohawk has
> been limited to:  Dal-Tile, Unilin, or Mohawk facilities in Milledgeville, Dublin,
> Tifton, Norcross, Kennesaw, or Atlanta, Georgia.

After the substantial class certification proceedings in this Court and in the

Court of Appeals, it is clear that this Class should be certified for settlement purposes.

In 2007, this Court held that the proposed class satisfied most of Rule 23(a)'s

requirements, including the requirement that plaintiffs and their chosen counsel were

---

[39] Manual for Complex Litigation (Fourth) § 21.632 at 321.

adequate to represent the class.  In *Williams III*, the Court of Appeals further held that the proposed class satisfied all the elements of Rule 23(a).[40]

*Williams III* remanded for a practical assessment of whether common proof of injury would predominate and whether class certification was superior to requiring the individual plaintiffs to prosecute their own claims in separate trials.[41]  The parties' agreement to settle the case resolves those issues entirely, however, because any questions about common proof of injury are—fundamentally—questions about the manageability of proof at trial.  As the Supreme Court held in *Amchem Prods., Inc. v. Windsor*, those manageability concerns present no obstacle to certifying a settlement class: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."[42]  As a result, this Court has recognized that "[u]nder *Amchem*, manageability concerns are eliminated in the settlement class context[.]"[43]

---

[40] *Williams III*, 568 F.3d at 1355-57.

[41] *Id*. at 1357-59.

[42] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).

[43] *Ingram v. Coca-Cola Co*., 200 F.R.D. 685, 697 (N.D. Ga. 2001) (Story, J.) The parties reserve their respective positions on whether the class should be certified in the absence of a settlement.

In addition, certifying the class for the purposes of settlement is superior to resolving the plaintiffs' claims in a host of individual trials.  Indeed, this Court has already held that most of the factors that Rule 23(b)(3) identifies for considering superiority favor class certification in this case.[44]  As in *Ingram v. Coca-Cola Co.*, another employee class action, class certification and settlement allows all the class members an opportunity to receive compensation for their claims without incurring the risks and expense necessary to pursue an individual lawsuit.

> Resolution of class members' claims for injunctive and monetary relief in this single class action is superior to resolution of this controversy through the filing of a host of individual actions.  Class treatment is superior as a matter of efficiency, consistency, and ensuring that class members actually obtain relief. . . .  Class treatment is also superior because it removes real barriers to class members obtaining relief.  Absent class treatment, each employee would have to incur the difficulty and expense of filing an individual claim and would have to take the personal risk of litigating directly against his or her current or former employer.  Many employees would likely be unable to bear such costs and risks.[45]

As a result, the Court should provisionally certify the class and appoint Jones and Pelfrey as Class Representatives and plaintiffs' counsel as Class Counsel.

## V.    SCHEDULE FOR SETTLEMENT APPROVAL

The Settlement Agreement requires the Class Administrator to mail Notice within 30 days after the Court grants preliminary approval of the Settlement

---

[44] *See* Class Certification Order [Dkt. No. 190] at 132-34.

[45] *Ingram*, 200 F.R.D. at 701.

755856.1

Agreement.[46]  The Settlement Agreement then sets a timetable for filing claims as well as deadlines for Class Members who wish to exclude themselves from the Class or object to the Settlement Agreement, all based on the date of Notice.[47]

### A.     The Notice

The parties propose to have the Claims Administrator mail individual notice to the class members using the addresses contained in Mohawk's databases as updated by the National Change of Address database or similar databases.  A proposed Notice of Class Action, Proposed Settlement Agreement and Settlement Hearing, upon which the parties have agreed, is attached as Exhibit A to the Settlement Agreement.  The Notice sets forth the material terms of the proposed settlement and comports with Rule 23 and the requirements of due process.  In addition, the Notice directs class members to a website where they can obtain information about the settlement.  The Notice sets forth the allocation method that will govern the distribution of the Settlement Fund, describes the procedures for exclusion requests ("opt outs") and objections, and specifies the date, time and place of the formal fairness hearing.

### B.     Proposed Schedule for Final Approval

Once the Court grants preliminary approval, the Settlement Agreement establishes, *inter alia*, the following schedule:

---

[46] Settlement Agreement ¶ V(C).
[47] *Id*. ¶¶ III(C)(2), V(D).

755856.1

Day 0                    Preliminary Approval

By Day 30                Claims Administrator mails Notice

By Day 75                Objections and Opt Outs must be received

Day 90-105               Court holds Settlement Hearing to rule on final approval

Day 120                  Deadline for Class Members to postmark Claim Forms and
                         Releases

+17 days                 Zurich's deadline to exercise Termination Option, if
                         triggered; absent exercise of Termination Option, Court enters final
                         judgment

+ 30 Days                Absent appeal, Settlement Agreement becomes final and binding

+20 Days                 Individual awards mailed

## CONCLUSION

Plaintiffs respectfully request that the Court preliminary approve the settlement

and enter the Proposed Order attached hereto as Exhibit 2.

This 9th day of April 2010,

                              Respectfully submitted:

                              **/s/Ronan P. Doherty**
                              Georgia Bar No. 224885
                              doherty@bmelaw.com

755856.1

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing pleading has been prepared in Times New Roman, 14 point font, as permitted by Local Rule 5.1B.

<u>**/s/Ronan P. Doherty**</u>
Georgia Bar No. 224885
doherty@bmelaw.com

755856.1

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the within and foregoing **BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

R. Carl Cannon
ccannon@constangy.com

Juan P. Morillo
juan.morillo@cliffordchance.com

Steven T. Cottreau
steve.cottreau@cliffordchance.com

Jena S. Tarabula
jtarabula@constangy.com

This 9th day of April 2010.

**/s/ Ronan P. Doherty**
Ronan P. Doherty
Georgia Bar No. 224885

755856.1